UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| LILLIAN BERNIER,<br><br>    Plaintiff,<br><br>    v.<br><br>TURBOCAM, INC., HEALTH PLANS, INC., & HARVARD PILGRIM HEALTH CARE OF NEW ENGLAND, INC.<br><br>    Defendants. | Civil Action No. _____ |

# COMPLAINT

1.  The plaintiff Lillian Bernier is a transgender woman employed by the defendant Turbocam, Inc. She has been diagnosed with gender dysphoria, a serious medical condition that requires treatment. Standard of care treatments for gender dysphoria, endorsed by all major medical organizations (including the American Medical Association, American Psychiatric Association, and the World Health Organization), are medically necessary and effective. The defendant Turbocam, Inc. offers health care benefits to its employees as part of their compensation through an employer-sponsored self-funded plan. The plan is administered and operated jointly by the defendant Health Plans, Inc., and the defendant Harvard Pilgrim Health Care of New England, Inc. The defendant Turbocam, Inc.'s health care benefits plan categorically excludes coverage of *any* treatment for gender dysphoria or gender transition-related care. The defendants have wrongly denied the plaintiff Lillian Bernier insurance coverage for essential medical care because of the exclusion in Lillian's employee health care benefits plan. She brings this action for violations of federal and state laws prohibiting discrimination on the basis of sex, gender identity, and disability.

1

## JURISDICTION AND VENUE

2. This Court has jurisdiction over the federal claims asserted herein under 28 U.S.C. §§ 1331 and 1343(a)(4). This Court has jurisdiction over the state law claims asserted herein under 28 U.S.C. § 1367(a).

3. The plaintiff's claim for declaratory relief is authorized by 28 U.S.C. §§ 2201-2202.

4. An actual controversy exists between the parties because the defendants' policies deny the plaintiff health care coverage in violation of federal and state law and infringe on the plaintiff's rights.

5. Venue is proper in this district under 28 U.S.C. § 1391, including because a substantial part of the events or omissions giving rise to this action occurred in New Hampshire.

## PARTIES

### Defendant Turbocam, Inc.

6. Defendant Turbocam, Inc. (hereinafter, "Turbocam") is a New Hampshire domestic for-profit corporation, which is registered to do business in New Hampshire with the Department of State.

7. Turbocam manufactures core turbomachinery flow path components and assemblies, employing over 900 engineers, machinists, technicians, and support staff worldwide. Turbocam produces turbomachinery components for the space and rocketry, aviation/aeroengine, automotive, power generation, and HVACR (heating, ventilation, air conditioning, and refrigeration) industries.

8. On information and belief, Turbocam's annual revenue in 2022 was approximately two hundred million dollars.

9. Turbocam operates in New Hampshire and its principal office is located at 607 Calef

Highway, Suite 200, Barrington, NH 03825.

10. Turbocam employs hundreds of people in New Hampshire.

**Defendant Health Plans, Inc.**

11. Defendant Health Plans, Inc. (hereinafter, "HPI") is a Massachusetts for-profit corporation.

12. HPI is registered to do business in New Hampshire with the Department of State under the name Massachusetts Health Plans.

13. At all times relevant to the facts in this Complaint, HPI has been a recipient of Federal funding and a provider of health services.

**Defendant Harvard Pilgrim Health Care of New England, Inc.**

14. Defendant Harvard Pilgrim Health Care of New England, Inc. (hereinafter, "Harvard Pilgrim") is a Massachusetts nonprofit corporation.

15. Harvard Pilgrim is registered to do business in New Hampshire with the Department of State.

16. Harvard Pilgrim is the parent company of HPI.

17. At all times relevant to the facts in this Complaint, Harvard Pilgrim has been a recipient of Federal funding and a provider of health services.

**Plaintiff Lillian Bernier**

18. Plaintiff Lillian Bernier has at all relevant times been a resident of Strafford County, New Hampshire.

19. Since June of 2019, Lillian has been employed continuously by Turbocam. Lillian is a machinist.

20. As part of the compensation package for all Turbocam employees, Lillian was

offered participation in a health benefits plan sponsored by the defendant Turbocam and administered and operated jointly by the defendant HPI, a Harvard Pilgrim company, and the defendant Harvard Pilgrim.

21.  Lillian has been eligible for participation in the Plan and has been enrolled in the Plan to receive health benefits as part of her compensation continuously since she began employment with Turbocam.

## FACTS

### Gender Dysphoria and its Treatment

22.  Gender identity is a person's internal sense of their sex. It is innate, fixed, and cannot be changed.

23.  Every person has a gender identity. For most people, their gender identity aligns with their birth sex. For transgender individuals, however, that is not the case. A transgender person has a gender identity not typically associated with their birth sex

24.  A transgender man is a man whose birth sex is female, but who has a male gender identity. A transgender woman is a woman whose birth sex is male, but who has a female gender identity. As set forth above, Lillian is a transgender woman.

