UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

CIVIL ACTION NO. 1:23-CV-00523

|  |  |
|---|---|
| LILLIAN BERNIER,<br>  Plaintiff<br><br>v.<br><br>TURBOCAM, INC., HEALTH PLANS, INC., &<br>HARVARD PILGRIM HEALTH CARE OF NEW ENGLAND,<br>  Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANT, TURBOCAM, INC.'S, MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Pursuant to Fed. R. Civ. P. 12(b)(6), the defendant, Turbocam, Inc. ("Turbocam"), hereby submits its Memorandum of Law in Support of its Motion to Dismiss the plaintiff, Lillian Bernier's ("Bernier") Complaint.

**I. INTRODUCTION**

Bernier's Complaint against Turbocam should be dismissed in its entirety because: (1) the health plan's exclusion for "gender dysphoria treatment" does not discriminate "because of sex," as it applies equally to all employees, regardless of sex, and the exclusion is just one of many other surgical and treatment exclusions in the plan; and (2) Bernier neither alleges facts nor argues that her[1] diagnosis of gender dysphoria was the result of a physical impairment.

**II. FACTUAL BACKGROUND**

Turbocam manufactures core turbomachinery flow path components and assemblies, employing over 900 engineers, machinist, technicians and support staff worldwide. *See*

---

[1] Turbocam is using the personal pronouns selected by the Plaintiff in this matter, but does so without waiving any rights, and reserving all arguments, under federal and state law.

1

*Complaint, ¶7*. Bernier has worked for Turbocam since 2019. *Id. ¶19*. Turbocam provides its employees with medical care coverage through a self-funded health benefits plan (the "Plan"). *Id. ¶51*. The Plan is administered by Health Plans, Inc. (HPI") and Harvard Pilgrim Health Care of New England ("Harvard"). *Id. ¶¶20; 51*. Turbocam employees, like Bernier, must pay into the Plan to be eligible for health benefits. *Id. ¶52*. Turbocam pays the cost of covered health services for its employees instead of paying a monthly premium for the Plan. *Id. ¶52*. The plan contains 52 enumerated exclusions and states in relevant part:

> "The following are excluded from Covered Services and no benefits shall be paid for:
>
> …
>
> **(31)** Gender dysphoria treatment, including but not limited to, counseling, gender reassignment surgery or hormone therapy and related preoperative and postoperative procedures, which, as their objective, changes the person's sex and any related complications." <u>Id.</u> *¶48* (the "Exclusion"). <u>See</u> *Affidavit of Bethany P. Minich, attached hereto as Exhibit 1.*[2]

Within Section VI, Medical Limitations and Exclusions, the Plan goes on to identify numerous surgical procedures, treatments, and other medical services that are excluded from coverage. This list of 52 exclusions includes, for example, "Childbirth classes," "Cochlear implants," "Cosmetic or reconstructive surgery," "Erectile dysfunction treatment," "Genetic counseling, testing, or related services," "Learning disabilities, behavioral problems, or developmental delay services or treatment," "Planned home births," "Podiatry services for routine care," "Reverse sterilization", "Sex therapy," "Temporomandibular Joint Disorders," and other exclusions. *Id.*

---

[2] "Under First Circuit precedent, when 'a complaint's factual allegations are expressly linked to—and admittedly dependent upon—a document (the authenticity of which is not challenged),' then the court can review it upon a motion to dismiss." *Diva's Inc. v. City of Bangor*, 411 F.3d 30, 38 (1st Cir. 2005) (alteration in original) (*quoting Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 34 (1st Cir. 2001)).

Although Bernier was born a male, Bernier contends that since a young age, she has known that she is female, which has caused her distress. *Id. ¶43*. Bernier has been diagnosed with gender dysphoria. *Id. ¶44.* In or about October 2020, she began to transition from living as a male to living as a female. *Id. ¶45.* Bernier began undergoing medical treatment to address her gender dysphoria. *Id. ¶46.* Because of the Exclusion, Bernier has been precluded from obtaining coverage under the Plan for gender transition treatment, resulting in her paying out of pocket for some expenses, and causing her to forgo scheduling gender transition surgery. *Id. ¶¶ 47; 50.*

