UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

CIVIL ACTION NO. 1:23-CV-00523

_____
                                                    )
LILLIAN BERNIER,                                    )
    Plaintiff                                      )
                                                    )
v.                                                  )
                                                    )
TURBOCAM, INC., HEALTH PLANS, INC., &               )
HARVARD PILGRIM HEALTH CARE OF NEW ENGLAND,         )
    Defendants                                     )
_____)

### DEFENDANT, TURBOCAM, INC.'S, REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Defendant, Turbocam, Inc. ("Turbocam"), hereby submits this Reply Brief to address plaintiff, Lillian Bernier's ("Bernier") Opposition as it is rife with assertions, but her Complaint is devoid of the factual allegations needed to support them or show a "reasonable expectation" of relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). At best, it provides mere speculation and sheer possibility, neither of which establishes a claim "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**I.  Bernier's allegations contradict her assertion that the Exclusion is direct evidence of sex discrimination or reasonably infers it.**

The allegations in Bernier's Complaint fail to support – and actually undermine – her assertion of sex discrimination. In her opposition, Bernier claims that only transgender people have a "gender identity [that] is not aligned with their birth sex," and only transgender people need medical care for gender dysphoria. *See* Pl. Opp., pp. 1, 6. She asserts exclusion No. 31 found in Turbocam's employee health plan (the "Exclusion") exclusively impacts only transgender people, *Id.* at 11, and that because she seeks treatment for gender dysphoria, which is

1

precluded by the Exclusion, Turbocam therefore treats her less favorably than other employees due to her sex. She asserts this is direct evidence of discrimination. *Id.* at 10. The allegations detailed in the Complaint, however, do not support the conclusion that the Exclusion violates the law.

In her Complaint, Bernier alleges that a person who is transgender either was born male but has a female gender identity (a transgender woman), or was born female but has a male gender identity (a transgender man). *See* Complaint, ¶¶ 23, 24, ECF No. 1. Bernier alleges she is a transgender woman. *Id.* ¶ 24. Bernier also alleges the "*Diagnostic and Statistical Manual of Mental Disorders*," or the DSM-V, is the authority for the diagnostic criteria of gender dysphoria. *Id.* ¶¶ 27, 70. Therein lies the rub.

Courts routinely reference and quote the DSM-V's criteria for gender dysphoria. *See, e.g., Kozak v. CSX Transportation, Inc.*, No. 20-CV-184S, 2023 WL 2955851, at *1 n.2 (W.D.N.Y. Apr. 14, 2023); *Mirabelli v. Olson*, No. 323CV00768BENWVG, 2023 WL 5976992, at *1 n.1 (S.D. Cal. Sept. 14, 2023). According to the courts, the criteria is composed primarily of six manifestations, any two of which are needed for a diagnosis of gender dysphoria. *See Kozak*, 2023 WL 2955851, at *1 n.2 (quoting DSM-V). While one manifestation could be solely transgender, three – half of them – are anything but that. Those three are "[a] strong desire to be of the other gender (*or some alternative gender* different from one's assigned gender);" "[a] strong desire to be treated as the other gender (*or some alternative gender* different from one's assigned gender); and "[a] strong conviction that one has the typical feelings and reactions of the other gender (*or some alternative gender* different from one's assigned gender)." *Id.* (quoting DSM-V) (emphasis added).

2

The aforementioned manifestations, i.e. the strong desire to be, or be treated as, the "other gender," or a conviction that one's feelings and convictions are of the "other gender," can be transgender desires or convictions. That is, a man who wants to be (or be treated as) the "other gender" wants to be (or be treated as) a female, and vice versa. A man, however, who wants to be (or be treated as) *not* the "other gender," but as "some alternative gender", is something else entirely. That describes someone born male but with a desire to be neither male nor female, or someone born female but with a desire to be neither female nor male. It does not describe a transgender person, i.e., someone born male but with a female gender identity or born female, with a male gender identity.

