IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE
CONCORD DIVISION

LILLIAN BERNIER,

    *Plaintiff*,

v.                                                  No. 1:23-CV-00523-lm-aj

TURBOCAM, INC.; HEALTH PLANS, INC.;
HARVARD PILGRIM HEALTHCARE OF
NEW ENGLAND, INC.,

    *Defendants*.

## MEMORANDUM OF LAW IN SUPPORT OF TURBOCAM'S MOTION TO INTERVENE

Turbocam is already a named defendant in Counts I through V of this civil action. Turbocam respectfully moves to intervene as a defendant in Count VI of this action, brought solely against the alleged third-party administrator of Turbocam's self-funded health benefits plan. Compl. ¶¶ 79–84. Turbocam has a right to intervene because Turbocam has an interest in protecting its right to have a third-party administrator that can administer a health plan that is consistent with the religious beliefs of Turbocam and its owners. *See Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682 (2014). That interest cannot be fully represented or protected by the alleged third-party administrator, which does not share Turbocam's religious mission. *See* Fed. R. Civ. P. 24(a)(2). In the alternative, Turbocam should be granted permissive leave to intervene because: (1) Count VI shares common questions of law and fact with Turbocam's defense to the remaining claims; and (2) Turbocam has significant interests at stake in the litigation of Count VI, including retaining a third-party administrator that can administer a health plan consistent with Turbocam's religious beliefs. *See* Fed. R. Civ. P. 24(b)(1)(B).

1

## BACKGROUND

Turbocam is a closely held family business that operates according to Christian principles. Ex. B, Declaration of Marian Noronha ¶ 2 ("Declaration"); *see Hobby Lobby*, 573 U.S. at 717. Since 1994, the company has adhered to a mission statement that "Turbocam exists as a business for the purpose of honoring God, creating wealth for its employees, and supporting Christian service to God and people. … As we interact with our customers, suppliers, and employees we hold ourselves accountable to God's law expressed in the Bible." Declaration ¶¶ 3–4; *see also* Turbocam Int'l, *About*, https://www.turbocam.com/about/ (last visited July 8, 2024). Pursuant to that mission, Turbocam has sacrificed profits to protect its employees' Sabbath rest, avoid layoffs, and make charitable contributions in New Hampshire and foreign countries. Declaration ¶¶ 5–6, 8–10. Turbocam's owners believe that one's sex is ordained by God and should not be erased or obscured by medical intervention. Declaration ¶¶ 14–15. And as a result, they do not believe God will allow the use of Turbocam's resources, including its health plan, to assist employees in procuring treatment to erase or obscure their sex. *Id.* And they believe it would be sinful for them to ignore God's commands. *Id.*

Plaintiff Bernier has worked for Turbocam since 2019. Answer ¶ 19, Compl. ¶ 19. Turbocam provides its employees with healthcare coverage through a self-funded health benefits plan. Answer ¶ 51, Compl. ¶ 51. The alleged third-party administrators ("TPAs") of this plan are Health Plans, Inc., and Harvard Pilgrim Health Care of New England. Answer ¶¶ 20, 51; Compl. ¶¶ 20, 51. Turbocam employees, like Bernier, must pay into the health plan to be eligible for health benefits. Answer ¶ 52, Compl. ¶ 52. Turbocam pays the cost of covered health services for its employees instead of paying a monthly premium. Answer ¶ 52, Compl. ¶ 52. Turbocam's plan contains an exclusion that precludes coverage for "[g]ender dysphoria

treatment, including but not limited to, counseling, gender reassignment surgery or hormone therapy and related preoperative and postoperative procedures, which, as their objective, change the person's sex and any related complications." ECF No. 21-2 at 8. Bernier alleges that the exclusion has caused a denial of coverage to Bernier for "hormone replacement therapy, counseling, and medically recommended surgeries." Compl. ¶¶ 46–47.

