# EXHIBIT 10

Defendant Turbocam, Inc.'s Answers to Plaintiff Lillian Bernier's First Set of Interrogatories

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| LILLIAN BERNIER, | |
| Plaintiff, | |
| v. | Civil Action No. 1:23-cv-00523-LM-AJ |
| TURBOCAM, INC., | |
| Defendants. | |

## DEFENDANT TURBOCAM, INC.'S ANSWERS TO
## PLAINTIFF LILLIAN BERNIER'S FIRST SET OF INTERROGATORIES

Pursuant to Federal Rule of Civil Procedure 33, the Defendant, Turbocam, Inc.

("Turbocam") answers the Plaintiff, Lillian Bernier's interrogatories as follows:

**Interrogatory No. 1**

Please identify any and all corporate entities in the United States in which Marion B. Noronha has had any ownership interest (excluding publicly traded corporations), directly or indirectly, from 1985 to present, or been an officer or director in a corporate entity, and state the name of the entity (and any changes of name), any registered trade name, the form of the corporate entity, the date the entity was incorporated or formed, and Marion B. Noronha's ownership interest in the corporate entity.

**Answer to Interrogatory No. 1**

Turbocam, by and through its attorneys, objects to this interrogatory on the grounds that it is overly broad and seeks information that is irrelevant to the claims or defenses asserted in this matter, is not proportional to the needs of the case and is not reasonably calculated to lead to the discovery of admissible evidence per Fed. R.Civ.P. 26(b).  Subject to and without waiving the foregoing objections, Turbocam states as follows:

See chart, identifying ownership interests, which is attached hereto and incorporated herein by reference pursuant to Fed.R.Civ.P. 33(d)(1).

**Interrogatory No. 2**

For each corporate entity identified in response to Interrogatory Number 1, identify all other persons having at any time any ownership interest, direct or indirect, in the entity, and the directors and officers of such entity.

**Answer to Interrogatory No. 2**

Turbocam, by and through its attorneys, objects to this interrogatory on the grounds that it is overly broad and seeks information that is irrelevant to the claims or defenses asserted in this matter, is not proportional to the needs of the case and is not reasonably calculated to lead to the discovery of admissible evidence per Fed. R.Civ.P. 26(b).  Subject to and without waiving the foregoing objections, Turbocam states as follows:

See chart, identifying ownership interests, which is attached hereto and incorporated herein by reference pursuant to Fed.R.Civ.P. 33(d)(1).

**Interrogatory No. 3**

If Marian B. Noronha has ever conducted a business in the United States in the form of a partnership from 1985 to present, please identify such partnership, including the names, date of formation, other partners and Mr. Noronha's partnership interest and role.

**Answer to Interrogatory No. 3**

Turbocam, by and through its attorneys, objects to this interrogatory on the grounds that it is overly broad and seeks information that is irrelevant to the claims or defenses asserted in this matter, is not proportional to the needs of the case and is not reasonably calculated to lead to the discovery of admissible evidence per Fed. R.Civ.P. 26(b).  Subject to and without waiving the foregoing objections, Turbocam states as follows:

Not applicable.

**Interrogatory No. 4**

Please state the names of the current officers and directors of Turbocam and state their addresses, relationship to Marian B. Noronha, dates they have been officers and directors, and all of their roles, duties and responsibilities with respect to Turbocam.

**Answer to Interrogatory No. 4**

Turbocam, by and through its attorneys, objects to this interrogatory on the grounds that it is overly broad and seeks information that is irrelevant to the claims or defenses asserted in this matter, is not proportional to the needs of the case and is not reasonably calculated to lead to the discovery of admissible evidence per Fed. R.Civ.P. 26(b).  Subject to and without waiving the foregoing objections, Turbocam states as follows:

1.  Marian B. Noronha, 7 Hook Mill Road, Madbury NH 03823
    - President 1987-present;
    - Treasurer 1987-present
    - Secretary 1987-present
    - Director 1987-present

2. Allethaire S. Noronha, 7 Hook Mill Road, Madbury NH 03823 – Wife to Marian B. Noronha
   - Director: 1994-present
   - Job title: Director of Charitable Giving – see job description, attached hereto and incorporated herein by reference pursuant to Fed.R.Civ.P. 33(d)(1).

3. Michael Noronha, 15 Nute Road, Madbury NH 03823 – Son to Marian B. Noronha
   - Assistant Secretary: 2023-present
   - Job Title: Vice President – see job description, attached hereto and incorporated herein by reference pursuant to Fed.R.Civ.P. 33(d)(1).

4. D. Douglas Patteson, 754 Province Road, Strafford, NH 03884 – No relationship to Marian B. Noronha
   - Chief Financial Officer  - 2005-present
   - Job Title: Chief Financial Officer – see job description, attached hereto and incorporated herein by reference pursuant to Fed.R.Civ.P. 33(d)(1).

## Interrogatory No. 5

Please identify all persons and entities having any ownership interest in Turbocam from 2019 to present, directly or indirectly, including the "trusts" referenced in paragraph 2 of the Declaration of Marion Noronha filed on July 11, 2024 in the U.S. District Court in *Bernier v. Turbocam, Inc.*, Docket No. 1:23-CV-00523 (hereinafter referred to in these interrogatories as the "Noronha Declaration").

