# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| LILLIAN BERNIER<br><br>   *Plaintiff*,<br><br>v.<br><br>TURBOCAM, INC.,<br><br>   *Defendant*. | Civil Action No. 1:23-cv-00523-LM-AJ |

**TURBOCAM, INC.'S REPLY MEMORANDUM IN SUPPORT OF
MOTION TO EXCLUDE TESTIMONY OF RANDI ETTNER, PH.D.**

James R. Conde*
D.C. Bar No. 1031694
Laura B. Ruppalt**
D.C. Bar No. 90033927
BOYDEN GRAY PLLC
800 Connecticut Avenue NW,
Suite 900
Washington, DC 20006
Telephone: (202) 955-0620
jconde@boydengray.com
lruppalt@boydengray.com

Bethany P. Minich
N.H. Bar No. 265413
LITCHFIELD CAVO LLP
6 Kimball Lane, Suite 200
Lynnfield, MA 01940
Telephone: (781) 309-1500
minich@litchfieldcavo.com

Roger L. Byron*
Texas State Bar No. 24062643
E. Cliff Martin*
Texas State Bar No. 24127208
FIRST LIBERTY INSTITUTE
2001 West Plano Parkway, Suite 1600
Plano, Texas 75075
Telephone: (972) 941-4444
rbyron@firstliberty.org
cmartin@firstliberty.org

*\* Pro hac vice*
*\*\* Pro Hac Vice Motion Pending*

***Counsel for Defendant***
*Turbocam, Inc.*

November 5, 2025

**ARGUMENT**

**I.   Bernier Relies on Testimony From Ettner That Should Be Excluded**

Turbocam seeks to exclude testimony of Bernier's expert, Randi Ettner, Ph.D., to the extent that testimony is used to support the contentions that (1) Bernier's gender dysphoria is a physiological condition that results from a physical impairment and (2) hormonal surgical treatments are medically necessary to treat Bernier's dysphoria. *See* Turbocam's Mot. to Exclude at 1 ("Turbocam's Mot."), Dkt. 71; Turbocam's Mem. in Support of Mot. to Exclude at 2 ("Turbocam's Mem."), Dkt. 71-1.[1]

Bernier claims that she does not make arguments related to either of the two contentions, Bernier's Opp. to Turbocam's Motion to Exclude at 1 ("Bernier's Opp. to Mot."), Dkt. 86, and that the medical necessity of treatments for Bernier is "irrelevant," Bernier's Opp. to Turbocam's Cross-Mot. for Summ. J. at 1 ("Bernier's Opp. to SJ"), Dkt. 88. But those claims are belied by the briefing.

Bernier plainly argues that her gender dysphoria is a physiological condition resulting from a physical impairment, and cites Ettner for support. In her memorandum supporting summary judgment, Bernier argues that her gender dysphoria is "not … within the [American with Disability Act ("ADA")'s] exclusion" for gender identity disorders "because it 'result[s] from [a] physical impairmen[t].'" Bernier's Mem. in Support of Summ. J. at 19 ("Bernier's MSJ"), Dkt. 66-1 (alterations in original). To support that argument, Bernier explains that her gender dysphoria "is plainly 'physical'" because she "has undergone" hormonal and surgical treatments to feminize her body,

---

[1] Bernier complains that Turbocam cited to Ettner's expert report and not her declaration in its motion to exclude. *See* Bernier's Opp. to Mot. at 1 n.1 But Turbocam relied on Ettner's expert report to illustrate her lack of qualifications and the unreliability of her conclusions. And Turbocam's motion cited to the portions of Bernier's memorandum supporting summary judgment that relied on Ettner's declaration. *See* Turbocam's Mem. at 14–15.

1

citing Ettner. *Id.* (citing Bernier's MSJ, Ex. 3 ¶ 13 ("Ettner Decl."), Dkt. 67-4). Bernier cites Ettner again when arguing that her "gender dysphoria is a '*physiological* disorder or condition …' because her endocrine system cannot produce the hormones that she needs." *Id.* at 13 (citing Ettner Decl. ¶¶ 14–17) (emphasis added). Bernier makes similar claims in her Opposition to Turbocam's Motion for Summary Judgment. *See* Bernier's Opp. to SJ at 9, 11.

