## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| LILLIAN BERNIER, <br><br>      Plaintiff, <br><br> V. <br><br> TURBOCAM, INC., <br><br>      Defendant. | Civil Action No. 1:23-CV-00523-LM-AJ |

**PLAINTIFF'S MOTION TO STRIKE TURBOCAM'S DECLARATION OF PETER HANSON IN SUPPORT OF TURBOCAM'S REPLY IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT**

Plaintiff Lillian Bernier moves to strike from the summary judgment record the Declaration of Peter Hanson (ECF No. 95-1), submitted with Turbocam's reply memorandum dated November 5, 2025 (ECF No. 95). Turbocam does not assent to Lillian's motion.

## INTRODUCTION

For more than three years, Defendant Turbocam, Inc. ("Turbocam") has maintained one unwavering position: the company excludes coverage for gender dysphoria treatment for one reason and one reason only—the religious beliefs of its owners, Marian and Suzie Noronha. Turbocam stated this position explicitly, repeatedly, and under oath at every stage of litigation. Now, Turbocam has retracted its position and manufactured an entirely different justification through a declaration, submitted with Turbocam's reply brief, which directly contradicts years of sworn testimony that the religious beliefs of the Noronhas are the sole justification for the exclusion. *See* Declaration of Peter Hanson in Support of Turbocam's Reply in Support of its Cross-Motion for Summary Judgment ("Hanson Decl.") ECF No. 95-1. The case law is clear: it is entirely impermissible to add new and contradictory facts for the first time during summary judgment, even more so in a reply brief. Whatever Turbocam's motive or purpose may be in this tardy and precipitous change in position, it is entirely improper to introduce on the summary judgment record. The Court must strike the declaration.

## FACTS

For years, Turbocam has stated its unwavering and unequivocal position in multiple contexts that its religious objection is the sole reason that it excludes treatment for gender dysphoria in its self-funded health benefits plan:

1. <u>Administrative Agency Position</u>. In its response to Lillian Bernier's Charge of Discrimination at the New Hampshire Human Rights Commission on March 23, 2023, Turbocam stated that its "religious beliefs preclude it from assisting in the procurement of gender-transition

1

drugs or procedures . . . ." Ex. 1 at 2;[1] *see also* Ex. 1 at 1 (the Noronhas "strongly believe that God will not allow the use of TURBOCAM's resources . . . to assist employees in procuring drugs or surgical procedures to erase or obscure their sex."). Turbocam's response states no other reason for the exclusion.

2.  Company President's Declaration. In a declaration submitted to this Court on July 11, 2024, Turbocam's President, Marian Noronha, noted the exclusion of treatment for gender dysphoria in Turbocam's health plan and explained that "Suzie's [his wife] and my Christian faith and religious convictions preclude us from providing these interventions [for gender dysphoria] in Turbocam's health plan . . . . We believe that God will not allow the use of Turbocam's resources, including its health plan, to assist employees in erasing or obscuring their sex . . . ." Declaration of Marian Noronha ("Noronha Decl."), ECF No. 42-3 ¶¶ 13–14. The declaration states no other reason for the exclusion.

3.  Interrogatory Answers. In its answers to Plaintiff's interrogatories signed by Mr. Noronha on January 2, 2025, Turbocam was required to describe all communications "concerning any Gender Dysphoria Exclusion or the exclusion of treatment for gender dysphoria in Turbocam's health benefits plans . . . ."[2] Turbocam did not disclose any discussions or communications by its employees, including Peter Hanson, about the safety or efficacy of treatments as a reason for the exclusion of treatment for gender dysphoria in these interrogatory answers. After a discovery conference with Plaintiff's counsel, Turbocam supplemented its interrogatory answers regarding

---

[1] Turbocam's response to Lillian Bernier's Charge of Discrimination at the New Hampshire Human Rights Commission is attached as Exhibit 1 to the accompanying Declaration of Attorney Chris Erchull in Support of Plaintiff's Motion to Strike Turbocam's Declaration of Peter Hanson.

[2] Turbocam's answers to interrogatory numbers 13 and 14 are attached as Exhibit 2 to the accompanying Declaration of Attorney Chris Erchull in Support of Plaintiff's Motion to Strike Turbocam's Declaration of Peter Hanson.

