# EXHIBIT 1

Turbocam's Response to Lillian Bernier's Charge of Discrimination at the New Hampshire Human Rights Commission

# LITCHFIELD CAVO LLP
ATTORNEYS AT LAW

WRITER'S ADDRESS:
6 Kimball Lane | Suite 200
Lynnfield, MA 01940-2682
D 781-309-1510
F 781-246-0167

Bethany P. Minich
Email: Minich@LitchfieldCavo.com

March 23, 2023

*Via Electronic and First Class Mail*

Case Processing Unit
NH Human Rights Commission
2 Industrial Park Drive, Building 1
Concord, NH 03301-8501

      Re:    Lillian Bernier v. Turbocam, Inc. and Health Plans, Inc.
              EDGT 0038-23    16D-2023-00044

Dear Sir/Madam:

      Please accept this written response on behalf of TURBOCAM, Inc. ("TURBOCAM") to the above-referenced Charge of Discrimination filed by Lillian Bernier. As detailed below, TURBOCAM denies that it discriminated against Ms. Bernier on the basis of her gender identity. Moreover, TURBOCAM states that under the provisions of a class-wide federal-court injunction that includes TURBOCAM, the First Amendment, the federal Religious Freedom Restoration Act of 1993 ("RFRA"), Article V of Part 1 of the New Hampshire Constitution, and § 514(a) of the Employee Retirement Income Security Act of 1974 ("ERISA"), TURBOCAM cannot be compelled to provide insurance coverage for gender-transition drugs or surgical procedures in violation of its sincerely held religious beliefs.

      TURBOCAM is a closely-held, family business, whose owners, the Noronhas, are of the Christian faith. Both its website and Mission Statement – a copy of which Ms. Bernier received and signed at the time of hire – state that the company exists, "for the purpose of honoring God, creating wealth for its employees, and supporting Christian service to God and people." As Christians, the Noronhas are members of the New Frontiers Church, and believe, among other things, that one's sex is ordained by God, and that one's sex should not be erased or obscured by means of drugs or surgery. Relatedly, the Noronhas strongly believe that God will not allow use of TURBOCAM's resources – including those belonging to employees as a group – to assist employees in procuring drugs or surgical procedures to erase or obscure their sex. Following Ms. Bernier's (then Robert Bernier's) official name change on or about February 22, 2021, TURBOCAM attempted to work with Ms. Bernier to obtain insurance coverage through means other than TURBOCAM's insurance plan. This included providing a medical opt-out bonus, which would have enabled Ms. Bernier to seek medical insurance coverage elsewhere. Ms. Bernier, however, chose to remain on TURBOCAM's health insurance plan, chose to forego the bonus, and chose not to obtain outside insurance that would cover the pertinent procedures.

Atlanta | Boston area | Chicago | Dallas-Fort Worth | Fort Lauderdale | Hartford area | Houston | Indiana
Las Vegas | Los Angeles area | Louisiana | Milwaukee | New Jersey | New York | Philadelphia | Phoenix
Pittsburgh | Providence | Salt Lake City | St. Louis | Tampa | West Virginia

www.LitchfieldCavo.com



**LITCHFIELD CAVO** LLP
ATTORNEYS AT LAW

Case Processing Unit
NH Human Rights Commission
March 23, 2023
Page 2

In addition, Ms. Bernier remains an employee of TURBOCAM. With regard to each of Ms. Bernier's more specific allegations, please see as follows:

(1) In response to her claim that federal law – and particularly Title VII of the Civil Rights Act – requires TURBOCAM to provide insurance coverage for gender transition drugs or surgical procedures, that contention is incorrect.

