IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| LILLIAN BERNIER<br><br>*Plaintiff*,<br><br>v.<br><br>TURBOCAM, INC.,<br><br>*Defendant*. | Civil Action No. 1:23-cv-00523-LM-AJ |

**TURBOCAM'S OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE TURBOCAM'S DECLARATION OF PETER HANSON IN SUPPORT OF TURBOCAM'S REPLY IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT**

James R. Conde*
D.C. Bar No. 1031694
Laura B. Ruppalt*
D.C. Bar No. 90033927
BOYDEN GRAY PLLC
800 Connecticut Avenue NW,
Suite 900
Washington, DC 20006
Telephone: (202) 955-0620
jconde@boydengray.com
lruppalt@boydengray.com

Bethany P. Minich
N.H. Bar No. 265413
LITCHFIELD CAVO LLP
6 Kimball Lane, Suite 200
Lynnfield, MA 01940
Telephone: (781) 309-1500
minich@litchfieldcavo.com

Roger L. Byron*
Texas State Bar No. 24062643
E. Cliff Martin*
Texas State Bar No. 24127208
FIRST LIBERTY INSTITUTE
2001 West Plano Parkway, Suite 1600
Plano, Texas 75075
Telephone: (972) 941-4444
rbyron@firstliberty.org
cmartin@firstliberty.org

\* *Pro hac vice*

***Counsel for Defendant***
*Turbocam, Inc.*

December 10, 2025

## INTRODUCTION

If anyone is attempting to "sandbag," it is Plaintiff Lillian Bernier. Throughout this litigation—beginning with the complaint and through the motion for summary judgment—Bernier has argued that the exclusion for gender-affirming care in Turbocam's employer-sponsored health-benefits plan violates Title VII because it discriminates in a "but-for" sense under *Bostock v. Clayton County*, 590 U.S. 644 (2020). *See, e.g.*, Bernier's Mem. in Supp. of Summ. J. at 8–9 ("Bernier's MSJ"), Dkt. 66-1. But, for the first time in her reply in support of that motion (consolidated with her opposition to Turbocam's cross-motion for summary judgment), Bernier seemingly articulated an *entirely new* theory of liability, apparently to distinguish *United States v. Skrmetti*, 605 U.S. 495 (2025). In reply, Bernier now argues that Turbocam violated Title VII not just because the health-benefits plan discriminates *because* of sex under *Bostock*, but also because Turbocam was "motivated" in part by sex in retaining the exclusion after Bernier sought an exception. Bernier's Reply in Support of Summ. J. at 4–5 ("Bernier's Reply"), Dkt. 88. This distinction matters because so-called "mixed-motives" claims are subject to a different legal framework under Title VII that allows an employer to raise special defenses not available in a traditional but-for discrimination claim. *See* 42 U.S.C. §§ 2000e-2(m), 2000e-5(g)(2)(B).

To be clear, Bernier forfeited her new mixed-motives theory by not raising it earlier. But out of an abundance of caution, in its own reply Turbocam raised an affirmative defense to damages Bernier might seek on that claim. Turbocam's Reply Mem. in Supp. of Turbocam's Cross-Mot. for Summ. J. at 6 ("Turbocam's Reply"), Dkt. 95. In its reply, Turbocam affirmed that it has maintained the exclusion for gender-affirming care based on its owners' sincerely held religious beliefs. *Id.* at 3–4. Turbocam also explained that, based on its expert's information, *going forward* Turbocam would retain the exclusion for the *additional* reason that it does not believe gender affirming care is safe or effective, *id.* at 6, attaching a declaration from Turbocam's director of

1

talent development Peter Hanson for support, Turbocam's Reply, Ex. V ("Hanson Declaration" or "Hanson Decl."), Dkt. 95-1. Bernier has moved to strike that declaration, arguing that it contradicts Turbocam's prior statements regarding the reason for the health-benefits plan exclusion. Dkt. 97 ("Bernier's Mot. to Strike").