25.  Gender dysphoria is the medical diagnosis for the distress and discomfort that a transgender person experiences if they cannot live consistent with their gender identity.

26.  Gender dysphoria is a serious medical condition, characterized by a clinically significant and persistent feeling of distress and discomfort with one's birth sex.

27.  The criteria for a diagnosis of gender dysphoria are set forth in the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (DSM-V).

28.  There is a scientific consensus that gender identity is deep-seated and impervious to

external influence. Scientific and medical research also shows that gender dysphoria has a physiological and biological etiology.

29. Gender dysphoria results from physical or physiological "impairments" within the meaning of the Americans with Disabilities Act.

30. Gender dysphoria is a medical condition that is highly treatable and for which there is an established course of medical care.

31. Without treatment, gender dysphoria predictably causes debilitating symptoms, including anxiety, depression, distress, self-harm, and, in some cases, suicidality, and substantially limits a person's life activities.

32. Gender transition is the term for the process that a transgender person goes through to live consistent with their gender identity.

33. Only transgender people go through gender transition.

34. When individuals with gender dysphoria receive appropriate medical care, their gender dysphoria is alleviated or significantly diminished, and they can thrive.

35. The World Professional Association for Transgender Health ("WPATH") and the Endocrine Society have published standards and guidelines for treating gender dysphoria, representing an expert consensus based on the best available science on transgender healthcare.

36. The authoritative standards of care for treatment of gender dysphoria are set forth in the *World Professional Association for Transgender Health* (the "WPATH") *Standards of Care* (8th version, 2022). The WPATH-promulgated Standards of Care ("SOC") are the internationally recognized guidelines for the treatment of persons with gender dysphoria and inform medical treatment throughout the world. The American Medical Association, the Endocrine Society, the American Psychological Association, the American Psychiatric

Association, the World Health Organization, the American Academy of Family Physicians, the American Public Health Association, the National Association of Social Workers, the American College of Obstetrics and Gynecology, and the American Society of Plastic Surgeons all recognize gender dysphoria as a serious medical condition. They also recognize the WPATH SOC as the authoritative guidelines for treating gender dysphoria.

37. The SOC set forth medically necessary procedures for treating a person with gender dysphoria.

38. The SOC recommend an individualized approach to gender transition, consisting of one or more of the following:

- Changes in gender expression and role (e.g., dressing consistently with the person's gender identity and changing name and legal documentation to reflect the person's gender identity). This process is often referred to as social transition;
- Hormone therapy to feminize or masculinize the body;
- Surgeries to change primary and/or secondary sex characteristics (e.g., breasts/chest, external and/or internal genitalia, and facial features); and
- Psychotherapy for purposes of addressing the negative impact of gender dysphoria and stigma on mental health, alleviating internalized shame, enhancing social and peer support, improving body image, or promoting resilience.

**Lillian Bernier's Employment and the Impact of the Plan Exclusion**

39. Lillian began employment at Turbocam on or about June 3, 2019. She has been employed there continuously since that time. She had always wanted to work as a machinist, which has been her father's long-time work as well.

40. Lillian started as a Third Shift CNC Mill Operator. She was promoted in or about

June or July 2020 to a Level I Machine Operator and in or about April or May 2022 to a Level II Machine Operator.

41. Lillian has always worked the night shift (11:00 p.m. to 7:00 a.m.).

42. Throughout the time of the restrictions imposed during the COVID pandemic, Lillian worked at the Turbocam plant doing her job and putting in her regular hours. She thrived even as her workload increased in the face of furloughs and other staff turnover.

43. Although her birth sex was male, she has known since a young age that she is female. This has caused Lillian significant distress. For many years, she feared rejection if she shared her understanding of her gender identity with other people in her life and she struggled with self-acceptance.

44. Lillian has been diagnosed with gender dysphoria by her primary care physician and by her mental health counselor.

45. Lillian began to transition from living as male to living as female in or about October 2020. She legally changed her name to Lillian Bernier in February 2021.

46. In or about October 2020, Lillian began receiving medical treatment to alleviate the symptoms of gender dysphoria. She has needed, and continues to need, hormone replacement therapy, counseling, and medically recommended surgeries to treat her gender dysphoria.

47. Lillian has been and continues to be precluded from obtaining coverage under the Plan for past and future medically necessary gender transition treatments because the Plan contains an exclusion prohibiting health benefits coverage of treatment for gender dysphoria.