## III. STANDARD OF REVIEW

To survive a motion to dismiss, a complainant must satisfy the "plausibility" standard established by the Supreme Court in *Bell v. Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 670 (2009). A complaint must allege facts that give rise to a "reasonable expectation" of relief. *Twombly*, 550 U.S. at 555. The Court in *Twombly* set out a "flexible plausibility standard," which requires a plaintiff to amplify a claim where such amplification is necessary to render the claim plausible. *Iqbal*, 556 U.S. at 670. A "plaintiff's obligation to provide the 'grounds' for his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation") (*citing Panasan v. Allain*, 478 U.S. 265, 286 (1986)). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.*; *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 12 (1st Cir. 2011) (A court "should begin by identifying and disregarding statements in the complaint that merely offer 'legal conclusion[s]

3

couched as…fact[]' or '[t]hreadbare recital of the elements of a cause of action.'") (*quoting Iqbal*, 556 U.S. at 680). "A complaint may not stand simply on the 'sheer possibility' that a defendant acted unlawfully or on acts that are merely consistent with a defendant's liability." *Ocasio-Hernandez*, 640 F.3d at 11.

"A complaint must possess enough heft to show that the pleader is entitled to relief. For example, wholly conclusory claims will not suffice where the defendant's alleged conduct is merely consistent with unlawful action and is just as much in line with lawful action." *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 8, 9 (1st Cir. 2011) (emphasis and quotations omitted) (quoting *Twombly*, 550 U.S. at 554, 557). *Twombly* provides a good example. There, as the Court found "an 'obvious alternative explanation' for the alleged [anticompetitive] behavior of the defendants, the [Court] concluded that the 'plaintiffs here have not nudged their claims across the line from conceivable to plausible.'" *Id.* (*quoting Twombly*, 550 U.S. at 567).

IV.  **LAW AND ARGUMENT**

    A. **BERNIER FAILS TO ASSERT A COGNIZABLE DISCRIMINATION CLAIM UNDER TITLE VII AND RSA 354-A.**

Bernier's unlawful discrimination claim at Count I centers on allegations that Turbocam denied her a benefit by "offering and maintaining an employer-sponsored health care benefits plan that contains the Exclusion." *See Complaint,* ¶ *61.* It is well settled that, to establish unlawful discrimination on the basis of one's sex, including their gender identity, a Title VII plaintiff must establish discrimination "because of such individual's" sex. 42 U.S.C. § 2000e-2(a)(1).

Here, Bernier has failed to plead any facts alleging that she was denied a benefit *by reason of* – or but-for – her status as a transgender woman or that Turbocam included the Plan Exclusion because of her sex. Rather, she concedes that Turbocam offered her participation in

4

the Plan when she began her employment and that the Plan is "part of the compensation package for all Turbocam employees." *See Complaint,* ¶¶ *20-21.* "[T]o constitute unlawful [sex] discrimination under Title VII, an employment action must have been taken "because of" the [sex] of the individual plaintiff." *Frith v. Whole Foods Mkt., Inc.*, 38 F.4th 263, 271 (1st Cir. 2022). "The critical issue" in determining whether an employer has engaged in sex discrimination, as "Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Oncale v. Sundowner Offshore Servs.,* 523 U.S. 75, 80 (1998). Here, the Plan – which excludes "gender dysphoria treatment" – applies neutrally to either sex and does not discriminate "because of sex." There is no allegation that the Exclusion would not have applied to Bernier had she been the other sex. Instead, the allegations make clear that all employees, regardless of sex, are excluded from coverage for gender dysphoria due to the Exclusion.

Even had Bernier alleged a "technically viable" claim or one "conceptually[] consistent" with Title VII sex discrimination, her complaint still should be dismissed. *Frith v. Whole Foods Mkt., Inc.*, 38 F.4th 263, 273, 274 (1st Cir. 2022). [C]laims cannot be wholly conclusory [and] survive a motion to dismiss." *Id.* at 274. Instead, a "complaint's factual allegations must be sufficient to take a claim beyond the realm of pure conjecture, that is, 'across the line from conceivable to plausible.'" *Id.* (*quoting Ocasio-Hernández*, 640 F.3d at 9). Bernier's Title VII claim, however, is wholly conclusory and pure conjecture.