Gender dysphoria, then, is not limited to transgender people. It can affect, for example, a man who wants to be and be treated as neither female nor male, but be and be treated as an Alternative Gender. A man who wants to be and be treated as an Alternative Gender exhibits two of the manifestations of gender dysphoria, yet he identifies as neither male nor female. In fact, a woman who also wants to be and be treated as the same Alternative Gender as the man exhibits the precise gender dysphoria manifestations as the man, but is the opposite sex. Had either or both of them been the other sex, it would not affect their gender dysphoria diagnosis. Their gender dysphoria is not dependent on their particular sex.

Per the DSM-V criteria, then, incorporated by Bernier and quoted by the courts, gender dysphoria is not dependent on either a person's sex or transgender status, and it affects far more people than just those who are transgender. Moreover, while Bernier alleged that a transgender person *can* have gender dysphoria, there is no allegation that all transgender people have gender dysphoria or even are susceptible to it. The Exclusion, then, merely precludes treatment for a malady that affects only some transgender persons, that is not dependent on a person's sex, and

3

that affects a far broader group of people than just those who are transgender. That is hardly "intentionally treat[ing] a person worse because of sex." *Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644, 658 (2020). It is certainly not the "smoking gun" needed for direct evidence of sex discrimination. *Smith v. F.W. Morse & Co.*, 76 F.3d 413, 421 (1st Cir. 1996), nor does it reasonably infer discrimination. There is nothing in the Exclusion itself, nor is there any allegation in the Complaint, that shows sex was a "motivating factor" in Turbocam's decision to include the Exclusion in its employee health plan. *Id.* As health plan exclusions tend to do, it simply provides a somewhat comprehensive description of gender dysphoria treatment that unsurprisingly refers to sex change. Bernier does not assert that excluding gender dysphoria treatment from a health plan is somehow *per se* sex discrimination, nor could she. Similarly, Bernier provides no authority that a description of gender dysphoria treatments in a health plan exclusion is evidence of anything, much less direct evidence or a reasonable inference of discrimination under Title VII. Plaintiff's attempt to characterize the Exclusion as direct evidence or a reasonable inference of discrimination falls flat.

**II.     Bernier's reliance on her birth sex is unavailing.**

Bernier asserts that "[h]ad she been born female, she would not be impacted by the Exclusion." *See* Pl's. Opp. at 6. That is not so. Bernier alleges that she has gender dysphoria and that she needs treatment for it. *See* Complaint, ¶¶ 44, 46. She alleges she needs hormone replacement therapy, unspecified counseling, and unspecified surgeries to treat her gender dysphoria. *Id.* ¶ 46. Bernier fails to allege, however, that the hormone therapy, and whatever counseling and surgeries she seeks, are otherwise covered by or available under the health plan for any other medical problems. For example, if Bernier needed shoulder surgery to treat her gender dysphoria, she has not alleged that shoulder surgery is covered under the health plan to

4

treat an injury from a car wreck or any other need. Similarly, she does not allege that the hormone therapy and unknown counseling and surgeries she seeks are exclusive to or are needed only in the context of gender dysphoria treatment. For example, hormone therapy is presumably needed for any number of health issues, and Bernier does not allege otherwise.

With no facts alleged that her desired treatments are otherwise available under the health plan or exclusive to gender dysphoria, Bernier cannot plausibly allege she was denied or deprived of medical coverage. *Bostock* did not remove Bernier's burden to prove discrimination. *Bostock*, 590 U.S. 655. If she has not alleged she was deprived of medical coverage, she has not alleged an adverse employment action. A claim of sex discrimination under Title VII, however, even if direct evidence is proffered, requires Bernier to have suffered an adverse employment action. *See Smith*, 76 F.3d at 421. With no adverse employment action alleged, Bernier has no claim for sex discrimination under Title VII.

### III. Bernier's allegations show an "obvious alternative explanation" for the Exclusion.

Bernier asserts the Exclusion is a denial of "medical coverage to 'change [her] sex,'" *see* Pl's Opp. at 10, and that the health plan categorically excludes all treatment intended to change a person's sex. *Id.* at 1, 10. The facts alleged in her Complaint support neither of these claims. The Complaint contains no allegation of a categorical exclusion. The closest it came is a conclusory statement that the plan "excludes coverage of any treatment for … gender transition related care." *See* Complaint, ¶ 1. Though elsewhere quoting liberally from the health plan, Bernier fails to allege a single provision of the health plan that even hints at such an exclusion. The facts as pled are that the Exclusion affects coverage for medical treatment only when it is provided in the context of treating gender dysphoria. *Id.*, ¶ 48. As discussed in Section II, *supra*, Bernier does not allege the medical treatments she seeks are exclusive to gender dysphoria.