Bernier sued both Turbocam and its alleged TPAs. In Counts I through V, Bernier asserted discrimination claims against Turbocam under federal and state employment law. Compl. ¶¶ 59–78. In Count VI, Bernier asserted a claim against the alleged TPAs for discrimination under Section 1557 of the Affordable Care Act ("ACA"), 42 U.S.C. § 18116(a), because they applied the plan's exclusion for gender dysphoria treatment. Compl. ¶¶ 79–84. Bernier seeks money damages from all defendants, a declaratory judgment, and an injunction ordering the TPAs to stop applying the exclusion. Compl. at 13–14.

Turbocam conferred with counsel for all parties. The alleged TPAs neither assent to nor oppose Turbocam's intervention. Bernier opposes Turbocam's intervention.

## ARGUMENT

Under Rule 24(a), "the court must permit anyone to intervene" if four conditions are satisfied. Fed. R. Civ. P. 24(a). A movant seeking to intervene as of right must show: (1) its motion is timely; (2) it has "an interest relating to the property or transaction which is the subject of the action"; (3) "the disposition of the action may as a practical matter impair or impede [its] ability to protect that interest"; and (4) its "interest will not be adequately represented by existing parties." *Travelers Indem. Co. v. Dingwell*, 884 F.2d 629, 637 (1st Cir. 1989).

Alternatively, under Rule 24(b), a movant seeking permission to intervene needs only show that it "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). If the movant clears that "threshold," the "district court can consider almost any factor rationally relevant but enjoys very broad discretion in granting or denying the motion." *Daggett v. Comm'n on Governmental Ethics & Election Pracs.*, 172 F.3d 104, 113 (1st Cir. 1999).

## I. Turbocam has the Right to Intervene

Turbocam satisfies all four requirements to intervene as of right in support of the defendants to Count VI.

### A. Turbocam's Motion Is Timely

Timeliness is a "fact-sensitive" inquiry that turns on "the totality of the circumstances." *R&G Mortg. Corp. v. Fed. Home Loan Mortg. Corp.*, 584 F.3d 1, 7 (1st Cir. 2009). The relevant factors include how long the movant took to seek to intervene after learning of the threat to his interests, the "status of the litigation at the time of the request," and other facts that might cause prejudice to either the existing parties or the intervenor. *Id.* Courts assess "prejudice in the context of the particular litigation." *P.R. Tel. Co. v. Sistema de Retiro de los Empleados del Gobierno y la Judicatura*, 637 F.3d 10, 15 (1st Cir. 2011).

Turbocam filed this motion for intervention promptly. This motion comes less than eight months after Bernier filed the complaint. And crucially, "the case ha[s] not progressed beyond the initial stages" of litigation at this point. *Geiger v. Foley Hoag LLP Ret. Plan*, 521 F.3d 60, 64 (1st Cir. 2008). The pretrial conference happened on June 11. Initial disclosures are not due until July 15, no written discovery has been served, and no depositions have been scheduled. Turbocam's answer was just filed on June 17. Intervening at this stage is prompt.

4

Moreover, Turbocam's intervention will cause no prejudice to the parties. Adding a new party to Count VI will not slow the case down. Turbocam, after all, is already a party to this case as the defendant for the related Counts I through V, which raise common questions of fact. *See Known Litig. Holdings, LLC v. Navigators Ins. Co.*, No. 3:12-cv-269, 2014 WL 6388787, at *4 (D. Conn. Nov. 14, 2014) (permitting existing defendant to intervene for other claims in the same case).

Count VI may also raise common questions of law with Counts I through V. In Count VI, Bernier claims that the TPAs violated Section 1557 because Turbocam's exclusion violates either section 504 of the Rehabilitation Act or Title IX of the Education Amendments of 1972, which are both incorporated into Section 1557. Compl. ¶¶ 79–84; 42 U.S.C. § 18116; 29 U.S.C. § 794; 20 U.S.C. § 1681. On the first theory, Bernier's disability discrimination claim in Count VI would be "analyzed under the same standards" as Count IV's cause of action under the Americans with Disabilities Act. *Oliveras-Sifre v. P.R. Dep't of Health*, 214 F.3d 23, 25 n.2 (1st Cir. 2000); *see* 42 U.S.C. § 12112. And on the second theory, Turbocam anticipates Bernier will argue that Title VII and Title IX, and hence Section 1557, prohibit the same conduct, which supports intervention, even though Turbocam disagrees with this argument. Compl. ¶¶ 59–61; *see also Adams by & through Kasper v. Sch. Bd. Of St. Johns Cnty.*, 57 F.4th 791, 811–15 (11th Cir. 2022) (en banc) (holding that the context of Title IX means it does not cover gender identity, unlike Title VII).