## Answer to Interrogatory No. 5

Turbocam, by and through its attorneys, objects to this interrogatory on the grounds that it is overly broad and seeks information that is irrelevant to the claims or defenses asserted in this matter, is not proportional to the needs of the case and is not reasonably calculated to lead to the discovery of admissible evidence per Fed. R.Civ.P. 26(b).  Subject to and without waiving the foregoing objections, Turbocam states as follows:

- Declaration of Trust of Marian B. Noronha Dated December 1, 2004 (a grantor trust);

- Irrevocable Trust of Allethaire S. Noronha dated December 10, 2012 (a grantor trust):
   - 19.6% non-voting shares- Daniel J. Noronha Share of the Irrevocable Trust of Allethaire S. Noronha dated December 10, 2012 (a grantor trust)
   - 19.6% non-voting shares- Timothy P. Noronha Share of the Irrevocable Trust of Allethaire S. Noronha dated December 10, 2012 (a grantor trust)
   - 19.6% non-voting shares- James A. Noronha Share of the Irrevocable Trust of Allethaire S. Noronha dated December 10, 2012 (a grantor trust)
   - 19.6% non-voting shares- Michael S. Noronha Share of the Irrevocable Trust of Allethaire S. Noronha dated December 10, 2012 (a grantor trust)
   - 19.6% non-voting shares- Gabriel L. Noronha Share of the Irrevocable Trust of Allethaire S. Noronha dated December 10, 2012 (a grantor trust)

**Interrogatory No. 6**

With respect to any trusts identified in the answer to Interrogatory Number 5, please identity the name of the trust, the date it was formed, the purpose of the trust, whether the trust is revocable or irrevocable, and the names of all settlors, trustees, and beneficiaries of the trust.

**Answer to Interrogatory No. 6**

Turbocam, by and through its attorneys, objects to this interrogatory on the grounds that it is overly broad and seeks information that is irrelevant to the claims or defenses asserted in this matter, is not proportional to the needs of the case and is not reasonably calculated to lead to the discovery of admissible evidence per Fed. R.Civ.P. 26(b).  Subject to and without waiving the foregoing objections, Turbocam states as follows:

- Declaration of Trust of Marian B. Noronha (a grantor trust)
    - Date of formation: December 1, 2004
    - Purpose: Estate planning
    - Trust is revocable
    - Settlor: Marian B. Noronha
    - Trustee: Marian B. Noronha
    - Beneficiaries: Marian B. Noronha during his lifetime; Allethaire Noronha thereafter if she survives him; after her death, (a) For the King Charitable Fund (a donor-advised fund at the National Christian Charitable Foundation, Inc., a Georgia non-profit corporation) to the extent necessary to reduce the federal taxable estate to zero; and (b) the balance to a Family Trust for the benefit of the senior Noronhas' descendants then living *per stirpes*.

- Irrevocable Trust of Allethaire S. Noronha dated December 10, 2012 (a grantor trust)
    - Date of formation: December 10, 2012
    - Purpose: Estate planning
    - Trust is irrevocable
    - Settlor: Allethaire S. Noronha
    - Trustee: IQEQ Trust Company
    - Beneficiaries: Each of the Noronhas' sons and his descendants, *per stirpes*, indefinitely; if at some point in the future, there is no living descendant of the senior Noronhas, the balance to For the King Charitable Fund.

**Interrogatory No. 7**

With respect to any and all self-funded health benefits plan through which Turbocam has ever offered health or medical insurance coverage to its employees from 2015 to present, state the name of the plan, the plan sponsor, the date it was established or implemented, and the name(s) of any third-party administrator.

**Answer to Interrogatory No. 7**

Turbocam, by and through its attorneys, objects to this interrogatory on the grounds that it is overly broad and seeks information that is irrelevant to the claims or defenses asserted in this matter, is not proportional to the needs of the case and is not reasonably calculated to lead to the discovery of admissible evidence per Fed. R.Civ.P. 26(b).  Subject to and without waiving the foregoing objections, Turbocam states as follows:

PPO HDHP
Plan Sponsor: Turbocam, Inc.
Plan Name: Turbocam, Inc. Employee Group Medical Plan (H.S.A PPO) (the Plan").
Plan Administered by: The plan is administered by Health Plans, Inc. ("HPI").
Plan Established: January 1, 2021

HMO Plan
Plan Sponsor: Turbocam, Inc.
Plan Name: Turbocam, Inc. Employee Group Medical Plan (Network LP Plan)
Plan Administered by: The plan is administered by Health Plans, Inc. ("HPI").
Plan Established: January 1, 2021

**Interrogatory No. 8**

If the date that Turbocam first established and implemented a self-funded health benefits plan for its employees identified in Interrogatory Number 7 was after May 14, 2019 (the date of Plaintiff Lillian Bernier's letter offering employment), please identity all health benefits plans as of May 14, 2019 through which Turbocam offered health or medical insurance coverage to employees, including Plaintiff Lillian Bernier, and state the name of the plan and the insurer or other organization providing such coverage.

**Answer to Interrogatory No. 8**

For the years 2019 and 2020, Turbocam offered two health plans to all eligible employees, including the Plaintiff: (1) A High Deductible Health Plan (H.S.A. PPO); and (2) an HMO Plan.