Bernier also indicates that hormonal or surgical treatments are medically necessary to treat her gender dysphoria. As referenced above, Bernier states that her gender dysphoria results "because her endocrine system cannot produce the hormones that she *needs*," citing Ettner for support. Bernier's MSJ at 13 (citing Ettner Decl. ¶¶ 14–17) (emphasis added). Bernier elsewhere argues that her gender dysphoria is a "disability" under the ADA, in part because of "her *need* for ongoing *medical* management of her gender dysphoria" and because treatment "has *required* her to live as a woman in all aspects of her life, undergo substantial *medical* treatment, and follow a lifelong *medical* protocol." *Id.* at 13–14 (emphases added). The "need[ed]" "medical" interventions are "[h]ormones and various surgical treatments." *Id.* at 4. That's medical necessity.

Nonetheless, if Bernier does not believe she makes these arguments, or otherwise concedes they are irrelevant, she has no grounds to oppose excluding any testimony that supports them. *See Hochen v. Bobst Grp., Inc.*, 290 F.3d 446, 452–53 (1st Cir. 2002) (affirming exclusion of testimony with "questionable relevance" (cleaned up)).

## II. Bernier Has Not Shown That Ettner Is Qualified Or That Her Opinions Are Reliable

Turbocam does not challenge Ettner's expertise as a clinician, or her qualifications to opine on diagnostic criteria for gender dysphoria. *See* Bernier's Opp. to Mot. at 2. But Bernier has not established that Ettner is qualified to offer opinions on a physiological basis for gender dysphoria or on the medical necessity of hormones or surgery for Bernier, subjects for which Bernier has cited Ettner for support. *See supra* Part I.

2

It is not enough that Ettner has "substantial experience in research methodology and scientific literature," generally. Bernier's Opp. to Mot. at 4. Physicists, data scientists, and engineers also have considerable experience and training in "research methodology and scientific literature," but that does not qualify them to opine on gender dysphoria by reading academic reports or speaking with physicians or other experts who, themselves, conduct research on gender dysphoria. Ettner does not personally have the medical training or expertise in physiology, endocrinology, or other relevant specialties to reliably opine on a purported physiological basis of gender dysphoria or Bernier's asserted need for hormones and surgery. *See* Turbocam's Mot., Ex. B, at 16:17–17:10, 19–21, Dkt. 71-3 (Ettner is not a biologist, physiologist, neurologist, psychiatrist, endocrinologist, or epidemiologist; does not hold a medical degree; and is not "a medical doctor of any kind"); *id.* at 17:11–18 (Ettner is not licensed to prescribe hormone treatments or therapy or to perform gender-affirming surgeries).

Turbocam's critique of Ettner's description of the scientific literature is not "nitpicking." Bernier's Opp. to Mot. at 7; *see* Turbocam's Mem. at 7–13. Ettner's reliance on weak studies, disregard of more robust studies, and misstatement of study findings demonstrate that her analysis of the scientific literature—her only basis for opinions on a physiological basis for gender dysphoria—is neither "sound" nor "careful." Bernier's Opp. to Mot. at 7. This Court should exclude her opinions on that basis. *See, e.g.*, *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. & Prods. Liab. Litig.*, 174 F. Supp. 3d 911, 930–33 (D.S.C. 2016) (excluding testimony based on literature review where expert, who was a physician with a different medical specialty, "did not review the 'totality of the literature,'" did not "explain how he came to choose and consider only these particular studies," failed to "cite or discuss … studies that contradict" his opinion); *In re Taxotere (Docetaxel) Prods. Liab. Litig.*, MDL No. 16-2740, 16-17144, 2019 WL 3997122, at *6 (E.D. La.

3

Aug. 23, 2019) (excluding testimony may be appropriate where "experts mischaracterized the studies they cited").