2

company communications about the exclusion on February 11, 2025.[3] Turbocam's supplemental answers were after the January 20, 2025, service of Turbocam's expert report from Daniel Weiss, M.D. (the "Weiss Report").[4] In this supplement, Turbocam did not disclose any discussions or communications by its employees, including Peter Hanson, about the safety or efficacy of treatments as a reason for the exclusion of treatment for gender dysphoria. Turbocam remains obligated to supplement its responses to these interrogatories and has not disclosed any further discussions or communications by its employes, including Peter Hanson, about the safety or efficacy of treatments as a reason for the exclusion of treatment for gender dysphoria.

4. <u>30(b)(6) Deposition Testimony</u>. Mr. Hanson gave deposition testimony on March 27, 2025, individually and as Turbocam's designee to testify pursuant to Fed. R. Civ. P. 30(b)(6) on: (1) "[a]ny and all reasons that [] Turbocam, Inc. excluded coverage of any and all treatment for gender dysphoria … from 2020 to present," and 2) "[a]ll discussion about and consideration of covering, limiting coverage for, or excluding coverage treatment of gender dysphoria … for employee Lillian and the reasons therefore." Turbocam, Inc.'s Objection to Plaintiff's 30(b)(6) Deposition Topics ("Turbocam's 30(b)(6) Objection") at 2.[5]

In that deposition, Mr. Hanson was asked about an email to Lillian Bernier dated December 6, 2021, indicating that Turbocam did not intend to remove the exclusion for gender dysphoria

---

[3] Turbocam's supplemental answers to interrogatory numbers 13 and 14 are attached as <u>Exhibit 3</u> to the accompanying Declaration of Attorney Chris Erchull in Support of Plaintiff's Motion to Strike Turbocam's Declaration of Peter Hanson.

[4] The cover and signature page of Dr. Weiss's expert report is attached as <u>Exhibit 4</u> to the accompanying Declaration of Attorney Chris Erchull in Support of Plaintiff's Motion to Strike Turbocam's Declaration of Peter Hanson.

[5] Turbocam, Inc's Objection to Plaintiff's 30(b)(6) Deposition Topics is attached as <u>Exhibit 5</u> to the accompanying Declaration of Attorney Chris Erchull in Support of Plaintiff's Motion to Strike Turbocam's Declaration of Peter Hanson.

treatment from its health plan. Deposition of Peter Hanson ("Hanson Dep."), Ex. 6 at 119:19–24.[6] In subsequent questioning, Mr. Hanson testified at least four times that the reason for the exclusion was the company's religious objection. *See generally* Hanson Dep., Ex. 6 at 120–28. First, Mr. Hanson was asked: "[W]hy did Turbocam not make an exception or change the plan design with respect to coverage of . . . treatment for gender dysphoria." Hanson Dep., Ex. 6 at 119:25, 120:1–3. He answered: "Because it wouldn't be in alignment with our mission." Hanson Dep., Ex. 6 at 120: 4–5; 9–14. He repeated: "Based on what I know, our mission, and I knew it would be a non-starter." Hanson Dep., Ex. 6 at 124:13–14. Mr. Hanson was then asked: "[D]oes Turbocam have any objection to providing coverage for gender dysphoria in its self-funded health plan other than based on the religious mission of the company?" Hanson Dep., Ex. 6 at 125:16–20. He answered: "The primary reason is the religious objection. Probably a financial piece of that as a self-insured employer." Hanson Dep., Ex. 6 at 125:21–24. Although Mr. Hanson first testified that there was "always a financial aspect," he ultimately clarified that cost was not a factor in the decision not to cover treatment for gender dysphoria. Hanson Dep., Ex. 6 at 126:9–10, 127:4–9; 128:11–14. After going back and forth about cost, Mr. Hanson testified twice more that the reason for the exclusion was the religious mission of the company. Hanson Dep., Ex. 6 at 127:22–25 ("Q: And is the reason that Turbocam objects to coverage for gender dysphoria today because of the mission of the company? A: Yes."). *See also* Hanson Dep., Ex. 6 at 128:15–20 ("Q: So it's correct then that the only reason that Turbocam objects to providing coverage for gender dysphoria in its health plan is because of the mission and religious values of the company, correct? A: Yes.").