To begin, TURBOCAM is a member of the Christian Employers Alliance ("CEA"), and a federal court has issued a class-wide preliminary injunction that protects CEA members—including TURBOCAM—and their respective third-party administrators from being compelled to provide precisely the health coverage that Ms. Bernier demands. *Christian Employers Alliance v. EEOC et al.*, No. 1:21-CV-195, 2022 WL 1573689, *9 (D.N.D. May 16, 2022). There, the court held that CEA was likely to succeed on its claim that the Religious Freedom Restoration Act of 1993, 42 U.S.C. §§ 2000bb *et seq.* ("RFRA"), prohibits interpretations of federal law—including Title VII of the Civil Rights Act—that would compel CEA members to "provide insurance coverage for gender transition procedures." *Id.* at *8. It therefore prohibited the federal government from "interpreting or enforcing" Title VII, Section 1557 of the Affordable Care Act, and federal regulations "in a manner that would require [CEA's] present or future members to provide insurance coverage for gender transition services." *Id.* at *9. The court likewise enjoined such interpretations and enforcement "against the insurers and third-party administrators of [CEA's] present and future members." *Id.* As a member of the plaintiff in *Christian Employers Alliance*, TURBOCAM and its third-party administrator are entitled to the full protections of the federal court's preliminary injunction, which precludes the interpretation of Title VII that Ms. Bernier presses in her Charge.

The injunction alone is sufficient to dispose of Ms. Bernier's Title VII argument. Even if the injunction were not in place, it is important to note that TURBOCAM's religious beliefs preclude it from assisting in the procurement of gender-transition drugs or procedures for *all* employees, regardless of their sex or gender dysphoria. This even-handed approach is in line with that outlined in *Bostock v. Clayton County*, wherein the Supreme Court cautioned that "[u]nder Title VII…we do not purport to address bathrooms, locker rooms, or anything else of the kind. The only question before us is whether an employer who fires someone simply for being homosexual or transgender has discharged or otherwise discriminated against that individual 'because of such individual's sex.'" *Bostock v. Clayton County*, 140 S. Ct. 1731, 1753 (2020). The Supreme Court has also stated that opposition to controversial medical procedures does not constitute animus or discrimination. *See Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 269–70 (1993). Therefore, under Supreme Court precedent, TURBOCAM has not discriminated against Ms. Bernier, much less on any basis that Title VII protects.



Case Processing Unit
NH Human Rights Commission
March 23, 2023
Page 3

Moreover, under *Nashville Gas Co. v. Satty*, exclusions in employer-provided health insurance (which is considered a fringe benefit) "are not *per se* violations of Title VII." *Nashville Gas Co. v. Satty*, 434 U.S. 136, 143 – 144 (1977); *see also Gen. Elec. Co. v. Gilbert*, 429 U.S. 125 (1976).

But even putting aside all these threshold deficiencies in Ms. Bernier's Charge, federal law protects TURBOCAM from being compelled to violate its religious beliefs. In *Burwell v. Hobby Lobby*, the Supreme Court made clear that the Religious Freedom Restoration Act protects the freedom of those employers who operate closely-held corporations such as TURBOCAM in accordance with their sincere religious beliefs. This includes allowing those corporations to choose insurance plans that reflect their beliefs, and to abstain from funding drugs or other procedures that violate their consciences. *Burwell v. Hobby Lobby*, 573 U.S. 682 (2014); *see also Little Sisters of the Poor v. Pennsylvania*, 140 S. Ct. 2367, 2383 (2020). Given that "[the Religious Freedom Restoration Act] was designed to provide very broad protection for religious liberty," there is no "reason to think that Congress enacted such sweeping protection [to] put small business owners to the choice of violating their religious beliefs" or giving up their ability to operate as a corporation. *Hobby Lobby*, 573 U.S. at 706. The Supreme Court reiterated this point in *Bostock v. Clayton County*, observing that, "[b]ecause RFRA operates as a kind of super statute, displacing the normal operation of other federal law, it might supersede Title VII's commands in appropriate cases." 140 S. Ct. at 1754.

Applying *Hobby Lobby*, numerous courts across the country have held that attempts to force religious employers to provide gender-transition health insurance coverage fail the demanding strict scrutiny test set forth in the Religious Freedom Restoration Act. *See, e.g., Christian Employers Alliance v. United States Equal Opportunity Commission*, No. 1:21-cv-195, 2022 WL 1573689, at *6 (D.N.D. May 16, 2022); *Franciscan Alliance, Inc. v. Becerra*, 553 F. Supp. 3d 361, 376 (N.D. Tex. 2021); *Franciscan Alliance v. Azar*, 414 F. Supp. 3d 928, 943 (N.D. Tex. 2019); *Religious Sisters of Mercy v. Azar*, 513 F. Supp. 3d 1113, 1147–49 (D.N.D. 2021), *aff'd*, 55 F.4th 583 (8th Cir. 2021). Therefore, even if federal law were somehow misconstrued to require TURBOCAM to provide the insurance coverage that Ms. Bernier seeks, it would "impose[] a substantial burden on the ability of" TURBOCAM "to conduct business in accordance with [its] religious beliefs," *Hobby Lobby* at 724, and that substantial burden would trigger and fail RFRA's demanding strict scrutiny standard.