This Court should deny Bernier's motion for two independent reasons. First, a motion to strike at the summary judgment stage is procedurally improper. *Villeneuve v. Avon Prods., Inc.*, 919 F.3d 40, 45 n.4 (1st Cir. 2019). The Federal Rules of Civil Procedure permit a party to move to strike material "from a *pleading*," not from the summary judgment record. Fed. R. Civ. P. 12(f) (emphasis added). Any objections Bernier has to the Hanson Declaration may be addressed through Federal Rule of Civil Procedure 56(c)(2), which provides for objections to evidence proffered during summary judgment.

Second, there are no evidentiary or procedural grounds for excluding the Hanson Declaration under Rule 56 or any other Rule. The Hanson Declaration is "made on personal knowledge, set[s] out facts that would be admissible in evidence, and show[s] that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). And the Hanson Declaration does not contradict prior testimony, as it merely provides a "separate and independent reason" that Turbocam would "continue excluding coverage for gender dysphoria *going forward*." Hanson Decl. ¶ 6 (emphasis added). Because the Declaration was provided in response to Bernier's late-raised claim, and in any event does not contradict any prior testimony and articulates only Turbocam's position going forward, there also is no disclosure violation, *see* Fed. R. Civ. P. 26(e)(1)(A), 37(c); or conflict with deposition requirements, *see* Fed. R. Civ. P. 30(b)(6).

Finally, the Hanson Declaration is timely even if Bernier had not belatedly invoked a new legal theory. Bernier seeks not just damages for past conduct but also forward-looking injunctive

2

relief—forcing Turbocam's health-benefits plan to cover gender-affirming care. But courts in equity have ongoing authority to modify or dissolve injunctions *even after final judgment* based on changed facts. *Horne v. Flores*, 557 U.S. 433, 447 (2009). Turbocam thus cannot be faulted for raising new facts that may inform this Court's discretionary grant of equitable relief well before final judgment.

This Court should therefore deny Bernier's motion to strike.

## BACKGROUND

Turbocam is a closely-held family business whose owners, Marian and Suzie Noronha, operate the company consistent with their sincerely held Christian beliefs. Bernier's Resp. to Turbocam's Concise Counterstatement of Undisputed Material Facts at 41–32, ¶¶ 40–51 ("Bernier's Resp. to DSOF"), Dkt. 87. Like millions of other Christians worldwide, the Noronhas believe that sex is an immutable characteristic ordained by God that should not be erased or obscured. *Id.* at 43, ¶¶ 50–51. Accordingly, Turbocam's employer-sponsored health-benefits plan, which is available on equal terms to all eligible employees regardless of sex or transgender status, does not cover gender-affirming care. *Id.* at 43–45, 53–54, ¶¶ 51, 55, 58, 88–89.

Bernier is a transgender employee of Turbocam who sued the company, alleging that its health-benefits plan exclusion is unlawful for various reasons, including because it discriminates *because* of sex under *Bostock*'s but-for reasoning, in violation of Title VII. Compl. ¶ 61, Dkt. 1. This claim was Bernier's sole theory of Title VII liability throughout the pleadings, as well as in her motion for summary judgment. *Id.* (citing only 42 U.S.C. § 2000e-2(a)(1)); Bernier's MSJ at 8–9 ("*Bostock* [p]rovides the [f]ramework for the [a]nalysis of Lillian's Title VII [c]laim"); *Bostock*, 590 U.S. at 657 (*Bostock*'s "analysis … focus[es] on the … traditional but-for causation standard"); *see also* Bernier's MSJ at 10 ("As *Bostock* explained, the fact that an employer has additional reasons (in this case, religious beliefs) for adopting an expressly discriminatory policy

3

is legally irrelevant."); *id.* at 10 n.4 (quoting *UAW v. Johnson Controls*, 499 U.S. 187, 199 (1991), for the proposition that the "absence of a malevolent motive does not convert a facially discriminatory policy into a neutral policy with a discriminatory effect"). Thus, in response to this claim, Turbocam has argued (and maintains) that its health-benefits plan is not discriminatory under *Bostock* because it does not treat any employee differently based on a protected characteristic and so does not discriminate because of sex. Turbocam's Mem. in Supp. of Turbocam's Opp. to Pl.'s Mot. for Summ. J. and in Supp. of Cross-Mot. for Summ. J. at 5–12 ("Turbocam's Opp."), Dkt. 75; *see also Skrmetti*, 605 U.S. at 517–19.