48. The plan exclusion (the "Exclusion") states:

> The following are excluded from Covered Services and no benefits shall be paid for:
> Gender dysphoria treatment, including but not limited to, counseling, gender reassignment surgery or hormone therapy, and related preoperative and

postoperative procedures, which, as their objective, change the person's sex and any related complications.

49. The Exclusion continues in effect. Turbocam and its attorneys have stated to Lillian and to her attorneys that Turbocam will continue to maintain the Exclusion.

50.  As a direct result of the Exclusion, and Turbocam's insistence on maintaining it, Lillian has paid out-of-pocket for some medically necessary treatments and has had to forego scheduling medically necessary gender transition surgery that her providers have recommended as essential to her treatment plan.

### HPI and Harvard Pilgrim's Role in Administering Turbocam's Health Benefits Plan

51.  Turbocam provides its employees with medical care coverage through a self-funded health benefits plans entitled "Turbocam, Inc. Employee Group Medical Plan (H.S.A. PPO)" (hereinafter, the "Plan"). The Plan is administered and operated jointly by HPI and Harvard Pilgrim.

52.  Turbocam employees, including Lillian, must pay into the Plan to be eligible for health benefits. Turbocam pays the cost of covered health services for its employees instead of paying a monthly premium for the Plan.

53.  The health benefits card provided to Lillian by HPI identifies both HPI and Harvard Pilgrim.

54.  On information and belief, Turbocam has a contract with HPI to act as the claims administrator for its health benefits plan.

55.  On information and belief, Harvard Pilgrim engages jointly with HPI to provide third party services for the administration and operation of Turbocam's Health benefits plan, including claims administration, actuarial modeling, benefits design, drafting of plan language, development of provider networks, and determination of reimbursement rates.

56. On information and belief, HPI designed the Plan and provided Turbocam with options regarding the treatments and procedures that would be covered and excluded.

57. On information and belief, HPI and Harvard Pilgrim drafted the language of the Plan, including the language of the Exclusion.

58. On information and belief, HPI and Harvard Pilgrim offer plan options to all HPI clients that exclude medical care for gender transition.

## CAUSES OF ACTION

### COUNT I

### Discrimination on the Basis of Sex - Title VII
### Against Turbocam

59. Lillian incorporates by reference the preceding paragraphs of this Complaint as though fully set forth herein.

60. Turbocam is an employer as defined by 42 U.S.C. § 2000e(b).

61. Turbocam has unlawfully discriminated, and continues to discriminate, against Lillian "with respect to [her] compensation, terms, conditions, or privileges of employment, because of . . . sex" in violation of 42 U.S.C. § 2000e-2(a)(1), including by offering and maintaining an employer-sponsored health care benefits plan that contains the Exclusion.

### COUNT II

### Discrimination on the Basis of Sex – New Hampshire RSA 354-A
### Against Turbocam

62. Lillian incorporates by reference the preceding paragraphs of this Complaint as though fully set forth herein.

63. Turbocam has unlawfully discriminated, and continue to discriminate, against Lillian "because of . . . [her] sex" in the "compensation or in terms, conditions or privileges of [her]

employment " in violation of New Hampshire RSA 354-A:7(I), including by offering and maintaining an employer-sponsored health care benefits plan that contains the Exclusion.

### COUNT III

### Discrimination on the Basis of Gender Identity – New Hampshire RSA 354-A Against Turbocam

64. Lillian incorporates by reference the preceding paragraphs of this Complaint as though fully set forth herein.

65. Turbocam has unlawfully discriminated, and continues to discriminate, against Lillian "because of . . . [her] gender identity" in the "compensation or in terms, conditions or privileges of [her] employment " in violation of New Hampshire RSA 354-A:7(I), including by offering and maintaining an employer-sponsored health care benefits plan that contains the Exclusion.

### COUNT IV

### Discrimination on the Basis of Disability - Americans with Disabilities Act Against Turbocam

66. Lillian incorporates by reference the preceding paragraphs of this Complaint as though fully set forth herein.

67. Turbocam is a covered entity under 42 U.S.C. § 12111.

68. Gender dysphoria is a disability as defined by 42 U.S.C. § 12102.

69. Gender dysphoria is a physiological condition that affects many bodily systems, such as the endocrine system, including because it is caused by an atypical interaction of sex hormones and the brain.

70. Lillian has gender dysphoria, which is a mental or psychological disorder, as defined in the Americans with Disabilities Act, because it is a serious diagnosis classified in the

Diagnostic and Statistical Manual of Mental Disorders.

71. Gender dysphoria results from physical or physiological "impairments" as that term is used in the Americans with Disabilities Act.