In *Frith*, plaintiffs alleged their employer's "selective[] enforce[ement of] its dress code policy to ban employees from wearing Black Lives Matter masks and related apparel . . . constitute[d] unlawful discrimination based on race." *Frith*, 38 F.4th at 272–73. They alleged the policy "adversely affected Black employees and it ha[d] singled out for disfavored treatment

5

advocacy and expression of support for Black employees." *Id.* at 273.  The First Circuit described plaintiffs' claims as "technically viable" under Title VII. *Id.* at 273.  It found they had "pleaded discrimination claims that [we]re, conceptually, consistent with Title VII." *Id.* at 274.  The Court even found it "a reasonable inference" from the allegations that the employer "started enforcing its previously unenforced dress code policy so that it could prohibit employees from wearing Black Lives Matter masks in its stores." *Id.* at 275.

Nevertheless, due to an "obvious alternative explanation," the Court affirmed dismissal of the claims.  As the Court explained, "[c]ommon sense . . . suggests that [the employer] would have had non-race-based reasons in June 2020 for prohibiting the wearing of Black Lives Matter masks." *Id.* at 275.  Specifically, it was an "obvious alternative explanation that [the employer] did not want to allow the mass expression of a controversial message by employees in their stores." *Id.* at 275 (quotations omitted).  Accordingly, the plaintiffs' "allegations simply d[id] not support a plausible inference that [the employer's prohibition on employees' displaying the Black Lives Matter message in their stores was a pretext for" discrimination. *Id.* at 276.  A court "cannot infer . . . discrimination based on factual allegations that are 'just as much in line with' [a] non-discriminatory explanation." *Id.* at 276 (*quoting Ocasio-Hernández*, 640 F.3d at 9).

Here, as in *Frith* and under the facts alleged, "[c]ommon sense . . . suggests that [Turbocam] . . . had non-[sex]-based reasons" for the Exclusion.  Bernier admits that the Plan is self-funded. *Complaint,* ¶¶ 1, 51.  Bernier admits Turbocam pays the costs of its employees' covered health services out of its own pocket. *Id.* ¶ 52.  Accordingly, the more services covered under the Plan, the more costly the plan becomes for Turbocam to maintain.  It is common knowledge that healthcare costs are expensive and continue to rise, and that healthcare plans exclude coverage for some services to control those costs.  Like any employer with a self-funded

plan, the allegations make it more than "logical" that, and the Exclusion easily "may be explained by the obvious alternative explanation" that, Turbocam determined that it cannot cover any and every procedure an employee may need or desire, and excluded this one to help control costs. That is common sense. The Plan itself certainly supports that. As detailed more fully above, the Exclusion is just one of over 50 different services and treatments excluded from the Plan.

Bernier has failed to plead "any factual allegations pointing in th[e] direction [of sex discrimination] and away from the obvious alternative explanation" that the Exclusion was adopted to control healthcare costs. *Frith*, 38 F.4th at 276 (quotations omitted). Where, as here, the "factual allegations . . . are just as much in line with [a] non-discriminatory explanation," sex discrimination may not be inferred. *Id.* Bernier's Title VII claims should be dismissed.

And while there are no cases squarely addressing coverage for gender identity disorders under RSA 354-A, New Hampshire courts have consistently held that in considering an issue of first impression, "[the Court] rel[ies] upon cases developed under Title VII to aid in [its] analysis." *Madeja v. MPB Corp.,* 149 N.H. 371, 378 (2003); *See N.H. Dep't of Corrections v. Butland,* 147 N.H. 676, 680, 797 A.2d 860 (2002). Accordingly, the Complaint lacks facts that plausibly support a finding of discrimination against Bernier under Title VII.

> B. **BERNIER'S DISCRIMINATION CLAIMS FAILS UNDER THE ADA AND RSA 354-A BECAUSE SHE CANNOT ESTABLISH THAT HER GENDER DYSPHORIA RESULTED FROM A PHYSICAL IMPAIRMENT.**

In Count IV, Bernier alleges TURBOCAM's Plan violates the ADA because the Plan excludes from covered services "gender-dysphoria treatment, including counseling, gender reassignment surgery or hormone therapy, and related preoperative and postoperative procedures." See Complaint, ⁋ 48. Bernier cannot, however, establish a disability

discrimination claim under the ADA or RSA 354-A, because she has not pled any facts indicating that her gender dysphoria diagnosis resulted from a physical impairment.