5

Similarly, Bernier provides no authority that an allegation of gender dysphoria treatment being excluded from a health plan is sufficient to show a plausible claim for sex discrimination. She cites only three district court cases from out of circuit, which even if they were authoritative, are easily distinguished. None of the three involved a health plan's exclusion of gender dysphoria treatment alone, which is the allegation at issue here. Instead, all three involved the outright exclusion of all gender reassignment surgery or treatment for sex change for any reason. *See Kadel v. Folwell*, 620 F. Supp. 3d 339, 354 (M.D.N.C. 2022) (plan excluded "coverage for treatments 'leading to or in connection with sex changes or modifications'"); *Lange v. Houston Cnty., Georgia*, 608 F. Supp. 3d 1340, 1346–47 (M.D. Ga. 2022) (plan excluded "coverage for '[d]rugs for sex change surgery' and '[s]ervices and supplies for a sex change and/or the reversal of a sex change'"); *Toomey v. Arizona*, No. CV1900035TUCRMLAB, 2019 WL 7172144, at *1 (D. Ariz. Dec. 23, 2019) (plan excluded gender reassignment surgery). An exclusion of all gender reassignment surgery and sex change treatment is a far cry from an exclusion for gender dysphoria treatment alone, which is what Bernier has alleged here.

Bernier claims *Frith v. Whole Foods Mkt., Inc.*, 38 F.4th 263, 275 (1st Cir. 2022), is inapplicable in part because it addressed "the sufficiency of the allegations" in the Complaint. *See* Pl's Opp. at 10. It is precisely the insufficiency of Bernier's allegations, however, that are at issue in this motion. She also argues that *Frith* is inapposite due to her characterization of the Exclusion as "direct evidence" of sex discrimination. *Id.* at 10. As discussed in Section I, *supra*, a health plan exclusion not dependent on either a person's sex or transgender status is hardly fertile ground for the "smoking gun" needed to show direct evidence. *Smith*, 76 F.3d at 421.

As Turbocam explained more fully in its memorandum of law, "[c]ommon sense . . . suggests that [Defendant] . . . had non-[sex]-based reasons" for the Exclusion. *Frith*, 38 F.4th

6

263, 275 (1st Cir. 2022); *see* Pl's Opp. at 6. The "obvious alternative explanation" for the Exclusion, like the 50+ other exclusions in the health plan, is control of healthcare costs. *Id.* at 275. Bernier half-heartedly drops a footnote that asserts costs cannot be a valid alternative explanation. *See* Pl's Opp. at 10 n.7. Her two cases, however, are inapposite. The first concerned a policy that on its face required female employees to contribute more money to a pension plan than male employees. *See City of Los Angeles, Dep't of Water & Power v. Manhart*, 435 U.S. 702, 704 (1978). Unlike *City of Los Angeles,* Bernier's allegations fall well short of showing a facially discriminatory policy. A health plan exclusion not dependent either on a person's sex or transgender status hardly could hardly be labeled facial discrimination. *See* Section I, *supra*. The other case merely reiterated costs do not override Title VII's express prohibition of excluding pregnancy coverage. *See Newport News Shipbuilding & Dry Dock Co. v. E.E.O.C.*, 462 U.S. 669, 684-85, 685 n.12 (1983).

Bernier has done nothing to bolster her failure to plead "any factual allegations pointing in th[e] direction [of sex discrimination] and away from the obvious alternative explanation" that the Exclusion was adopted to control healthcare costs. *Frith*, 38 F.4th at 276 (quotations omitted).

## IV. Bernier's ADA and RSA 354-A claims fail because she failed to plead a physical impairment caused her gender dysphoria.