Moreover, the existing defendants for Count VI do not oppose intervention. And Bernier cannot be prejudiced by Turbocam's involvement after Bernier has already sued Turbocam over the same basic conduct, and this part of the case is just emerging from the

5

early pleading stages. Turbocam's intervention in Count VI will therefore not prejudice the parties.

### B. Turbocam has an Interest Relating to the Subject of the Action

An intervenor must show an interest that "bear[s] a sufficiently close relationship to the dispute between the original litigants." *Travelers*, 884 F.2d at 638 (quotation marks omitted). The interest in the litigation must be "direct, substantial, and legally protectible." *Id.* (quotation omitted). A movant may satisfy the interest requirement with a showing that its "contractual rights may be affected by a proposed remedy," *B. Fernández & Hnos., Inc. v. Kellogg USA, Inc.*, 440 F.3d 541, 545 (1st Cir. 2006), or that the litigation directly threatens "[p]otential economic harm" or "an economic right or benefit presently enjoyed by any would-be intervenor," *Pub. Serv. Co. of N.H. v. Patch*, 136 F.3d 197, 205 (1st Cir. 1998). It is not enough, however, to claim an interest that is "too contingent or speculative." *Ungar v. Arafat*, 634 F.3d 46, 52 (1st Cir. 2011). Turbocam satisfies the interest standard.

Three precedents show how this standard applies in a particular case. A movant had a sufficient interest to intervene in a suit that threatened to bring about stricter regulation that would harm them economically and require them to conduct business differently. *Conservation L. Found. of New Eng., Inc. v. Mosbacher*, 966 F.2d 39, 43 (1st Cir. 1992). Likewise, a company had a sufficient interest to intervene when its corporate parent faced a suit that might result in an injunction that would alter the enforceability of the intervenor's contracts. *B. Fernández*, 440 F.3d at 545. Conversely, an insurer did not have a sufficient interest to intervene in the dispute between an injured plaintiff and the insured defendant when it was still unresolved whether the insurer must actually provide coverage for the plaintiff's claimed injuries. *Travelers*, 884 F.2d at 638.

Put to this yardstick, Turbocam's interest—fear that adjudication of Count VI will force its TPAs to renege on the contractual relationship that Turbocam relies on—suffices. As in *Conservation Law Foundation*, a loss on Count VI will cause financial harm to Turbocam. Turbocam will need to either pay for a new TPA, one willing to assume the risk of liability, or pay more for the health benefits it offers to employees, raising the cost of business. As in *B. Fernández*, declaratory relief and an injunction ordering the TPAs to ignore the coverage exclusion will impair Turbocam's contractual interest in having their employee health-benefits plan administered on the terms Turbocam agreed to. Unlike in *Travelers*, however, the harm to Turbocam is direct, not contingent on a second adjudication. If the alleged TPAs are enjoined from complying with the current contract, Turbocam will be stuck without an administrator that can administer its current health plan immediately.

Moreover, Turbocam's contractual interest is deeply tied to its religious beliefs. Count VI directly threatens Turbocam's ability to offer a health plan that does not violate its owners' religious convictions. In a similar case, the Little Sisters of the Poor had a sufficient interest to intervene to defend federal regulations that provided them a religious exemption from a contraceptive coverage mandate for employers. *Pennsylvania v. President of the United States*, 888 F.3d 52, 57–59 (3d Cir. 2018). Like the Little Sisters, if Bernier prevails on Count VI, Turbocam "will be forced to choose between violating their faith and paying" fines to the federal government for declining to provide health insurance. *Id.* at 58 (quotation marks omitted). That Turbocam's interest is entwined with its religious practice reinforces that its interest justifies this intervention.