Years: 2019 & 2020 H.S.A. PPO
Plan Sponsor: Turbocam, Inc.
Plan Name: Turbocam, Inc. Health and Welfare Benefit Plan - The Best Buy HAS PPO Plan
Plan Insurer: Harvard Pilgrim Health Care Insurance Company

Years: 2019 & 2020 HMO
Plan Sponsor: Turbocam, Inc.
Plan Name: Turbocam, Inc. Health and Welfare Benefit Plan – The Harvard Pilgrim Best Buy HMO - LP
Plan Insurer: Harvard Pilgrim Health Care Insurance Company of NE, Inc. - MA

**Interrogatory No. 9**

Identify and describe the scope, terms, and language of any Gender Dysphoria Exclusion (see Definitions Section) or exclusion of any or all treatment of gender dysphoria in any of Turbocam's self-funded health benefits plans and state the dates that any aspect of a Gender Dysphoria Exclusion has been in effect.

**Answer to Interrogatory No. 9**

See Medical Limitations and Exclusions detailed in the Plan Document and Summary Plan Description, Effective January 1, 2021, which are incorporated herein by reference pursuant to Fed.R.Civ.P. 33(d)(1).

**Interrogatory No. 10**

Identify all of Turbocam's personnel or consultants, including officers, directors, employees, agents, brokers, and contractors, who have had any responsibility, authority, oversight, or management duties with respect to any health benefits or medical insurance coverage which Turbocam has offered or provided to its employees for the period January 1, 2015 to present, and state each person's job title, dates of employment and duties at Turbocam, and responsibility and authority with respect to Turbocam's health or medical insurance benefits.

**Answer to Interrogatory No. 10**

Turbocam, by and through its attorneys, objects to this interrogatory on the grounds that it is overly broad and seeks information that is irrelevant to the claims or defenses asserted in this matter, is not proportional to the needs of the case and is not reasonably calculated to lead to the discovery of admissible evidence per Fed. R.Civ.P. 26(b).  Subject to and without waiving the foregoing objections, Turbocam states as follows:

Turbocam, Inc.
Marian Noronha, President
DOH: 4/29/1987

R. Douglas Patteson, CFO
DOH: 6/13/2005

Peter Hanson, Director of Talent Development
DOH: 4/23/2012

Darika Marino, Sr. Benefits Specialist
DOH: 4/2/2007

Erik Travis, Director of Financial Planning & Analysis
DOH: 4/25/2011

Julie Oakley, Former Personnel Administrator (6/18/2018 - 7/30/2021)

Maya Jiman, Former Personnel Administrator (5/17/2021 - 5/27/2022)

Kathy Leahy, Former Sr. Personnel Administrator (11/27/2000 - 6/5/2020)

Laura McPhail, Former Benefits Specialist (1/10/2022 - 6/16/2022)

Michelle Westcott, Former Benefits Specialist (2/20/2023 - 4/21/2023)

Lisa Brown, Temporary Benefits Specialist (March 2021 – August 2021)

<u>CGI Business Solutions (Broker)</u>
Dan Cronin, President

Dara Cote Account Executive

**Interrogatory No. 11**

Identify all of Turbocam's personnel, consultants, officers, directors, employees, agents, contractors, or brokers who have had any responsibility for or participation in the relationship between Turbocam and: (1) Health Plans, Inc. as third-party administrator of any Turbocam self-funded health benefits plan; or (2) CGI Business Solutions, from January 2015 to present, and state their title and responsibilities.

**Answer to Interrogatory No. 11**

Turbocam, by and through its attorneys, objects to this interrogatory on the grounds that it is overly broad and seeks information that is irrelevant to the claims or defenses asserted in this matter, is not proportional to the needs of the case and is not reasonably calculated to lead to the discovery of admissible evidence per Fed. R.Civ.P. 26(b).  Subject to and without waiving the foregoing objections, Turbocam states as follows:

<u>Turbocam, Inc.</u>
Marian Noronha, President
DOH: 4/29/1987

R. Douglas Patteson, CFO
DOH: 6/13/2005

Peter Hanson, Director of Talent Development
DOH: 4/23/2012

Darika Marino, Sr. Benefits Specialist
DOH: 4/2/2007

Erik Travis, Director of Financial Planning & Analysis
DOH: 4/25/2011

## Interrogatory No. 12

Identify and describe all communications among or between any of Turbocam's personnel or consultants, including officers, directors, employees, agents, contractors or brokers, and Plaintiff Lillian Bernier, about or concerning any Gender Dysphoria Exclusion (see Definitions Section) and include the date and parties to the communication, the mode of communication (e.g., email, text, phone, in person conversation) and the substance of the communication.

## Answer to Interrogatory No. 12

Turbocam, by and through its attorneys, objects to this interrogatory on the grounds that it is overly broad and seeks information that is irrelevant to the claims or defenses asserted in this matter, is not proportional to the needs of the case and is not reasonably calculated to lead to the discovery of admissible evidence per Fed. R.Civ.P. 26(b).  Subject to and without waiving the foregoing objections, Turbocam states as follows:

Peter Hanson, Director of Talent Development, met with the Plaintiff and Maya Jiman to discuss transition plans on March 30, 2022.  Mr. Hanson and Darika Marino, Sr. Benefits Specialist also communicated with the Plaintiff about plan coverage via email.  Copies of electronic communications will be made available and are incorporated herein by reference pursuant to Fed.R.Civ.P. 33(d)(1).