Bernier devotes much of her opposition to explaining Ettner's mischaracterizations and providing context that Ettner failed to provide in her report. *See* Bernier's Opp. to Mot. at 8–11. Ettner's second declaration does the same, and also corrects some of her misstatements. *Compare, e.g.*, Turbocam's Mem., Ex. A ¶ 18 ("Ettner Rep."), Dkt. 71-2 ("Gomez-Gill [sic] et al. concluded that the probability of a sibling of a transgender individual also being transgender was 5 times higher than someone in the general population") *with* Bernier's Opp. to Mot., Ex. 1 ¶ 16 ("Second Ettner Decl."), Dkt. 86-1[2] ("Gomez-Gil et al. did not perform formal statistical comparison of proportions" of transgender prevalence in siblings compared to the general population); *see also* Second Ettner Decl. ¶ 14 (Green is cited only "for its historical and groundbreaking significance"); *id.* ¶ 18 (acknowledging "inadvertent omission" in her prior description of Diamond et al.).

Ettner also now acknowledges that "it is essential in scientific inquiry to identify the always-present limitations to current knowledge" and discusses some of the studies—raised by Turbocam's expert—that find uncertainty in the biological basis for gender identity. Second Ettner Decl. ¶¶ 13, 20–25. This is in stark contrast to Ettner's unqualified assertion in her report that there is "scientific consensus that gender identity is biologically based," Ettner Rep. ¶ 17, and her failure to acknowledge the limitations of the studies she cited and the considerable recent literature that challenges the "consensus," *see* Turbocam's Mem. at 8–11, 13; Turbocam's Mem., Ex. D ¶¶ 42–51, Dkt. 71-5. Ettner's corrections and clarifications are welcome, but come only after Turbocam exposed her mischaracterizations, underscoring that her analysis with respect to these topics is not

---

[2] Ettner's Second Declaration is also filed as Exhibit 21 to Bernier's Response to Turbocam's Concise Counterstatement of Undisputed Facts, Dkt. 87-2.

4

reliable. *Cf. Ed Peters Jewelry Co. v. C & J Jewelry Co.*, 124 F.3d 252, 260–61 (1st Cir. 1997) (considering expert's revision of his opinion when concluding testimony was properly excluded).

## CONCLUSION

For the foregoing reasons, and those in Turbocam's memorandum, the Court should exclude Ettner's testimony to the extent it is used to support the contentions that (1) Bernier's gender dysphoria is a physiological condition that results from a physical impairment and (2) hormonal surgical treatments are medically necessary to treat Bernier's dysphoria. *See* Bernier's MSJ at 13 (citing Ettner Decl. ¶¶ 14–17), 19 (citing Ettner Decl. ¶ 13).

|  |  |
|---|---|
|  | Respectfully Submitted, |
|  | Defendant, Turbocam, Inc.<br>By its attorneys, |
|  | */s/ Bethany P. Minich* |
| James R. Conde* | Bethany P. Minich |
| D.C. Bar No. 1031694 | N.H. Bar # 265413 |
| Laura B. Ruppalt** | LITCHFIELD CAVO LLP |
| D.C. Bar No. 90033927 | 6 Kimball Lane, |
| BOYDEN GRAY PLLC | Suite 200 |
| 800 Connecticut Avenue NW, | Lynnfield, MA 01940 |
| Suite 900 | Telephone: (781) 309-1500 |
| Washington, DC 20006 | minich@litchfieldcavo.com |
| Telephone: (202) 955-0620 |  |
| jconde@boydengray.com | Roger L. Byron* |
| lruppalt@boydengray.com | Texas State Bar No. 24062643 |
|  | E. Cliff Martin* |
|  | Texas State Bar No. 24127208 |
|  | FIRST LIBERTY INSTITUTE |
|  | 2001 West Plano Parkway, Suite 1600 |
|  | Plano, Texas 75075 |
|  | Telephone: (972) 941-4444 |
|  | rbyron@firstliberty.org |
|  | cmartin@firstliberty.org |
| *Pro hac vice* | **Counsel for Defendant** |
| ** *Pro Hac Vice Motion Pending* | Turbocam, Inc. |

Dated: November 5, 2025

**CERTIFICATE OF SERVICE**

    I, Bethany P. Minich, hereby certify that on November 5, 2025, the foregoing document, filed through the CM/ECF System, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

                                                                               */s/ Bethany P. Minich*
                                                                               Bethany P. Minich