---

[6] Excerpts from the deposition of Peter Hanson are attached as Exhibit 6 to the accompanying Declaration of Attorney Chris Erchull in Support of Plaintiff's Motion to Strike Turbocam's Declaration of Peter Hanson.

5. <u>Deposition Testimony of Company President</u>. Turbocam's President, Marian Noronha, gave deposition testimony on April 15, 2025. Mr. Noronha was asked whether paragraph 14 of his July 11, 2024, declaration to the Court, *see* ECF No. 42-3 ¶ 14, is "a complete and accurate statement of the reason that Turbocam objects to providing treatment for gender dysphoria in its health plan?" <u>Ex. 7</u> at 132:15–18.[7] Mr. Noronha answered that he "could write another book on it," and further questioning revealed that the "book" was an explication of his religious beliefs. <u>Ex. 7</u> at 132:15–25, 133:1–25; 134:1–3. He then confirmed again that Turbocam objects to providing treatment for gender dysphoria because of his and his wife's religious convictions. <u>Ex. 7</u> at 134:10–25.

6. <u>Turbocam's Summary Judgment Filings</u>. Turbocam filed its opposition to Plaintiff's Motion for Summary Judgment and Cross-Motion for Summary Judgment on August 25, 2025. In its response to Plaintiff's statement of undisputed facts, Turbocam did not dispute multiple factual assertions that it excluded treatment for gender dysphoria in its health plan due to its religious objection. Def.'s Resp. to Bernier's Concise Statement of Undisputed Material Facts and Concise Counterstatement of Undisputed Material Facts, ECF No. 77 (Def.'s Resp.) at 13–14, ¶¶ 51–55. Turbocam further admitted Plaintiff's factual statement that its mission and values are the only reasons for the exclusion of gender dysphoria treatment. *Id.* at 15 ¶ 60. In its own counterstatement of undisputed material facts, Turbocam asserted only its religious objection as the reason for the gender dysphoria exclusion. *Id.* at 39–40 ¶¶ 50–51.

7. <u>Turbocam's Reply Memorandum</u>. Turbocam filed a reply in support of its cross-motion for summary judgment on November 5, 2025. ECF No. 95. Turbocam attached to its

---

[7] Excerpts from the deposition of Marion Noronha are attached as <u>Exhibit 7</u> to the accompanying Declaration of Attorney Chris Erchull in Support of Plaintiff's Motion to Strike Turbocam's Declaration of Peter Hanson.

5

memorandum a Declaration of Peter Hanson. ("Hanson Decl.") ECF No. 95-1. Mr. Hanson flatly contradicted his earlier testimony as an individual witness and Turbocam's 30(b)(6) designee, multiple testimonies from the company President, and Turbocam's admissions in its summary judgment filings two months earlier by stating that religious objections were not the only reason that Turbocam has determined to exclude coverage for gender dysphoria treatment. Instead, Mr. Hanson testified for the first time in Turbocam's reply brief that based on the Weiss report dated January 20, 2025—months before the deposition testimony in the case, the close of discovery, and Turbocam's own summary judgment briefing—that it excludes treatment for gender dysphoria because it "believes treatments aiming to align sex with gender identity are neither safe nor effective." ECF No. 95-1 at ¶ 6.

## ARGUMENT

**I. THE COURT MUST STRIKE THE HANSON DECLARATION FROM THE SUMMARY JUDGMENT RECORD BECAUSE IT CONTRADICTS TURBOCAM'S LONG-STANDING, REPEATED, AND SWORN TESTIMONY ABOUT THE BASIS FOR THE GENDER DYSPHORIA EXLCUSION WIHTOUT EXPLANATION AND INTRODUCES A NEW, WHOLLY UNRELATED REASON FOR THE FIRST TIME ON REPLY.**

**A. The Hanson Declaration Must Be Stricken from the Summary Judgment Record Because It Is an Egregious Reversal of Position and Directly Contradicts Turbocam's Prior Sworn Testimony.**

The First Circuit and other courts endorse striking affidavits introduced during summary judgment proceedings after the completion of discovery where, as here, no adequate justification has been provided as to why a party is contradicting prior sworn testimony. *See Calderón-Amézquita v. Rivera-Cruz*, No. 23-1091, 2025 U.S. App. LEXIS 28462, at *34–38 (1st Cir. Oct. 30, 2025) ("Our case law establishes that 'where a party has given clear answers to unambiguous questions in discovery, that party cannot create a conflict and resist summary judgment with an

6

affidavit that is clearly contradictory . . . .'") (quoting *Escribano-Reyes v. Pro. Hepa Certificate Corp.*, 817 F.3d 380, 386 (1st Cir. 2016)).