(2) Ms. Bernier's claim that state employment discrimination law requires TURBOCAM to provide insurance coverage for gender-transition drugs or surgical procedures is also incorrect.

As a threshold matter, Ms. Bernier's state-law claims are fully preempted by federal law. In *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96–103 (1983), the Supreme Court concluded that



Case Processing Unit
NH Human Rights Commission
March 23, 2023
Page 4

ERISA preempts state human rights and disability laws to the extent that such laws prohibit conduct that is lawful under federal law. As the *Shaw* Court noted, ERISA broadly preempts state laws that "'relate to any employee benefit plan,'" which state employment and disability laws clearly do. *Id.* at 100 (quoting ERISA § 514(a)). And as the *Shaw* Court further noted, ERISA provides only a narrow exception where such preemption would "'alter, amend, modify, invalidate, impair, or supersede any law of the United States.'" *Shaw*, 463 U.S. at 100–01 (quoting ERISA § 514(d)). This narrow exception to preemption does not apply where state laws place greater restrictions on health plans than does federal law. "Insofar as state laws prohibit employment practices that are lawful under Title VII," *id.* at 103, or that are lawful under "any law of the United States" for that matter, ERISA § 514(d), "pre-emption would not impair [federal law] within the meaning of § 514(d)." *Shaw*, 463 U.S. at 103. Therefore, more restrictive state laws remain subject to ERISA preemption. *Id.*

As set forth above, federal law not only *permits* TURBOCAM to exclude gender-transition services from its health plan; the federal RFRA *affirmatively requires* that it be permitted to do so. Therefore, Ms. Bernier's proffered interpretation of New Hampshire law would forbid a practice that federal law affirmatively authorizes. Thus, her state law claims are fully preempted by ERISA § 514(a) as authoritatively construed by the U.S. Supreme Court in *Shaw*.

Even putting aside ERISA preemption, which alone fully suffices to dispose of Ms. Bernier's state employment and disability discrimination claims, as stated above, TURBOCAM's evenhanded insurance exclusion does not discriminate on the basis of any protected characteristic, as it concerns employee conduct rather than employee status or identity.

Even apart from these facial deficiencies in Ms. Bernier's Charge, however, under the First Amendment, laws that substantially burden the free exercise of religion are subject to strict scrutiny, unless they are neutral and generally applicable. *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531–32 (1993). A law is not neutral and generally applicable if it provides exemptions, or if it otherwise treats secular conduct more favorably than religious exercise. *Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1877 (2021); *Tandon v. Newsom*, 141 S. Ct. 1294, 1296 (2021).

RSA 354-A is not neutral and generally applicable because it provides several secular exemptions. RSA 354-A:2(VII). Accordingly, its application to TURBOCAM would require strict scrutiny. And for the same reasons that forcing TURBOCAM to provide insurance coverage that violates its religious convictions fails strict scrutiny under RFRA, it also would fail strict scrutiny under the First Amendment.


**LITCHFIELD CAVO** LLP
ATTORNEYS AT LAW

Case Processing Unit
NH Human Rights Commission
March 23, 2023
Page 5

Finally, regardless whether RSA 354-A is neutral and generally applicable, like RFRA, Article V of Part 1 of the New Hampshire Constitution precludes TURBOCAM from being made to fund gender-transition treatments or procedures that violate its conscience. In *State v. Mack*, the Supreme Court of New Hampshire held that the New Hampshire Constitution's religion provision obliges the accommodation of religious practices that do not disturb the public peace, even where the statute at issue is neutral and generally applicable. *State v. Mack*, 173 N.H. 793, 812 (2020). That requirement of religious accommodation fully applies here. In this case, where Ms. Bernier is claiming only that TURBOCAM's exemption discriminates against *her*, she has not established—and cannot establish—that the *public peace* is disturbed. *See Att'y Gen. v. Desilets*, 418 Mass. 316, 325–26 (1994) (interpreting Massachusetts' free exercise provision, which is identical to New Hampshire's, and holding that it protects a religious landlord from being compelled under state anti-discrimination laws to rent accommodations to unmarried couples).