Perhaps finally coming to grips with the futility of a *Bostock* claim following *Skrmetti*, Bernier reversed course in reply and expressly disclaimed that Turbocam's health-benefits plan "on its face, necessarily discriminates based on sex." Bernier's Reply at 4–5. Instead, for the first time in this litigation, Bernier argued that Turbocam's religious beliefs *were* legally relevant because its refusal to modify the plan in response to Bernier's request was "*motivated* by sex-based beliefs." *Id.* at 5 (emphasis added). Although Bernier does not cite it (and has never cited it), her new argument sounds in Title VII's distinct and unique provision recognizing mixed-motives liability, 42 U.S.C. § 2000e-2(m). Under that provision, a plaintiff may establish a Title VII violation by demonstrating that "sex … was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m).

A mixed-motives claim is a "separate, though related" theory of liability from a "traditional [Title VII] discrimination" claim. *Chadwick v. WellPoint, Inc.*, 561 F.3d 38, 45 (1st Cir. 2009); *see also Ponce v. Billington*, 679 F.3d 840, 844 (D.C. Cir. 2012) (describing the "two separate ways for plaintiffs to establish liability" under Title VII). A traditional claim under 42 U.S.C.

4

§ 2000e-2(a)(1)—like that Bernier pursued through her complaint and motion for summary judgment and which *Bostock* analyzed—requires "proving that a protected characteristic was *a but-for cause* of the adverse employment action." *Ponce*, 679 F.3d at 844 (emphasis added). In contrast, a mixed-motives claim under 42 U.S.C. § 2000e-2(m) requires only "showing that unlawful discrimination was '*a factor* motivating the adverse action,'" even if other factors were also part of the motivation. *Id.* (emphasis added); *see also Palmquist v. Shinseki*, 689 F.3d 66, 72–73 (1st Cir. 2012) (explaining mixed-motives liability). Importantly, the relief available in mixed-motives cases is limited. The "employer's proof that it would still have taken the same employment action" for other than the prohibited discriminatory reasons saves the employer "from monetary damages" and some injunctive relief. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 349 (2013); *see* 42 U.S.C. § 2000e-5(g)(2)(B).

To be clear, Bernier has forfeited her mixed-motives claim by failing to raise it earlier. *See* L.R. 7.1(e)(1) (restricting reply memoranda to "rebuttal of factual and legal arguments raised in the objection or opposition memorandum"); *Hypertherm, Inc. v. Am. Torch Tip Co.*, 2007 WL 2695323, at *2 n.2 (D.N.H. Sept. 11, 2007) (citing L.R. 7.1(e)(1) and explaining that "[t]he moving party cannot raise new arguments and issues in a reply that it failed to address in the original motion"); *see also Hillstrom v. Best Western TLC Hotel*, 354 F.3d 27, 31 (1st Cir. 2003) (expressing doubt that plaintiff preserved mixed-motives argument because "he never suggested to the district court that he was presenting a mixed-motive case"). It would also fail on the merits because Turbocam's health-benefits plan exclusion does not differentiate based on sex. *See* Turbocam's Opp. at 5–12; Turbocam's Reply at 3; *see also Chadwick*, 561 F.3d at 45 (both traditional and mixed-motives claims require "a finding that there was differential treatment in an employment action"). But out of an abundance of caution, at the first opportunity—in its reply—Turbocam

5

raised a defense specific to Bernier's new theory of liability, explaining that going forward the company would "take 'the same action in the absence of the [allegedly] impermissible motivating factor'" because Turbocam doesn't believe that gender-affirming care is safe or effective. Turbocam's Reply at 6 (quoting 42 U.S.C. § 2000e-5(g)(2)(B)). Turbocam attached the challenged Declaration for support.