72. Lillian's gender dysphoria substantially limits one or more of her major life activities, as defined in the Americans with Disabilities Act, including reproduction and caring for one's self and the operation of the endocrine and reproductive functions.

73. Lillian is a qualified individual with a disability both with respect to her ability to perform her job functions and eligibility for the Plan.

74. Turbocam has unlawfully discriminated against and continues to discriminate against Lillian in the "compensation . . . and other terms, conditions and privileges of employment . . . on the basis of disability" in violation of 42 U.S.C. § 12112, including by offering and maintaining an employer-sponsored health care benefits plan that contains the Exclusion.

## COUNT V

### Discrimination on the Basis of Disability – New Hampshire RSA 354-A
### Against Turbocam

75. Lillian incorporates the preceding paragraphs of this Complaint as though fully set forth herein.

76. Gender dysphoria is a disability as defined in New Hampshire RSA 354-A:2(IV).

77. Lillian is a qualified person with a disability capable of performing the essential functions of her job and she is eligible for the Plan.

78. Turbocam has unlawfully subjected Lillian to discrimination because of her disability in violation of New Hampshire RSA 354-A:7, including by offering and maintaining an employer-sponsored health care benefits plan that contains the Exclusion.

**COUNT VI**

**Discrimination on the Basis of Sex and Disability - Affordable Care Act § 1557
Against HPI and Harvard Pilgrim**

79. Lillian incorporates the preceding paragraphs of this Complaint as though fully set forth herein.

80. Section 1557 of the Affordable Care Act, 42 U.S.C. § 18116, provides that "an individual shall not, on the ground prohibited under . . . title IX of the Education Amendments of 1972 [Title IX] . . . or section 794 of title 29 [Section 504 of the Rehabilitation Act], be excluded from participation in, denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance . . . ."

81. HPI and Harvard Pilgrim are covered "health program[s] or activit[ies]" a part of which receive federal financial assistance and are therefore "covered entit[ies]" for the purposes of Section 1557.

82. Discrimination on the basis of sex characteristics, gender identity, nonconformity with sex stereotypes, transgender status, or gender transition is discrimination on the basis of "sex" under Title IX, 20 U.S.C. § 1681.

83. Discrimination on the basis of gender dysphoria is discrimination on the basis of a "disability" under the Rehabilitation Act and the Americans with Disabilities Act.

84. Designing, administering, and otherwise providing services for the Plan, and, on information and belief, developing, directing operations, and implementing the Exclusion of benefits for gender dysphoria that are medically necessary for transgender members like Lillian, discriminates on the basis of Lillian's sex and disability.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

85. On December 16, 2022, Lillian filed a Charge of Discrimination with the New Hampshire Commission for Human Rights against Turbocam and HPI for discrimination on the basis of sex, gender identity, and disability, which was cross-filed with the Equal Employment Opportunity Commission.

86. Lillian has exhausted her administrative remedies with respect to his claims under Title VII and the Americans with Disabilities Act because the Equal Employment Opportunity Commission did not undertake any conciliation efforts and issued a right-to-sue letter dated October 20, 2023.

87. Lillian has exhausted his administrative remedies under her state law claims because the New Hampshire Human Rights Commission closed Lillian's case on or about October 19, 2023, upon receipt of the request for a right to sue from the U.S. Equal Employment Opportunity Commission. See N.H. Admin. Rules, Hum 212.02(b).

**RELIEF REQUESTED**

WHEREFORE, Lillian Bernier respectfully requests that the Court grant the following relief:

1. Issue a declaratory judgment that the Exclusion violates Federal and New Hampshire employment discrimination law and Section 1557 of the Affordable Care Act;

2. Issue a permanent injunction prohibiting HPI and Harvard Pilgrim, their agents, employees, representatives, contractors, or any third party acting on their behalf, from any enforcement or application of the Exclusion, and directing Turbocam, HPI, and Harvard Pilgrim to provide coverage for the Plaintiff's medically necessary gender transition care;

3. Award the Plaintiff compensatory and consequential damages, including emotional

distress damages, and all other available damages from the Defendants' acts or omissions alleged in the Complaint, in an amount to be established at trial;

4. Award the Plaintiff punitive damages;

5. Award the Plaintiff reasonable attorneys' fees and costs; and

6. Grant such other and further relief as the Court considers just and proper.

Respectfully submitted,

Lillian Bernier

By her attorneys,

 /s/ Chris Erchull
Chris Erchull, NH Bar No. 266733
cerchull@glad.org
Bennett H. Klein*
bklein@glad.org
GLBTQ Legal Advocates & Defenders
18 Tremont Street, Suite 950
Boston, Massachusetts 02108
(617) 426-1350

* Motion for Admission *Pro Hac Vice* Pending

Dated: November 21, 2023