The ADA defines "disability" as "a physical or mental impairment that substantially limits one or more major life activities of such individual."  42 U.S.C. § 12102(1)(A).  The term "major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working."  § 12102(2)(A).  In enacting the ADA, Congress enumerated several exclusions to the ADA's definition of covered disabilities, including:

> (1) transvestism, transsexualism, pedophilia, exhibitionism, voyeurism, *gender identity disorders not resulting from physical impairments*, or other sexual behavior disorders;
> (2) compulsive gambling, kleptomania, or pyromania; or
> (3) psychoactive substance use disorders resulting from current illegal use of drugs.
> 42 U.S.C. § 12211(b)(1)-(3) (emphasis added).

In order to state a claim under Title II of the ADA, a plaintiff must allege "(1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefit of some public entity's services, programs or activities, or was otherwise discriminated against; and (3) that such an exclusion, denial of benefits, or discrimination was by reason of his disability."  *Parker v. Universidad de Puerto Rico*, 225 F.3d 1, 5 (1st Cir. 2000) (citing 42 U.S.C. §12132); *Buchanan v. Maine*, 469 F.3d 158, 170 – 171 (1st Cir. 2006) (plaintiff must satisfy all three prongs, including showing that he is a qualified individual).

Here, Bernier alleges her birth sex was male, however, she contends that she has known since a young age that she is female.  *See Complaint,* ¶ *43*.  She alleges that this "has caused [her] significant distress…[and] [f]or many years, she feared rejection if she shared her understanding of her gender identity with other people in her life and she struggled with self-

acceptance." *Id.* Bernier makes the conclusory allegation gender dysphoria is a disability under 42 U.S.C. section 12102. *See Complaint,* ⁋ 68. Nowhere in the Complaint, however, does Bernier allege that her gender dysphoria resulted from or was caused by a physical impairment. 42 U.S.C. § 12211(b)(1).

While Bernier makes broad generalizations about the implications one might face without treatment, suggesting that, "gender dysphoria predictably causes debilitating symptoms, including anxiety, depression, distress, self-harm, and in some cases, suicidality, and substantially limits a person's life activities," nowhere does she allege that *her* gender dysphoria resulted from a "physical impairment." Nor does she address the kind of "physical impairments" required by the ADA. As Bernier has failed to allege that her gender dysphoria results from a physical impairment, her ADA claim fails as a matter of law. *See Doe v. Northrop Grumman Sys. Corp.*, 418 F. Supp. 3d 921 (N.D. Ala. 2019) (granting motion to dismiss for failure to state a claim where plaintiff failed to allege some physical impairment resulted in her gender dysphoria); *Parker v. Strawser Constr., Inc.*, 307 F. Supp. 3d 744, 754 (S.D. Ohio 2018) (same); *see also Lange v. Houston Cty.*, 608 F.Supp.3d 1340, 1361–63 (M.D. Ga. June 2, 2022) (granting defendant's motion for summary judgment as to plaintiff's ADA claim for gender dysphoria because plaintiff failed to prove her gender dysphoria results from a physical impairment).

Again where there are no cases squarely addressing coverage for gender identity disorders under RSA 354-A, this Court looks to the experience of the federal courts in construing same under the provisions of ADA. *See generally, N.H. Dep't. of Corrections,* 147 N.H. 680 (*citing Scarborough v. Arnold,* 117 N.H. 803, 807 (1977) (on issues of first impression regarding R.S.A. 354-A, the Court relies on cases developed under Title VII of the Civil Rights Act).

Similarly, the Court may look to state case law from other jurisdictions. *See E.D. Swett. Inc. v. N. H. Comm'n for Human Rights,* 124 N.H. 404, 409 (1983) (referring to both federal and state case law from other jurisdictions to resolve questions of first impression).

## V.  CONCLUSION

WHEREFORE, for all the foregoing reasons, Defendant, Turbocam, Inc. respectfully requests that this Court dismiss Counts I-V pursuant to Fed. R. Civ. P. 12(b)(6).

Respectfully submitted,
Turbocam, Inc.,
By its attorney,

/s/ Bethany P. Minich

Dated: February 29, 2024

Bethany P. Minich, N.H. Bar # 265413
Litchfield Cavo LLP
6 Kimball Lane, Suite 200
Lynnfield, MA 01940
Tel. (781) 309-1500
minich@litchfieldcavo.com

### CERTIFICATE OF SERVICE

I, Bethany Minich, hereby certify that on February 29, 2024, the foregoing document, filed through the CM/ECF System, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

/s/ Bethany P. Minich

Bethany Minich