For Bernier's alleged gender dysphoria to qualify as a disability under the ADA, it had to have "result[ed] from a physical impairment." 42 U.S.C.A. § 12211(b)(1) ("Under this chapter, the term 'disability' shall not include . . . gender identity disorders not resulting from physical impairments"). It is unclear whether Bernier asserts she has met this standard. *See* Pl's Opp. at 12-13. Regardless, as Turbocam stated in its Memorandum of Law, "[n]owhere in the Complaint

7

. . . does [Plaintiff] allege that her gender dysphoria resulted from or was caused by a physical impairment." See Def. Memo. at 9 (citing 42 U.S.C. § 12211(b)(1)).

While courts are split on the question of whether the ADA's exclusion applies to gender dysphoria, *see Guthrie v. Noel*, No. 1:20-CV-02351, 2023 WL 8115928, at *7, 8 (M.D. Pa. Sept. 11, 2023) (collecting cases), "the [apparent] majority approach" finds that it does apply and that gender dysphoria is excluded from the ADA. *Id.* at 8 (collecting cases). The majority "views the text's language as expressing Congress's intent 'to exclude from the ADA's protection both disabling and non-disabling gender identity disorders that do not result from a physical impairment.'" *Id.* (quoting *Parker v. Strawser Constr., Inc.*, 307 F. Supp. 3d 744, 753–54 (S.D. Ohio 2018)). As one court explained, the reasoning is based on the DSM-V. In 2013, the DSM-V "replaced" the term "gender identity disorders" with "gender dysphoria." *Doe v. Northrop Grumman Sys. Corp.*, 418 F. Supp. 3d 921, 929 (N.D. Ala. 2019). The court found the two terms are "legally synonymous" because "[t]he current term [i.e., gender dysphoria] is more descriptive than the previous DSM-IV term *gender identity disorder* and focuses on dysphoria as the clinical problem, not identity per se." *Id.* (quoting American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders – Fifth Edition*, at 451 (2013)) (emphasis in original). As this view is in line with the *Bostock* court's reliance on the "the ordinary public meaning" of Title VII, it is doubtless the correct one. *Bostock*, 590 U.S. 655.

Bernier points to a total of four allegations from her Complaint to provide the facts needed to show the necessary physical impairment. The first alleges that gender dysphoria affects many bodily systems and is caused by an atypical bodily interaction. *See* Pl's Opp. at 12. Bernier makes no allegation that she has an atypical bodily interaction of any kind, and certainly not one that caused her gender dysphoria, and even if she had, she provides no authority that is

8

an impairment recognized by the ADA. The second alleges the etiology of gender dysphoria, but makes no allegation that Bernier's gender dysphoria was caused by a physical impairment. *Id.* The third is a conclusory allegation that gender dysphoria is a physical impairment protected by the ADA. *Id.* at 12-13. The fourth, though unclear, is a conclusory allegation that seems to allege Bernier's gender dysphoria somehow limits her in several ways. *Id.* at 13. None of these alleged facts plausibly allege a physical impairment caused Bernier's gender dysphoria.

In sum, Bernier has failed to allege that her gender dysphoria results from a physical impairment. As a result, her ADA claim fails as a matter of law.

## V. Conclusion

WHEREFORE, for all the foregoing reasons, Defendant, Turbocam, Inc. respectfully requests that this Court dismiss Counts I-V pursuant to Fed. R. Civ. P. 12(b)(6).

|  |  |
|---|---|
| | Respectfully submitted, |
| | Turbocam, Inc., |
| | By its attorney, |
| | |
| | /s/ Bethany P. Minich |
| April 22, 2024 | _____ |
| | Bethany P. Minich, N.H. Bar # 265413 |
| | Litchfield Cavo LLP |
| | 6 Kimball Lane, Suite 200 |
| | Lynnfield, MA 01940 |
| | (781) 309-1500 |
| | minich@litchfieldcavo.com |

/s/ Roger Byron

_____

Roger Byron (*pro hac vice*)
Texas State Bar. no. 24062643
First Liberty Institute
2001 W. Plano Pky., Suite 1600
Plano, TX 75075
(972) 941-4444
rbyron@firstliberty.org

## CERTIFICATE OF SERVICE

I, Bethany Minich, hereby certify that on April 22, 2024, the foregoing document, filed through the CM/ECF System, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

/s/ Bethany P. Minich

_____

Bethany Minich

10