### C. This Action Will Impair Turbocam's Ability To Protect that Interest

Whether this action could impair Turbocam's ability to protect its interest in keeping its health benefits contract "must be put in practical terms rather than in legal terms." 7C Wright & Miller, *Federal Practice and Procedure* § 1908.2 (3rd ed.). This factor is "satisfied whenever disposition of the present action would put the movant at a practical disadvantage in protecting its interest." *Id.*

The litigation of Count VI threatens significant practical disadvantages to Turbocam. Due to this litigation, Turbocam's alleged TPAs "could be subject to a federal court injunction against implementation of" the current contract with Turbocam. *Daggett*, 172 F.3d at 110; *see B. Fernández*, 440 F.3d at 545. And if the TPAs are held liable under the ACA and enjoined, Turbocam may struggle or be unable to find a new TPA willing to implement Turbocam's employee health plan consistent with Turbocam's religious beliefs due to "the adverse impact of stare decisis" and the deterrent effect of such a judicial decision. *Int'l Paper Co. v. Inhabitants of Town of Jay*, 887 F.2d 338, 344 (1st Cir. 1989) (quotation omitted); Wright & Miller, *supra*, § 1908.2 ("stare decisis by itself may, in a proper case, supply the practical disadvantage that is required"). Indeed, if Turbocam continues to employ a TPA that will maintain a similar exclusion, Turbocam and its future TPA "might be forced to present identical issues of law and fact to the same court in a later action," confirming that the precedential effect might cause a significant practical disadvantage. *Jet Traders Inv. Corp. v. Tekair, Ltd.*, 89 F.R.D. 560, 569 (D. Del. 1981).

### D. Turbocam's Interest Will Not Be Adequately Represented

"An intervenor need only show that representation may be inadequate, not that it is inadequate." *Conservation L. Found.*, 966 F.2d at 44. The "burden of making that showing

should be treated as minimal." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972). The more "tangible and substantial" the movant's interest, the "lighter" the burden to show inadequate representation. *B. Fernández*, 440 F.3d at 546. Although courts apply a presumption of adequacy when the party seeking to intervene has the same ultimate goal as the existing defendant, this "means no more … than calling for an adequate explanation as to why what is assumed … is not so." *Maine v. Dir., U.S. Fish & Wildlife Serv.*, 262 F.3d 13, 19 (1st Cir. 2001).

Two independent explanations of inadequacy have sufficed to overcome any presumption. First, when the movant will put forward a separate defense, inadequacy is satisfied. *Cotter v. Mass. Ass'n of Minority L. Enf't Officers*, 219 F.3d 31, 35–37 (1st Cir. 2000); *cf. Students for Fair Admission, Inc. v. President & Fellows of Harvard Coll.*, 807 F.3d 472, 476 (1st Cir. 2015). Second, when the movant "has more to lose" than the existing defendant to the litigation, inadequacy is satisfied. *B. Fernández*, 440 F.3d at 547.

Turbocam's explanations satisfy the minimal burden of showing inadequacy for both reasons. First, Turbocam plans to claim that imposing Section 1557 liability on their TPAs violates the Religious Freedom Restoration Act ("RFRA") because it "substantially burden[s]" Turbocam's religious practice, and that liability is not the "least restrictive means" of furthering a "compelling governmental interest." 42 U.S.C. § 2000bb-1(a)–(b). This defense advances the "goal of defeating [Bernier's] claim[]" in Count VI. *Students for Fair Admission*, 807 F.3d at 476. It is no mere "supplement to the defendants' main argument." *Maine*, 262 F.3d at 19. Instead, it is a separate, standalone affirmative defense. And the TPAs are not well-positioned to assert Turbocam's RFRA rights, as they have informed Turbocam's counsel that they do not intend to do so. Declaration ¶ 17. Similarly, the TPAs have given no

indication that they share the same religious beliefs as Turbocam, so presumably, they do not and cannot have the same interest as Turbocam in defending Turbocam's rights. There is no reason to believe they adequately could or would defend Turbocam's religious convictions. Moreover, asserting this RFRA defense will require the "introduction of evidence" that would otherwise not be provided for Count VI. *Maine*, 262 F.3d at 20. Turbocam's intervention is necessary to ensure this dispositive defense of the plan's exclusion is adequately raised.