## Interrogatory No. 13

Identify and describe all communications from January 2015 to present among and between Turbocam's personnel or consultants, including officers, directors, employees, agents, contractors, or brokers, about or concerning any Gender Dysphoria Exclusion or the exclusion of treatment for gender dysphoria in Turbocam's health benefits plans, including the decision whether and how to establish such an exclusion, and include the name of the individuals involved in the communication, the date of the communication, the substance of the communication, and the mode of communication (e.g., email, text, phone, in person conversation).

## Answer to Interrogatory No. 13

Turbocam, by and through its attorneys, objects to this interrogatory on the grounds that it is overly broad and seeks information that is irrelevant to the claims or defenses asserted in this matter, is not proportional to the needs of the case and is not reasonably calculated to lead to the discovery of admissible evidence per Fed. R.Civ.P. 26(b).  Turbocam further objects to this request on the grounds that it seeks information protected from disclosure by the attorney-client privilege, as work product, or as material prepared in anticipation of litigation.  Subject to and without waiving the foregoing objections, Turbocam states as follows:

Turbocam had no such communications.  Rather, when converting from the fully insured Harvard Pilgrim plan to the HPI self-insured plan in 2021, Turbocam simply used the wording provided by HPI in the generic/standard plan document they provided.  Prior to this, there had always been exclusions for some Gender Reassignment Surgeries and Transgender Health Services, even when Turbocam had a fully insured plan.

On March 29, 2021, Turbocam consulted with counsel about the exclusions. Thereafter, on April 13, 2022, Pete Hanson, Darika Marino, Marian Noronha and Doug Patteson met to discuss the exclusions in the medical plan, specifically related to Gender Dysphoria. During the meeting, there was a discussion around the scope of the exclusions, including whether therapy would be included or excluded.

**Interrogatory No. 14**

Identify and describe all communications from January 2015 to present between any of Turbocam's personnel, including employees, officers, and directors, and any third party or other person or entity, including but not limited to consultants, brokers, and third party administrators, about or concerning any Gender Dysphoria Exclusion or the exclusion of treatment for gender dysphoria in Turbocam's health benefits plans, including the decision whether and how to establish such an exclusion, and include the name of the individuals involved in the communication, the date of the communication, the substance of the communication, and the mode of communication (e.g., mail, text, phone, in person conversation).

**Answer to Interrogatory No. 14**

Turbocam, by and through its attorneys, objects to this interrogatory on the grounds that it is overly broad and seeks information that is irrelevant to the claims or defenses asserted in this matter, is not proportional to the needs of the case and is not reasonably calculated to lead to the discovery of admissible evidence per Fed. R.Civ.P. 26(b).  Turbocam further objects to this request on the grounds that it seeks information protected from disclosure by the attorney-client privilege, as work product, or as material prepared in anticipation of litigation.  Subject to and without waiving the foregoing objections, Turbocam states as follows:

See Answer to Interrogatory No. 13.

**Interrogatory No. 15**

Identify and describe all communications from January 2015 to present between Turbocam's personnel, including employees, officers, or directors, and any personnel from Health Plans, Inc. ("HPI") ( or any entity related to Harvard Pilgrim Healthcare) or CGI Business Solutions, regarding or concerning any Gender Dysphoria Exclusion or exclusion of treatment for gender dysphoria in Turbocam's health benefits plan, including the decision whether and how to establish such an exclusion, and state the name of the individuals involved in the communication, the date of the communication, the substance of the communication, and the mode of communication (e.g., email, text, phone, in person conversation).

**Answer to Interrogatory No. 15**

Turbocam, by and through its attorneys, objects to this interrogatory on the grounds that it is overly broad and seeks information that is irrelevant to the claims or defenses asserted in this matter, is not proportional to the needs of the case and is not reasonably calculated to lead to the discovery of admissible evidence per Fed. R.Civ.P. 26(b). Turbocam further objects to this request on the grounds that it seeks information protected from disclosure by the attorney-client privilege, as work product, or as material prepared in anticipation of litigation. Subject to and without waiving the foregoing objections, Turbocam states as follows:

See Answer to Interrogatory No. 13.

**Interrogatory No. 16**

Identify all consultants, brokers, third party administrators, or other persons or entities who have provided any services concerning or relating to the development, design, scope, language, coverage, terms or cost of any self-funded plan through which Turbocam has provided self-funded health or medical insurance coverage to employees from January 2015 to present and state the name, address and scope of work of such persons or entity.

**Answer to Interrogatory No. 16**

Turbocam, by and through its attorneys, objects to this interrogatory on the grounds that it is overly broad and seeks information that is irrelevant to the claims or defenses asserted in this matter, is not proportional to the needs of the case and is not reasonably calculated to lead to the discovery of admissible evidence per Fed. R.Civ.P. 26(b). Subject to and without waiving the foregoing objections, Turbocam states as follows:

CGI Business Solutions (Broker)
Dan Cronin, President
Dara Cote Account Executive
Both provided general assistance on plan design review

HPI Inc.
Annette Auger
Client Services – Account Executive

**Interrogatory No. 17**

For the period January 2015 to present, did any health or medical insurance plan through which Turbocam offered health or medical insurance coverage to its employees prior to the time that Turbocam established a self-funded health benefits plan contain any Gender Dysphoria Exclusion (See Definitions Section) or language excluding coverage for any or all treatments for gender dysphoria?