When a party attempts to create a factual dispute by filing an affidavit that conflicts with earlier deposition testimony, courts refer to the improperly introduced testimony as a "sham affidavit." *See, e.g.*, *Coakley Landfill Group v. IT Corp.*, 116 F. Supp. 2d 237, 242–43 (D.N.H. 2000) ("[I]t has long been recognized that under certain circumstances an affidavit filed in opposition to a motion for summary judgment may be disregarded if it contradicts that party's prior testimony or admission.") (citations omitted); *Orta-Castro v. Merck, Sharp & Dohme Quimica P.R., Inc.*, 447 F.3d 105, 110–11 (1st Cir. 2006) (holding that district court did not abuse its discretion in disregarding affidavit "executed only after [the party] had filed its motion for summary judgment, thus suggesting that the [affidavit] was made solely to create an issue of fact for the purpose of surviving summary judgment"). "The 'sham affidavit' rule safeguards the integrity of summary judgment proceedings by preventing a party from 'manufactur[ing] a dispute of fact by contradicting earlier sworn testimony without a satisfactory explanation of why the testimony is changed.'" *Robert Reiser & Co. v. Scriven*, Civ. No. 15-11746, 2016 U.S. Dist. LEXIS 118195, at *9–11 (D. Mass. Sept. 1, 2016) (alteration in original) (quoting *Abreu-Guzman v. Ford*, 241 F.3d 69, 74 (1st Cir. 2001) (partially striking affidavit contradicting deposition testimony) (quoting *Abreu-Guzman v. Ford*, 241 F.3d 69, 74 (1st Cir. 2001)).

This case does not even present a close call. Turbocam's position has always been that there is one and only one reason that it maintains the exclusion of health benefits for gender dysphoria: Marian Noronha's religious beliefs. This position has been asserted time and again, over several years. Extensive deposition testimony of multiple parties, including the affiant Peter Hanson, confirms that safety and efficacy of medical care has never been a consideration for Turbocam. During

7

Hanson's deposition on March 27, 2025, more than two months after the date on Dr. Weiss's expert report, Hanson had multiple opportunities to offer any additional justification, yet he held fast to Turbocam's position.

The First Circuit's decision in *Colantuoni v. Alfred Calcagni & Sons* is instructive. 44 F.3d 1 (1st Cir. 1994). In this slip-and-fall case, the plaintiff had testified at his deposition that he "realized the ladder might slip" and knew at the time of his accident that using the ladder in that manner presented a risk of slipping. *Id*. at 5. Only after defendants filed summary judgment motions did the plaintiff submit an affidavit asserting a contradictory position—that he "had no knowledge, at that time, of [the ladder's] propensity to slip." *Id.* The affidavit offered no explanation for the contradiction beyond an implausible claim about describing different time periods, which the Court rejected because "the deposition testimony clearly referred to the time of the accident." *Id.* The First Circuit held that the affidavit should be disregarded, emphasizing that "the affidavit was offered only after defendants had filed motions for summary judgment." *Id.*

This case presents an even stronger basis for striking the contradictory declaration. Like *Colantuoni*, Hanson gave clear deposition testimony that Marian Noronha's religious objection was the sole reason for the exclusion, and no Turbocam employee assessed medical risk or efficacy. Hanson Dep., <u>Ex. 6</u> at 120–28. Like *Colantuoni*, the subsequent declaration directly contradicts that testimony by asserting a "separate and independent reason" based on safety and efficacy beliefs. ECF No. 95-1 at ¶ 6. And, like *Colantuoni*, the declaration offers no explanation for the contradiction and fails to acknowledge the prior testimony, to claim confusion, or to explain why safety and efficacy concerns were never mentioned when Hanson was designated to testify about "any and all reasons" for the exclusion.[8]

---

[8] Apart from the about-face in a reply memorandum, the differential treatment of gender dysphoria

### B. The Basis to Strike the Hanson Declaration Is Even Stronger Because Hanson Is Turbocam's Designated Rule 30(b)(6) Deponent.