(3) Finally, the assertion that TURBOCAM has committed disability discrimination by choosing not to assist in the procurement of gender-transition drugs and procedures is incorrect.

As already discussed, ERISA § 514(a) preempts Ms. Bernier's state-law disability discrimination claim because the claim would impair federal law by prohibiting conduct that RFRA affirmatively authorizes. *See Shaw*, 463 U.S. at 103 (holding that ERISA preempts state employment discrimination and disability laws to the extent that such laws prohibit conduct that is lawful under federal law).

But even setting aside that Ms. Bernier's state-law claims are fully preempted, neither RSA 354 nor the Americans with Disabilities Act ("ADA") recognizes gender dysphoria as a disability. *See* 42 U.S.C. § 12211 (explicitly excluding "gender identity disorders" from the definition of "disability"); RSA 354-A:2 (using the same definition of "disability" as the Americans with Disabilities Act); *Doe v. Northrop Grumman Systems Corp.*, 418 F. Supp. 3d 921 (N.D. Ala. 2019) (dismissing an Americans with Disabilities Act claim because neither "gender identity" nor "gender dysphoria" is a disability under the ADA).

And finally, even if RSA 354 were not ERISA-preempted, and even if RSA 354 and the ADA were misconstrued to require the insurance coverage that Ms. Bernier demands, as demonstrated above, Article V of Part 1 of the New Hampshire Constitution, federal RFRA, and the First Amendment protect TURBOCAM from applications of federal and state law that would require it to violate its faith. Therefore, regardless of whether the Commission agrees with Ms. Bernier on her interpretation of RSA 354 and the ADA, RFRA, the First Amendment, and the New Hampshire Constitution require accommodation of TURBOCAM's sincere religious beliefs and rejection of Ms. Bernier's Charge.



# LITCHFIELD CAVO LLP
ATTORNEYS AT LAW

Case Processing Unit
NH Human Rights Commission
March 23, 2023
Page 6

## RESPONSE TO CHARGE

(a) The Complainant has used TURBOCAM's correct legal name. Further answering, TURBOCAM is a corporation.

(b) TURBOCAM's principal office is located at 607 Calef Highway, Barrington, NH 03825. TURBOCAM is represented by attorneys Bethany P. Minich and Gayatri R. Deodhar of the law firm of Litchfield Cavo LLP, located at 6 Kimball Avenue, Suite 200, Lynnfield, MA 01940; and attorneys Jordan E. Pratt[1] and Roger Byron[2] of First Liberty Institute, 1331 Pennsylvania Avenue NW, Suite 1410, Washington, DC 20004.

(c) TURBOCAM responds to the specific paragraphs of Ms. Bernier's CHARGE as follows:

1. TURBOCAM admits that the Complainant is its employee. TURBOCAM admits that it provides health insurance coverage to its employees through a self-funded benefits plan entitled, "TURBOCAM, Inc. Employee Group Medical Plan (H.S.A. PPO) ("the Plan). TURBOCAM admits that the Plan is administered by Health Plans, Inc. ("HPI"). TURBOCAM admits that the Plan does not provide coverage for the treatment of gender dysphoria, but states that it is without knowledge or information sufficient to form a belief as to the truth of the allegation that gender dysphoria is a serious medical condition characterized by clinically significant distress caused by the incongruence between a transgender person's gender identity and birth sex. TURBOCAM denies that the Plan not offering coverage for gender dysphoria contravenes the conclusions of medical and professional health organizations that treatments for gender dysphoria are medically necessary. TURBOCAM states that the allegation that the Complainant is a transgender woman with gender dysphoria is not directed to it, and therefore, no response is required. TURBOCAM denies that by virtue of its health insurance plan not offering coverage for the treatment of gender dysphoria, it is denying the Complainant equal compensation for equal work, or denying her critical medically necessary health care because she is transgender, in violation of the provisions of the New Hampshire Human Rights Act, Title VII of the Civil Rights Act of 1964, and the Americans with Disabilities Act.