## ARGUMENT

### I. Bernier's Motion to Strike Is Procedurally Improper

This Court should deny Bernier's motion to strike because such motions at summary judgment have no basis in the Federal Rules of Civil Procedure. Those Rules permit motions to strike from "pleading[s]" matters that are "redundant, immaterial, impertinent, or scandalous." Fed. R. Civ. P. 12(f). A summary judgment motion is not a "pleading," *see* Fed. R. Civ. P. 7(a), and Bernier does not argue that the Hanson Declaration contains "redundant, immaterial, impertinent, or scandalous" material, Fed. R. Civ. P. 12(f). At summary judgment, Rule 56—not Rule 12—governs the admissibility of evidence, and Rule 56 does not authorize motions to strike as a tool for evidentiary objections. *See* Fed. R. Civ. P. 56. In any event, neither Rule licenses courts to "serve as editor[s]" and strike portions of the summary judgment record that a party dislikes; "[t]here is no provision for a judicial blue pencil." *Custom Vehicles, Inc. v. Forest River, Inc.*, 464 F.3d 725, 726–27 (7th Cir. 2006) (Easterbrook, J., in chambers).

This makes sense because the principal purpose of summary judgment is to streamline litigation, but motions to strike thwart that purpose by generating unnecessary satellite litigation over ancillary filings that add costs and waste time and judicial resources. *See* Fed. R. Civ. P. 56 advisory committee's note to Rule's 1937 adoption; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986); *cf.* Fed. R. Civ. P. 1 ("[Rules] should be construed, administered, and employed by the

6

court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding.").

The 2010 amendments to the Federal Rules of Civil Procedure make clear that motions to strike are unnecessary and improper. Before the 2010 amendments to Rule 56, litigators would swamp district courts with motions to strike at the summary judgment stage. To curtail this unnecessary practice, many district courts denied or ignored these motions, and merely disregarded inadmissible evidence when ruling on summary judgment. *See, e.g.*, *Maytag Corp. v. Electrolux Home Prods., Inc.*, 448 F. Supp. 2d 1034, 1062–63 (N.D. Iowa 2006); *Sholl v. Plattform Advert., Inc.*, 438 F. Supp. 2d 1303, 1307 (D. Kan. 2006); *Reeves v. Churchich*, 331 F. Supp. 2d 1347, 1353 (D. Utah 2004); *Edwards v. Tex.-N.M. Power Co.*, 259 F. Supp. 2d 544, 546 (N.D. Tex. 2003); *Epstein v. Kemper Ins. Cos.*, 210 F. Supp. 2d 308, 313–14 (S.D.N.Y. 2002); *Knight v. United States*, 845 F. Supp. 1372, 1374–75 (D. Ariz. 1993).

To close the gap between the Rule's text and actual practice, the advisory committee in 2010 amended Rule 56 by adding subdivision (c)(2), which provides that "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). That amendment obviated the "need to make a separate motion to strike." Fed. R. Civ. P. 56(c)(2) advisory committee's note to Rule's 2010 amendment. Instead, as the First Circuit has now recognized, "a party may simply object in her memo to evidence she thinks is inadmissible." *Villeneuve*, 919 F.3d at 45 n.4. And district courts may consider those evidentiary objections when ruling on summary judgment by *disregarding* portions of an affidavit or declaration, not striking them from the record. *See* Fed. R. Civ. P. 56(c)(4). Bernier's motion to strike is therefore improper and should be denied.

## II. There Are No Grounds to Exclude the Hanson Declaration

There also are no grounds for excluding the Hanson Declaration under any other Rule.

7

As to Rule 56, the Hanson Declaration is "made on personal knowledge, set[s] out facts that would be admissible in evidence, and show[s] that the affiant or declarant is competent to testify on the matters stated," and so is properly considered at summary judgment. Fed. R. Civ. P. 56(c)(4). Bernier does not dispute that the Hanson Declaration complies with Rule 56(c)(4)'s requirements. Instead, Bernier argues that the Hanson Declaration "directly contradicts" Turbocam's prior position and accuses Turbocam of "manufactur[ing]" new justifications for its health-benefits plan's exclusion. Bernier's Mot. to Strike at 6–7, 12.