Second, an "[a]symmetry in the intensity … of interest" in this matter exists between Turbocam and the alleged TPAs. *B. Fernández*, 440 F.3d at 546 (quotation omitted). For the TPAs, Count VI just risks damages to one individual and an injunction affecting one of their many clients. But for Turbocam, Count VI poses a more existential threat. If administering its self-funded healthcare-benefits plan is unlawful discrimination under the ACA, Turbocam faces dire options amounting to a Hobson's choice, Turbocam will need to either: (1) remove the exclusion and pay for gender dysphoria treatment for any of the nearly 1,000 employees that request them, violating the Noronha's religious beliefs in the process; or (2) stop offering its employees health insurance at all, seriously impairing its ability to hire and retain a qualified workforce.[1] Declaration ¶ 16; *see Hobby Lobby*, 573 U.S. at 722. Turbocam's interest in the claim is "sufficiently different in … degree" to show the possibility of inadequacy. *B. Fernández*, 440 F.3d at 546.

---

[1] Moreover, by not offering its employees health insurance, Turbocam would face a fine of over $2,000 per employee. *See* Declaration ¶ 16; *Hobby Lobby*, 573 U.S. at 720–21. And "employers can deduct the cost of providing health insurance, but apparently cannot deduct the amount of the penalty that they must pay if insurance is not provided." *Id.* at 722 (citation omitted).

10

## II. In the Alternative, the Court Should Grant Permissive Intervention.

In the alternative, the Court *may* grant permissive intervention because Turbocam's motion is "timely" and its defense shares "a common question of law or fact" with the claim against the TPAs. Fed. R. Civ. P. 24(b)(1)(B). And the Court *should* grant permissive intervention because Turbocam "has significant interests at stake in this litigation and … the outcome may impair its ability to protect those interests." *Melone v. Coit*, 100 F.4th 21, 28 (1st Cir. 2024) (quotation omitted).

Start with the two threshold findings required by Rule 24(b). First, Turbocam's motion is timely. *See supra* Part I.A. And second, it presents factual and legal questions that are intertwined with the existing claims. This bar is cleared "when the intervenor has an economic interest in the outcome of the suit." 7C Wright & Miller, *supra*, § 1911; *Melone*, 100 F.4th at 28–29. For all the reasons discussed above, Turbocam's economic interests are directly implicated by Count VI.

And the Court should exercise its discretion and allow Turbocam to intervene in this claim. Balancing the relevant factors, Turbocam has significant interests at stake, but Bernier will not be prejudiced given the timeliness of Turbocam's motion. *See Melone*, 100 F.4th at 28–29.

## CONCLUSION

Turbocam is entitled to intervene as of right in support of the alleged TPAs' defense of Count VI. In the alternative, the court should exercise its discretion to grant Turbocam permissive intervention.

Dated:  July 11, 2024

        Respectfully Submitted,

        TURBOCAM, INC.,
        By and through its attorneys,

        */s/ Francis R. Genus*
        Francis R. Genus III, N.H. Bar #274426
        Genus Law
        PO Box 300
        Franklin, NH 03235
        (732) 585-3291
        Frank@Genus-Law.com

        Jonathan Berry (*pro hac vice forthcoming*)
        James R. Conde (*pro hac vice forthcoming*)
        Andrew W. Smith (*pro hac vice forthcoming*)
        Boyden Gray PLLC
        801 17th St NW, Suite 350
        Washington, DC 20006
        (202) 955-0620
        jberry@boydengray.com

        Roger L. Byron*
        Texas State Bar No. 24062643
        First Liberty Institute
        2001 West Plano Parkway, Suite 1600
        Plano, Texas 75075
        972-941-4444
        rbyron@firstliberty.org
        *Admitted Pro Hac Vice

## CERTIFICATE OF SERVICE

      I, Francis R. Genus III, hereby certify that on July 11, 2024, the foregoing document, filed through the CM/ECF System, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

      */s/ Francis R. Genus III*
      Francis R. Genus III