**Answer to Interrogatory No. 17**

Yes.

**Interrogatory No. 18**

If the answer to Interrogatory Number 17 is anything other than an unqualified no, please state the name of the plan, the insurer, the dates that Turbocam offered coverage under the plan to its employees, and the language of any exclusion for treatment of gender dysphoria.

**Answer to Interrogatory No. 18**

2015: Harvard Pilgrim Best Buy PPO Plan & NH HMO-Best Buy Tiered Copay LP
2016: Harvard Pilgrim Best Buy PPO Plan & NH HMO-Best Buy Tiered Copay LP
2017: Harvard Pilgrim Best Buy PPO Plan & NH HMO-Best Buy Tiered Copay LP
2018-2019: Harvard Pilgrim Best Buy PPO Plan & NH HMO-Best Buy Tiered Copay LP
2020: Harvard Pilgrim Best Buy PPO Plan & NH HMO-Best Buy Tiered Copay LP
2021-2024: H.S.A PPO PLAN

See Medical Limitations and Exclusions detailed in the Plan Documents, which are incorporated herein by reference pursuant to Fed.R.Civ.P. 33(d)(1).

**Interrogatory No. 19**

Identify and describe all communications from January 2019 to present to which any Turbocam personnel was an author, or participant, including employees, officers and directors, regarding or concerning Plaintiff Lillian Bernier's need, request for, inquiry about, or denial of coverage for treatment for gender dysphoria under any Turbocam health benefits plan, including communications with Lillian Bernier, and state the date and parties to the communication, the mode of communication (e.g. email, text, phone, in person conversation) and the substance of the communication.

**Answer to Interrogatory No. 19**

Turbocam, by and through its attorneys, objects to this interrogatory on the grounds that it is overly broad and seeks information that is irrelevant to the claims or defenses asserted in this matter, is not proportional to the needs of the case and is not reasonably calculated to lead to the discovery of admissible evidence per Fed. R.Civ.P. 26(b). Turbocam further objects to this request on the grounds that it seeks information protected from disclosure by the attorney-client privilege, as work product, or as material prepared in anticipation of litigation. Subject to and without waiving the foregoing objections, Turbocam states as follows:

See Answer to Interrogatory No. 12.

**Interrogatory No. 20**

State all facts and identify all communications which provided the basis for the statement in Turbocam's written response to Lillian Bernier's charge of discrimination in the New Hampshire Human Rights Commission dated May 23, 2023, at page one that " Turbocam attempted to work with Ms. Bernier to obtain insurance coverage through means other than Turbocam's insurance plan."

**Answer to Interrogatory No. 20**

Turbocam objects to this interrogatory on the grounds that it seeks information that is protected from disclosure by the attorney-client privilege and/or the work product doctrine and/or it seeks the mental impressions of counsel and counsel's investigation.  Subject to and without waiving the foregoing objections, Turbocam states as follows:

Peter Hanson, Director of Talent Development, met with the Plaintiff and Maya Jiman to discuss transition plans on March 30, 2022.  Mr. Hanson and Darika Marino, Sr. Benefits Specialist also communicated via email with the Plaintiff and GLAD, by and through counsel, about plan coverage and an Opt-Out bonus.  Copies of electronic communications will be made available and are incorporated herein by reference pursuant to Fed.R.Civ.P. 33(d)(1).

**Interrogatory No. 21**

State the purpose and the terms and scope of any bonus or compensation that Turbocam provides or has provided to employees from January, 2019 to present to find health insurance outside the company, as referenced at page 2 of the letter from First Liberty on behalf of Turbocam to Chris Erchull dated September 2, 2022.

**Answer to Interrogatory No. 21**

The Opt-Out bonus is available for benefit eligible employees that attest to having medical coverage elsewhere.  Plaintiff opted for the family level plan.  Accordingly, Plaintiff is currently eligible for an Opt-Out bonus (taxable) of $357.50 per pay period or $8,580 annually.  In 2019, the Opt-Out family level bonus was $210.00 per bi-weekly pay period and has risen to $357.50 per pay period as of 2023.  The biweekly payment is made for 24 of the 26 bi-weekly pay periods each year.  We do not include benefits deductions or Opt-Out bonus payments for the 3rd pay period which occurs in two months each year.

**Interrogatory No. 22**

Describe the relationship between Turbocam and CGI Business Solutions and state all duties, responsibilities, scope of work and services of CGI Business Solutions for Turbocam, including concerning any of Turbocam's health benefit plans, from January 2015 to present.

**Answer to Interrogatory No. 22**

CGI Business Solutions ("CGI") has been Turbocam's benefits broker since June 4, 2013. CGI advises and guides Turbocam on health benefit related matters, including benefits, captive options, and compliance assistance.

The above Answers to Interrogatories are true and complete to the best of my knowledge.