Turbocam designated Peter Hanson as its corporate representative under Rule 30(b)(6) to testify about "any and all reasons that Defendant Turbocam, Inc. excluded coverage of any or all treatment of gender dysphoria." Turbocam's 30(b)(6) Objection, Ex. 5 at 2. The Hanson Declaration is not simply clarification or elaboration. It asserts a "separate and independent reason" for the exclusion based on purported safety and efficacy concerns, completely contradicting his prior sworn testimony that there is no justification aside from Marian Noronha's religious beliefs.

The significance of this contradiction cannot be overstated. Rule 30(b)(6) testimony is not ordinary deposition testimony. "A corporation generally cannot present a theory of the facts that differs from that articulated by the designated Rule 30(b)(6) representative." 7 James Wm. Moore et al., Moore's Federal Practice § 30.25[3] (3d ed. 2016). Courts have therefore "ruled that because a Rule 30(b)(6) designee testifies on behalf of the entity, the entity is not allowed to defeat a motion for summary judgment based on an affidavit that conflicts with its Rule 30(b)(6) deposition or contains information that the Rule 30(b)(6) deponent professed not to know." *Id*. § 30.25; *see also Snapp v. United Transp. Union*, 889 F.3d 1088, 1103–04 (9th Cir. 2018); *MKB Constructors v. Am. Zurich Ins. Co.*, 49 F. Supp. 3d 814, 829 n.11 (W.D. Wash. 2014) ("[A] party cannot rebut the testimony of its Rule 30(b)(6) witness when, as here, the opposing party has relied on the Rule 30(b)(6) testimony, and there is no adequate explanation for the rebuttal."), *aff'd*, 711 Fed. Appx. 834 (9th Cir. 2017); *Hyde v. Stanley Tools*, 107 F. Supp. 2d 992, 993 (E.D. La. 2000) (striking

---

is patent. There is no evidence that Turbocam has ever assessed the safety or efficacy of any other treatment in its self-funded health plan. In fact, Turbocam does not dispute that it relies upon its third-party administrator, HPI, to conduct clinical reviews of medical necessity and relies upon HPI's guidelines and clinical criteria for determinations of coverage under its health plan. *See* Def.'s Resp., ECF No. 77 at 15–17, ¶¶ 63–68.

affidavit that contradicted Rule 30(b)(6) testimony where there was no adequate explanation for the contradiction), *summarily aff'd*, 31 Fed. Appx. 151 (5th Cir. 2001). Turbocam is bound by Hanson's deposition testimony and cannot introduce a new justification on summary judgment.

C. **The Timing of the Hanson Declaration, Introduced Only in Its Reply Brief, Underscores Why It Must Be Stricken.**

Turbocam's attempt to introduce new facts is unquestionably improper in a reply brief. Reply briefs serve a limited purpose: to respond to arguments raised in the opposition. LR 7.1(e)(1); *Hypertherm, Inc. v. American Torch Tip Co.*, Civ. No. 05-cv-373, 2007 U.S. Dist. LEXIS 67579, at *7 n.2 (D.N.H. Sep. 11, 2007) ("A reply in support of a dispositive motion is limited to rebuttal of factual and legal arguments raised in the objection."). Reply briefs are not an opportunity to introduce evidence or raise new arguments that were not presented earlier. *See, e.g.*, *Wills v. Brown Univ.*, 184 F.3d 20, 27 (1st Cir. 1999) ("Reply briefs are to counter the [opposing party]'s arguments, not to offer new theories of error for the first time.").