2. TURBOCAM states that it is without knowledge or information sufficient to form a belief as to the truth of the allegation that the Complainant was born and raised in New Hampshire and currently lives in Strafford County, New Hampshire. TURBOCAM admits that the Complainant has been its employee since June 2019.

---

[1] *Pro hac vice* admission pending.
[2] *Pro hac vice* admission pending.



Case Processing Unit
NH Human Rights Commission
March 23, 2023
Page 7

    3. TURBOCAM admits the allegations contained in this paragraph.

    4. TURBOCAM admits the allegations detailed in the first two sentences of this paragraph. TURBOCAM denies the allegation contained in the last sentence of this paragraph. While still finalizing global revenue numbers for 2022, TURBOCAM expects that total revenue will be slightly lower than 200 million dollars, possibly around 197 million dollars.

    5. As the allegations of this paragraph are not directed to TURBOCAM, no response is required.

    6. TURBOCAM states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

    7. TURBOCAM states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

    8. TURBOCAM states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

    9. TURBOCAM states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

    10. TURBOCAM states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

    11. TURBOCAM states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

    12. TURBOCAM states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

    13. TURBOCAM states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

    14. TURBOCAM states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

    15. TURBOCAM states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.



Case Processing Unit
NH Human Rights Commission
March 23, 2023
Page 8

16. TURBOCAM states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

17. TURBOCAM states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

18. TURBOCAM states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

19. TURBOCAM states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

20. TURBOCAM admits only that Ms. Bernier has been its employee since June of 2019. As to the remaining allegations contained in this paragraph, TURBOCAM states that it is without knowledge or information sufficient to form a belief as to their truth.

21. TURBOCAM admits the allegations contained in this paragraph.

22. TURBOCAM admits the allegations contained in this paragraph.

23. TURBOCAM admits only that Ms. Bernier has been its employee since June of 2019.

24. As the allegation contained in this paragraph is not directed to TURBOCAM, no response is required.

25. As the allegations contained in this paragraph are not directed to TURBOCAM, no response is required.

26. As the allegations contained in this paragraph are not directed to TURBOCAM, no response is required.

27. As the allegations contained in this paragraph are not directed to TURBOCAM, no response is required.

28. As the allegations contained in this paragraph are not directed to TURBOCAM, no response is required.

29. TURBOCAM admits only that the Plan contains an exclusion relative to treatment for gender dysphoria.



Case Processing Unit
NH Human Rights Commission
March 23, 2023
Page 9

30. TURBOCAM states that the Plan speaks for itself.

31. TURBOCAM admits the allegations contained in this paragraph.

32. TURBOCAM denies the allegations contained in this paragraph.

33. TURBOCAM states that as the allegations contained in this paragraph call for a legal conclusion, it can neither admit nor deny those allegations.

34. TURBOCAM denies the allegations contained in this paragraph.

35. As the allegations contained in this paragraph are not directed to TURBOCAM, no response is required.

36. As the allegations contained in this paragraph are not directed to TURBOCAM, no response is required.

37. As the allegations contained in this paragraph are not directed to TURBOCAM, no response is required.

38. As the allegations contained in this paragraph are not directed to TURBOCAM, no response is required.

39. As the allegations contained in this paragraph are not directed to TURBOCAM, no response is required.

(d) Affirmative Defenses:
- General Denial.
- Ms. Bernier has failed to establish a prima facie case of discrimination based on gender identity under state or federal law.
- TURBOCAM did not discriminate against Ms. Bernier based on her gender identity or in any other way.
- Ms. Bernier's claims must fail because the employment practices and/or decisions challenged in the Charge are justified by legitimate, non-discriminatory and non-pretextual business reasons.
- Ms. Bernier's claims must fail because she did not suffer any damages by any act or omission of TURBOCAM.
- Ms. Bernier failed to mitigate her own damages.
- Ms. Bernier's claims are barred by her own conduct.