But this fundamentally mischaracterizes the Hanson Declaration and Turbocam's defense. Turbocam has not retracted or contradicted previous testimony that the health-benefits plan exclusion was based on the Noronhas' religious beliefs. *Contra id.* at 1–8. Rather, Turbocam states, and the Hanson Declaration attests, that "*going forward*" Turbocam would maintain the exclusion for the *additional* "separate and independent reason" that it believes gender-affirming care is "neither safe nor effective." Hanson Decl. ¶ 6 (emphasis added). And the Hanson Declaration explains that Turbocam made this decision after "read[ing] and review[ing] the Declaration of Daniel Weiss, M.D." submitted in support of Turbocam's motion to exclude testimony of Bernier's expert, Randi Ettner, Ph.D. *Id.* ¶ 4; *see* Dkt. 71-5 ("Weiss Decl."). The Hanson Declaration recounts that Dr. Weiss's declaration "explains that hormonal and surgical interventions for individuals with gender dysphoria carry significant risks and potentially serious side effects," that the "quality of evidence supporting the efficacy of medical and surgical interventions is low," and that it is his opinion that "the harms and risks" of medical and surgical interventions "outweigh any potential benefits" and therefore are "neither safe nor effective." *Id.* ¶ 5 (quotation marks omitted).

The Hanson Declaration therefore is not subject to the "sham affidavit" rule, *Colantuoni v. Alfred Calcagni & Sons, Inc.*, 44 F.3d 1, 4–5 (1st Cir. 1994), which instructs judges to disregard

8

affidavits that "flatly contradict[] [a] party's earlier sworn deposition … without explaining the contradiction or attempting to resolve the disparity," *Cleveland v. Pol'y Mgmt. Sys. Corp.*, 526 U.S. 795, 806 (1999). The Declaration does not contradict prior testimony regarding Turbocam's reasons for maintaining the health-benefits plan exclusion in the past, and it explains Turbocam's reasons for its *additional* rationale for the plan exclusion *going forward*. That distinguishes the cases Bernier cites, in which declarants, without credible explanation, took positions directly opposite to their earlier statements.[1] Indeed, it is Bernier's own second declaration, Dkt. 87-6, not the Hanson Declaration, that violates the "sham affidavit" rule. *See* Turbocam's Reply at 18–19 (objecting to Bernier's second declaration). In that declaration, Bernier recalls, without explanation, new details of a phone conversation with a health plan consultant that occurred more than three years ago—details that she had, apparently, forgotten during her deposition months earlier. *Id.*

For similar reasons, Bernier's arguments under Rules 30(b)(6) and 26 fall flat. *See* Bernier's Mot. to Strike at 9–11. As the Hanson Declaration itself makes clear, its statements are forward-looking and additive. Hanson Decl. ¶ 6. The Declaration doesn't attempt to rebut Hanson's Rule 30(b)(6) deposition testimony, *contra* Berner's Mot. to Strike at 9, but is consistent with prior assertions that Turbocam's health-benefits plan exclusions were, and are, based on the

---

[1] *See Colantuoni*, 44 F.3d at 5 (affirming district court's disregard of affidavit that "clearly contradict[ed] … prior deposition testimony," where declarant's explanation was "clearly not viable"); *Orta-Castro v. Merck, Sharp & Dohme Quimica P.R., Inc.*, 447 F.3d 105, 110–11 (1st Cir. 2006) (affirming district court's disregard of affidavit, where contradictory earlier testimony was attributed to declarant's "sudden, retroactive bout of amnesia"); *Coakley Landfill Grp. v. IT Corp.*, 116 F. Supp. 2d 237, 242–43 (D.N.H. 2000) (in contract dispute, accepting affidavit statement claiming costs higher than those specified in earlier interrogatory that were "sufficient[ly] explain[ed]" by later-received invoices, but disregarding statement claiming "continuing costs" for which "no explanation" was provided); *Robert Reiser & Co. v. Scriven*, 2016 WL 4579966, at *4 (D. Mass. Sept. 1, 2016) (disregarding statements that "contradict [prior] deposition testimony," where declarant "offer[ed] no explanation for the discrepanc[ies]").