Date: 02 JAN 2025

_Marian R. Noronha_
Defendant, Turbocam, Inc.
DULY AUTHORIZED - PRESIDENT


STATE OF NEW HAMPSHIRE
COUNTY OF Stafford                    02 JANUARY    , 2025

    Personally appeared, before me, the above stated representative of the defendant and made oath that the statements by him/her subscribed are true to the best of his/her knowledge and belief.

_Brittany D. Lampe_
Justice of the Peace/Notary Public

BRITTANY D. LAMPE
Notary Public, State of New Hampshire
My Commission Expires 2/22/2028

Defendant,
Turbocam, Inc.
By Its Attorney,

/s/ Bethany P. Minich

_____

Bethany P. Minich, NH Bar # 265413
Litchfield Cavo, LLP
6 Kimball Lane, Suite 200
Lynnfield, MA 01940
(781) 309-1500
minich@litchfieldcavo.com

## CERTIFICATE OF SERVICE

I hereby certify that on January 3, 2025, this document was sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

/s/ Bethany P. Minich

_____

Bethany P. Minich

**Ownership Chart**

| Name of US corporate entity | Form of entity | Date entity was formed | Ownership periods - see notes | Marian B. Noronha ownership interest | Other ownership interests | Current Directors and Officers |
|---|---|---|---|---|---|---|
| The Haven at Lee | LLC | 8/14/2023 | 8/14/2023-present | 40.5% Marian B. Noronha Trustee of the Declaration of Trust of Marian B. Noronha dated 12/1/2004 as ammended | 40.5% Allethaire S. Noronha Trustee of the Declaration of Trust of Allethaire S. Noronha dated 12/1/2004 as ammended, 9.5% Aramis M. Black, 9.5% Janneth A Black | Aramis M. Black - Manager |
| Haven on Earth | LLC | 12/4/2023 | 12/4/2023- present | 50% Marian B. Noronha Trustee of the Declaration of Trust of Marian B. Noronha dated 12/1/2004 | 50% Allethaire S. Noronha Trustee of the Declaration of Trust of Allethaire S. Noronha dated 12/1/2004 | Marian B. Noronha (Manager),  Allethaire S. Noronha (Manager) |
| NHBBC | LLC | 7/9/2008 | 11/26/2019- present | 0% | 20% Daniel J. Noronha share of 2007 DDP Irrevocable Trust (a grantor trust); 20% Timothy P. Noronha share of 2007 DDP Irrevocable Trust (a grantor trust); 20% James A. Noronha share of 2007 DDP Irrevocable Trust (a grantor trust);20% Michael D. Noronha share of 2007 DDP Irrevocable Trust (a grantor trust);20% Gabriel L. Noronha share of 2007 DDP Irrevocable Trust (a grantor trust) | Family Managers - Daniel J. Noronha, Timothy P. Noronha, James A. Noronha, Michael S. Noronha (Secretary), Gabriel L. Noronha Non-Family Manager - Donald D. Patteson (President) |
| | | | 9/17/2008-11/25/2019 | .004% Irrevocable Trust No. 1 of Marian B.Noronha (a grantor trust) 2/1/2005 | as above minus .004% | |
| | | | 7/15/2008-9/16/2008 | 1% Irrevocable Trust No. 1 of Marian B.Noronha (a grantor trust) 2/1/2005 | as above minus 1% | |
| Seed and Bread | LLC | 9/19/2008 | 2008-present | 2.5% Irrevocable Trust No. 1 of Marian B.Noronha (a grantor trust) 2/1/2005 | 97.5% NHBBC LLC (see F9) | Family Managers - Daniel J. Noronha, Timothy P. Noronha, James A. Noronha, Michael S. Noronha (Secretary), Gabriel L. Noronha Non-Family Manager - Donald D. Patteson (President) |
| TURBOCAM Automated Production Systems | S Corp | 4/18/2008 | 2008-present | 5.13% Marian B. Noronha Trustee of the Declaration of Trust of Marian B. Noronha dated 12/1/2004 as ammended | 24.70% Declaration of Trust of Allethaire S. Noronha dated December 1, 2004 (a grantor trust); 50.17% Irrevocable Trust No. 2 of Allethaire S. Noronha dated December 15, 2020 (a grantor trust); 19.99% Charitable Lean Annuity Trust of Allethaire S. Noronha dated July 25, 2008 (a grantor trust) | •Marian B. Noronha – Director •Allethaire S. Noronha – Director •Marian B. Noronha – President •Marian B. Noronha - Treasurer •Marian B. Noronha – Secretary •Michael S. Noronha – Assistant Secretary •D. Douglas Patteson – Chief Financial Officer |
| TURBOCAM Energy Solutions; DBA/TURBOCAM Enhanced Surfaces since 1/27/2022 | LLC | 2/28/2007 | 11/26/2019-present | 0% | 20% Daniel J. Noronha share of 2007 DDP Irrevocable Trust (a grantor trust); 20% Timothy P. Noronha share of 2007 DDP Irrevocable Trust (a grantor trust); 20% James A. Noronha share of 2007 DDP Irrevocable Trust (a grantor trust);20% Michael D. Noronha share of 2007 DDP Irrevocable Trust (a grantor trust);20% Gabriel L. Noronha share of 2007 DDP Irrevocable Trust (a grantor trust) | •Michael S. Noronha – President •Timothy P. Noronha – Vice President •James A. Noronha – Secretary •D. Douglas Patteson – Treasurer •D. Douglas Patteson – Chief Financial Officer •Timothy P. Noronha, James A. Noronha, Michael S. Noronha, D.Douglas Patteson – Members of the Board of Directors |
| | | | 2/28/2007-11/26/2019 | 1% Irrevocable Trust No. 1 of Marian B.Noronha (a grantor trust) 2/1/2005 | as above minus 1% | |