Turbocam waited until after reviewing Plaintiff's summary judgment briefing, and filing its own summary judgment briefing, to introduce its new justification for the gender dysphoria exclusion. Courts do not countenance this type of "sandbagging" and "unfairness." *See Sparkle Hill, Inc. v. Interstate Mat Corp.*, 788 F.3d 25, 29 (1st Cir. 2015) ("Sandbagging of this type deprives the [opposing party] of an opportunity to respond in writing on the issue. And any attempt to remedy that unfairness by allowing a second opposition, or sur-reply, brief can both increase costs for the [opposing party] and result in considerable delay."). Permitting Turbocam to inject new and contradictory evidence at the reply stage would reward gamesmanship at the very end of the game.[9] *See Cytyc Corp. v. TriPath Imaging, Inc.*, 505 F. Supp. 2d 199, 213 (D. Mass. 2007)

---

[9] The reverse-engineering of a justification is classic pretext to evade an unfavorable summary judgment ruling. *See Coakley Landfill Group v. IT Corp.*, 116 F. Supp. 2d 237, 243 (D.N.H. 2000) ("[A] party 'is not permitted to kick over the chess board in the face of a checkmate.' A satisfactory

("Introducing a new theory at this stage of litigation—where factual and expert discovery has closed—with no explanation for the delay is unacceptable.").

> D. **Turbocam's Failure to Supplement Discovery Responses in Violation of Rule 26 Provides Further Basis for Striking the Hanson Declaration.**

Turbocam's failure to disclose in its interrogatory answers any communications among Turbocam personnel about safety and efficacy concerns—despite being in possession of Dr. Weiss's expert report since at least January 2025—violates its continuing duty to supplement discovery responses under Federal Rule of Civil Procedure 26(e)(1)(A). That rule requires a party to "supplement or correct its disclosure or response" if it "learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A). Rule 37 counsels that "[i]f a party fails to provide information . . . required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence on a motion . . . unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The Hanson Declaration is neither justified nor harmless and it must be stricken. *See Coakley Landfill Group*, 116 F. Supp. 2d at 242 ("The failure to supplement the interrogatory leaves a contradiction between the [plaintiff]'s answer to interrogatories and its proffered affidavit.").

> E. **The Hanson Declaration Must Be Stricken to Preserve the Integrity of the Summary Judgment Record.**

Finally, striking the Hanson Declaration serves a broader purpose: preserving the integrity of the factual record. For three years of litigation, Turbocam has maintained one unwavering

---

explanation for the change is necessary.") (emphasis removed) (citing *Stefanik v. Friendly Ice Cream Corp.*, 183 F.R.D. 52, 54 (D. Mass. 1998)).

position—that the exclusion is based solely on Marian Noronha's religious objection to "erasing or obscuring sex." Turbocam stated this to the New Hampshire Commission on Human Rights, in sworn Rule 30(b)(6) deposition testimony, in a sworn declaration filed by Marian Noronha in this Court, in Marian Noronha's deposition testimony, and in its own brief in support of its cross-motion for summary judgment and opposition to Plaintiff's motion for summary judgment. The Court and any reviewing court are entitled to evaluate Turbocam's justification based on what it actually was, not on a justification manufactured in a reply brief after Turbocam saw the strength of Plaintiff's briefing.

Allowing the Hanson Declaration to stand would muddy the factual record and obscure the actual question this case presents about whether Marian Noronha's objection to medical care that "erases [Plaintiff's] sex" as a basis for an adverse employment decision constitutes unlawful discrimination. Courts should decide cases based on what parties actually did and why they actually did it, not on litigation-driven revisionism designed to create factual disputes where none exist. Striking the affidavit ensures that any court reviewing this matter does so based on an accurate record of Turbocam's true motivations.

## CONCLUSION

For the foregoing reasons, this court should strike the Declaration of Peter Hanson in Support of Turbocam's Reply in Support of its Cross-Motion for Summary Judgment.

|  |  |
|---|---|
|  | Respectfully submitted,<br>Lillian Bernier<br><br>By her attorneys, |
| Date: November 19, 2025 | */s/ Chris Erchull*<br>Chris Erchull (N.H. Bar No. 266733)<br>Bennett Klein (Mass. Bar No. 550702)*<br>Michael Haley (N.H. Bar No. 270236)<br>GLBTQ Legal Advocates & Defenders<br>18 Tremont St. Ste. 950<br>Boston, MA 02108<br>(617) 426-1350<br>cerchull@gladlaw.org<br>bklein@gladlaw.org<br>mhaley@gladlaw.org<br><br>\* *Admitted pro hac vice* |

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I electronically filed the foregoing document using CM/ECF system, which will send notification of such filing(s) to all those registered with the ECF system.

Date: November 19, 2025                                             */s/ Chris Erchull*

                                                                                         Chris Erchull