Case Processing Unit
NH Human Rights Commission
March 23, 2023
Page 10

- Ms. Bernier's claims are barred by the preliminary injunction issued in *Christian Employers Alliance v. EEOC et al.*, No. 1:21-CV-195, 2022 WL 1573689, *9 (D.N.D. May 16, 2022); by the Religious Freedom Restoration Act of 1993, 42 U.S.C. §§ 2000bb *et seq.*; by the First Amendment to the United States Constitution; by Article V of Part 1 of the New Hampshire Constitution; and by ERISA § 514(a).
- TURBOCAM has at all times acted reasonably and in good faith and in compliance with all laws and has otherwise satisfied its obligation toward Ms. Bernier under state and federal laws.
- TURBOCAM intends to rely upon such other and further defenses as may become available or apparent during these proceedings and hereby reserves the right to amend its Response and to assert any such defense.

(e) A copy of Ms. Bernier's complete personnel file is attached as **Exhibit A**.

(f) A copy of TURBOCAM's anti-discrimination policy and all handbook policies in effect at the time of Ms. Bernier's employment is attached as **Exhibit B**.

(g) A copy of TURBOCAM's organizational chart is attached as **Exhibit C**.

(h) Not applicable.

(i) A confidential witness list is attached as **Exhibit D**. A copy is not being provided to Ms. Bernier.

(j) TURBOCAM is not under any consent decree or conciliation with another state fair employment practice agency or EEOC.

(k) TURBOCAM is a federal contractor as defined by the Office of Federal Contract Compliance, as it has entered into subcontract agreements with the federal government.

For all of the foregoing reasons, TURBOCAM respectfully requests that the New Hampshire Commission for Human Rights dismiss this Charge against it, or issue a finding of no probable cause.

# LITCHFIELD CAVO LLP
ATTORNEYS AT LAW

Case Processing Unit
NH Human Rights Commission
March 23, 2023
Page 11

March 23, 2023

Respectfully Submitted By,
THE RESPONDENT,
TURBOCAM, INC.,
By Its Attorneys,

*[signature]*

Bethany P. Minich, NH Bar No. 265413
Gayatri R. Deodhar, NH Bar No. 275044
Litchfield Cavo LLP
6 Kimball Lane, Suite 200
Lynnfield, MA 01940
Tel. (781) 309-1500
Fax (781) 246-0167
minich@litchfieldcavo.com
deodhar@litchfieldcavo.com

*[signature]*

Jordan E. Pratt *
Roger Byron **
First Liberty Institute
1331 Pennsylvania Ave. NW
Suite 1410
Washington, DC 20004
(972) 941-4444
jpratt@firstliberty.org
rbyron@firstliberty.org

\* Application for *pro hac vice* admission pending
\** Application for *pro hac vice* to be filed



Case Processing Unit
NH Human Rights Commission
March 23, 2023
Page 12

## CERTIFICATE OF SERVICE

    I hereby certify that a copy of the foregoing Response to Charge, and all documents provided therewith (with the exception of Exhibit D) have been sent on March 23, 2023 to the following by electronic and first-class mail, postage prepaid:

| | |
|---|---|
| Bennett H. Klein, Esquire<br>bklein@glad.org<br>Chris Erchull, Esquire<br>cerchull@glad.org<br>GLBTQ Legal Advocates & Defenders<br>18 Tremont Street, Suite 950<br>Boston, MA 02108 | Lisa A. Zaccardeli, Esquire<br>lzaccardelli@hinckleyallen.com<br>Hinckley Allen<br>20 Church Street<br>Hartford, CT 06103-1221 |

_____
Bethany P. Minich

**LITCHFIELD CAVO** LLP
ATTORNEYS AT LAW

Case Processing Unit
NH Human Rights Commission
March 23, 2023
Page 13

## VERIFICATION

I certify that I have read the foregoing statements and that they are true and accurate to the best of my knowledge, information and belief.

TURBOCAM, INC.,

March 23, 2023

_____
Duly Authorized

STATE OF NEW HAMPSHIRE
COUNTY OF STRAFFORD

Signed and sworn to (or affirmed) before me on this _23_ day of March, 2023 by _Racheal Deitchler_ whose identity was determined by (checkbox that applies and complete blank line, if any):

☒ My personal knowledge of the identity of said person; OR

☐ The oath or affirmation of a credible witness, _____ (name of witness), the witness being personally known to me; OR

☐ The following identification documents: _____
(driver's license, passport, other).

_Racheal M. Deitchler_
Notary Public/Justice of the Peace
My Commission Expires: _April 21, 2028_