company's owners' religious convictions, *see, e.g.*, Turbocam's Opp., Ex. E at 73:5–17, Dkt. 75-5 (deposition of Peter Hanson). Similarly, the Hanson Declaration does not violate any duty to supplement discovery responses under Rule 26(e)(1)(A). *See* Bernier's Mot. to Strike at 11. The Declaration was not introduced to "correct" a prior "disclosure or response" made "during the discovery process," Fed. R. Civ. P. 26(e)(1)(A), but to respond to the mixed-motives claim raised by Bernier for the first time in her reply. For that reason, Turbocam's affirmative defense and the supporting Declaration were timely, raised at the first opportunity in Turbocam's own reply. And in any event, the Declaration need not be excluded even if there were a Rule 26 violation, as any delay in disclosure was "substantially justified" in light of Bernier's late invocation of a mixed-motives theory. *See Zampierollo-Rheinfeldt v. Ingersoll-Rand de P.R., Inc.*, 999 F.3d 37, 47 (1st Cir. 2021) (quoting Fed. R. Civ. P. 37(c)(1)). Indeed, if anyone is "sandbagging," Bernier's Mot. to Strike at 10, it's Bernier, who waited until her reply at summary judgment to assert an entirely new theory of liability, necessitating Turbocam's affirmative defense.

Finally, the Hanson Declaration is timely for the additional and independent reason that the new facts it raises may inform this Court's discretionary grant of equitable relief, such as Bernier's request for an injunction forcing Turbocam to pay in the future for gender-affirming care through its health-benefits plan. *See* Compl. at 13 (seeking an "injunction prohibiting … enforcement or application of the [health-benefits plan] [e]xclusion"). Courts have an ongoing obligation to modify or dissolve injunctions based on changed facts. *Horne*, 557 U.S. at 447; *see also Dombrowski v. Pfister*, 380 U.S. 479, 492 (1965) ("[T]he settled rule of our cases is that district courts retain power to modify injunctions in light of changed circumstances."). That authority obtains even *after* final judgment. *Horne*, 557 U.S. at 447; *see* Fed. R. Civ. P. 60(b)(5). Turbocam should therefore not be penalized for raising new facts that may bear on the scope of equitable relief well

*before* final judgment. *See, e.g.*, 42 U.S.C. § 2000e-5(g)(2) (limiting certain injunctive relief where employment action taken for other than discriminatory reasons).

## CONCLUSION

For the foregoing reasons, the Court should deny Bernier's motion to strike the Hanson Declaration.

Respectfully Submitted,

                                                Defendant, Turbocam, Inc.
                                                By its attorneys,

| | |
|---|---|
| | */s/ Bethany P. Minich* |
| James R. Conde* | Bethany P. Minich |
| D.C. Bar No. 1031694 | N.H. Bar # 265413 |
| Laura B. Ruppalt* | LITCHFIELD CAVO LLP |
| D.C. Bar No. 90033927 | 6 Kimball Lane, |
| BOYDEN GRAY PLLC | Suite 200 |
| 800 Connecticut Avenue NW, | Lynnfield, MA 01940 |
| Suite 900 | Telephone: (781) 309-1500 |
| Washington, DC 20006 | minich@litchfieldcavo.com |
| Telephone: (202) 955-0620 | |
| jconde@boydengray.com | Roger L. Byron* |
| lruppalt@boydengray.com | Texas State Bar No. 24062643 |
| | E. Cliff Martin* |
| | Texas State Bar No. 24127208 |
| | FIRST LIBERTY INSTITUTE |
| | 2001 West Plano Parkway, Suite 1600 |
| | Plano, Texas 75075 |
| | Telephone: (972) 941-4444 |
| | rbyron@firstliberty.org |
| | cmartin@firstliberty.org |
| \* *Pro hac vice* | **Counsel for Defendant** *Turbocam, Inc.* |

Dated: December 10, 2025

11

## CERTIFICATE OF SERVICE

I, Bethany P. Minich, hereby certify that on December 10, 2025, the foregoing document, filed through the CM/ECF System, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

*/s/ Bethany P. Minich*
Bethany P. Minich