| Entity | Type | Date | Period | Ownership 1 | Ownership 2 | Officers/Members |
|---|---|---|---|---|---|---|
| TURBOCAM Inc. | S Corp | 5/18/1987 | 7/11/2017 - present | 2% Declaration of Trust dated 12/1/2004 of Marian B. Noronha, Marian B. Noronha Trustee | 98% Irrevocable Trust of Allethaire S. Noronha dated December 10, 2012 (a grantor trust) | •Marian B. Noronha – Director<br>•Allethaire S. Noronha – Director<br>•Marian B. Noronha – President<br>•Marian B. Noronha – Treasurer<br>•Marian B. Noronha – Secretary<br>•Michael Noronha – Assistant Secretary<br>•D. Douglas Patteson – Chief Financial Officer |
| | | | 12/1/2004-7/10/2017 | 51% Declaration of Trust dated 12/1/2004 of Marian B. Noronha, Marian B. Noronha Trustee | 49% Declaration of Trust of Allethaire S. Noronha dated December 1, 2004 (a grantor trust) | |
| Virtuous Realty | LLC | 5/3/1995 | 1995-current | 49% Marian B.Noronha | 49% Grantor Retained Annuity Trust No 1 of Allethaire S. Noronha dated March 13, 2009 ( a grantor trust); .4% Daniel J. Noronha share of 2007 DDP Irrevocable Trust (a grantor trust); .4% Timothy P. Noronha share of 2007 DDP Irrevocable Trust (a grantor trust); .4% James A. Noronha share of 2007 DDP Irrevocable Trust (a grantor trust);.4% Michael D. Noronha share of 2007 DDP Irrevocable Trust (a grantor trust);.4% Gabriel L. Noronha share of 2007 DDP Irrevocable Trust (a grantor trust) | Marian Noronha (member), Allethaire Noronha (member) |
| Maxterial | Stock Corporation | 7/20/2015 | 2018-present | Less than 1% ownership | other, non-related owners | MBN - Board of Directors |
| Peregrine Turbine Technologies | LLC | 4/9/2012 | 1/1/23-present | 700 incentive Class Units | other, non-related owners | MBN - Advisory Board Member |
| Zoe Angling Group | DLLC | 11/12/2014 | N/A | N/A | N/A | MBN - Board of Directors from 2020-2022 |
| Vision New England | Domestic Non-Profit | | N/A | N/A | N/A | MBN -treasurer from 2017-2022 |
| Fellowship of Companies for Christ International | Domestic Non-Profit | 3/18/1981 | N/A | N/A | N/A | MBN - board member from 2008 to present |

CORPORATE - Job Description

# Director of Charitable Giving

The Director of Charitable Giving identifies and assesses the causes, groups and organizations that align with TURBOCAM's Mission and implements strategic plans to support them.

## General Company Responsibilities

- Support the Company Mission.
- Comply with established safety practices and commit to excellence.

## Position Specific Responsibilities

- Establishes and maintains relationships with non-profit organizations and community leaders to ensure effective collaboration and support of giving initiatives.
- Manages the charitable giving budget, evaluates proposals and monitors the impact of the company's giving.
- Inspires and develops employee volunteer programs to engage employees, offer participation to a wider audience and raises awareness about charitable initiatives.
- Oversees Charity of the Month selection process.
- Maintains knowledge and understanding of best practices concerning charitable giving.
- Perform other duties as necessary.

## Qualifications & Requirements

- Bachelor's degree in a related field.
- Experience in charitable giving, budgeting, and organizing time, money and resources effectively.
- Strong interpersonal, communication and organizational skills.
- Proficient in the use of Microsoft Office Suite: Outlook, Word, and Excel.

CORPORATE - Job Description

# Vice President

Serve as support to the President; integrate corporate functions and lead definitions of strategy, structures, and systems at the company-wide level.

## General Company Responsibilities

- Embrace the Company Mission.
- Comply with established safety practices and commit to excellence.

## Senior Management Team Responsibilities

- Model attitudes, actions and priorities that reflect a lifestyle of integrity and upright character.
- Actively participate in and collaborate with the Senior Management Team (SMT) to gain the greatest success of the company.
- Contribute to development of a strategic business plan that enhances Turbocam's capacity to fulfill its Mission.
- In cooperation with other senior leaders oversee the culture of Turbocam to align its practices with its Mission, Vision and Values.

## Position Specific Responsibilities

- Develop and maintain managerial system for evaluating missional health/organizational success (long term more of a board/president/GM function).
- People:
  - Lead efforts on identifying existing leadership structure gaps and identifying people needed to fill them
  - Lead leadership succession planning efforts in coordination with all leaders (long term board/president function). Focused on GM/department lead level.
  - Vision:
  - Draft and maintain strategic 5-year business plan for TURBOCAM in coordination with GMs
- Finance:
  - In collaboration with Doug and Erik, develop decision making frameworks for financial goals to support strategic objectives
  - In collaboration with Doug and Erik, provide increased structure to monthly financial meetings w/ Marian and quarterly meetings with US management team
- Customers:
  - Secondary role in SAMS.gov declarations, signing NDAs, contracts, etc. as permitted by by-laws and where not otherwise delegated to GMs
  - Lead business continuity planning
  - Provide lay secondary role in maintaining relationships with customers who span multiple business units in order to support strategic decision making

# CORPORATE - Job Description

- Suppliers:
    - Promote cross business unit collaboration on suppliers to promote strategic supplier management.
    - Provide secondary role in maintaining relationships with suppliers who span multiple business units in order to support strategic decision making
    - Does not include negotiating LTAs
- Engineering:
    - Lead company processes for communication of engineering highlights (e.g. company meetings).
        - Organize managerial processes related to review of R&D engineering priorities and resourcing
        - Engineering talent management (moving engineers around)
        - Engineering process standardization
        - Engineering communication
        - Engineering growth and development
- Operations:
    - Develop effective management information sharing systems that maximize effective decision making (work with Carla on management team events, company meetings, teams site, etc).
    - Lead responsibility for agendas of corporate events (GMM/GMM calls, quarterly meetings, annual meeting, etc)
    - Identify capability gaps for global business operations, and recommend appropriate solutions

---

## Qualifications & Requirements

- Bachelor's degree in engineering or related field.
- 5+ years' experience in an engineering or manufacturing environment.
- Demonstrated leadership experience required.
- Strong math and trigonometry skills.
- Ability to work cross functionally, build consensus and problem solve.
- Excellent interpersonal, communication and organization skills.
- Proficiency in MS Office: Outlook, Word, and Excel. MS Project and ERP software (Epicor) preferred.
- Moderate physical activity requiring agility and manual dexterity, including walking, standing, or bending as well as lifting or moving objects.

## CORPORATE - Job Description

# Chief Financial Officer

The CFO at TURBOCAM is responsible for oversight of all financial matters across all the TURBOCAM divisions, including analysis of strategic growth opportunities, acquiring sources of debt and equity capital as required, analysis and development of new strategic markets and supervision over the treasury and financial reporting systems for the TURBOCAM divisions.

### General Company Responsibilities

- Embrace the Company Mission and Values.
- Comply with established safety practices and commit to excellence.

### Support Unit Managers

- Oversee staff and operations to achieve operational excellence in all facets of assigned Support Unit(s).
- Enable support personnel to research, develop, initiate and /or implement improvement that enhances the delivery of existing services or builds capacity for other value-add operations in the Company
- Facilitate collaboration and knowledge exchange with other support functions and business units.
- Anticipate future needs and opportunities that relate to the health of assigned Support Unit(s).

### Senior Management Team Responsibilities

- Model attitudes, actions and priorities that reflect a lifestyle of integrity and upright character.
- Actively participate on the Senior Management Team (SMT) and collaborate with assigned troika members to gain the greatest success of the company.
- Contribute to development of a strategic business plan that enhances Turbocam's capacity to fulfill its Mission.
- In cooperation with other senior leaders oversee the culture of Turbocam in order to align its practices with its Mission, Vision and Values.

### Position Specific Responsibilities

- Prepare monthly historical and analytical reports for the President and banks such as cash flow analysis, P/L and other financials. Ensure the accuracy and integrity of all financial statements and reporting tools.

- Coordinate overall company budgeting and forecasting process.

# CORPORATE - Job Description

- Directs the preparation of all necessary external reporting requirements for annual audits, workers compensation, lenders, shareholders, tax preparation, government regulatory agencies, etc. as required.

- Negotiate construction, capital equipment and working capital lending with banks and other finance companies as needed.

- Oversee all inter-company transactions.

- Coordinate overall corporate communication with CPAs, lenders and lawyers.

- Develop a strategic financial plan for TURBOCAM supported by the corporate business plan and TURBOCAM's mission statement, with measurable goals.

- Develop a multi-year strategic capital investment plan, supported by the annual budgeting process, to determine capital allocation and investment decisions.

- Manage TURBOCAM and its affiliated divisions' capital structures, including the development of new sources of debt and equity capital, as well as analysis of other strategic opportunities.

- Direct and monitor TURBOCAM's third party investments and joint ventures, including analysis of any new strategic investment opportunities including equity or debt transactions or mergers and acquisitions.

- Improve processes to give managers and supervisors the necessary financial information to better facilitate decisions and monitor performance.

- Supervise finance and accounting personnel for the TURBOCAM divisions. Provide indirect supervision of accounting and finance personnel of TURBOCAM joint ventures and other affiliated companies.

---

**Qualifications & Requirements**

- Bachelor's degree in accounting, finance or related field, MBA preferred.

- 10 years of financial management experience with increasing responsibility for multi-faceted planning and strategic direction, ideally in a growth-oriented manufacturing environment.

- Knowledge of database and accounting applications and systems.

- Strong interpersonal, communication and organizational skills.

- Proficient in the use of Microsoft Office Suite: Outlook, Word, and Excel. MS Project or related software preferred.