**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW HAMPSHIRE**

LILLIAN BERNIER

               *Plaintiff*,

   v.

TURBOCAM, INC.,

             *Defendant*.

Civil Action No. 1:23-cv-00523-LM-AJ

---

**TURBOCAM, INC.'S SUPPLEMENTAL PLEADING REGARDING**
***WEST VIRGINIA v. B.P.J.***

---

James R. Conde*
D.C. Bar No. 1031694
Laura B. Ruppalt*
D.C. Bar No. 90033927
BOYDEN GRAY PLLC
800 Connecticut Avenue NW,
Suite 900
Washington, DC 20006
Telephone: (202) 955-0620
jconde@boydengray.com
lruppalt@boydengray.com

Bethany P. Minich
N.H. Bar No. 265413
LITCHFIELD CAVO LLP
6 Kimball Lane,
Suite 200
Lynnfield, MA 01940
Telephone: (781) 309-1500
minich@litchfieldcavo.com

Roger L. Byron*
Texas State Bar No. 24062643
E. Cliff Martin*
Texas State Bar No. 24127208
FIRST LIBERTY INSTITUTE
2001 West Plano Parkway,
Suite 1600
Plano, Texas 75075
Telephone: (972) 941-4444
rbyron@firstliberty.org
cmartin@firstliberty.org

*\* Pro hac vice*

**Counsel for Defendant**
*Turbocam, Inc.*

July 14, 2026

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................................ii

INTRODUCTION ........................................................................................................................... 1

ARGUMENT................................................................................................................................... 2

I.       *B.P.J.* Confirms that Bernier's Title VII Claim Fails ........................................................ 2

         A.       *B.P.J.* Confirms that Bernier Must Show Disparate Treatment.............................. 2

         B.       *B.P.J.* Reiterates that "Sex" Means "Biological Sex" and *Skrmetti* Controls......... 3

II.      *B.P.J.* Counsels Against Applying Constitutional Avoidance to Bernier's ADA Claim ... 4

CONCLUSION................................................................................................................................ 5

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Lange v. Houston County*,
    152 F.4th 1245 (11th Cir. 2025) ...............................................................................3

*United States v. Skrmetti*,
    605 U.S. 495 (2025).................................................................................................3, 4

*West Virginia v. B.P.J. by Jackson*,
    609 U.S. ___,  2026 WL 1868739 (June 30, 2026) ....................................................1, 2, 3, 4, 5

*Williams v. Kincaid*,
    45 F.4th 759 (4th Cir. 2022) .......................................................................................4

*Wis. Cent. Ltd. v. United States*,
    585 U.S. 274 (2018).....................................................................................................5

**Statutes**

20 U.S.C. § 1681...............................................................................................................3

42 U.S.C. § 2000e-2(a)(1)................................................................................................3

42 U.S.C. § 12211(b)(1) .................................................................................................4, 5

## INTRODUCTION

In *West Virginia v. B.P.J. by Jackson*,[1] the Supreme Court held that state laws excluding biological males from women's and girls' sports do not violate Title IX or the Equal Protection Clause of the Fourteenth Amendment. 609 U.S. ___, 2026 WL 1868739, at *17 (June 30, 2026). This Court has asked the parties to "submit supplemental pleadings of no more than 10 pages addressing *B.P.J.*'s impact on this case." Endorsed Order (June 30, 2026). *B.P.J.* does not directly govern this case. *B.P.J.* is not about Title VII or the Americans with Disabilities Act ("ADA"), but about the "very different statutory and factual context" of Title IX and the Equal Protection Clause, 2026 WL 1868739, at *9, and Plaintiff Lillian Bernier does not raise a claim under either.

Nevertheless, *B.P.J.* supports Defendant Turbocam's arguments in several respects. First, *B.P.J.*, and especially the concurring opinion by Justice Gorsuch, confirm that to prevail on a Title VII claim, Bernier must show (a) disparate treatment that is (b) because of biological sex, not transgender identity or medical diagnosis. As Turbocam explained in its memorandum in support of summary judgment, Bernier satisfies neither. *See* Turbocam's Mem. in Support of Summ. J. at 5–15 ("Turbocam's MSJ"), Dkt. 75. Second, in *B.P.J.*, a majority of the Supreme Court once again expressly declined to recognize transgender individuals as a protected class under the Equal Protection Clause. That undermines Bernier's suggestion that this Court apply constitutional avoidance when interpreting the "gender-identity disorder" exclusion in the ADA.

---

[1] The Court consolidated *B.P.J.*, No. 24-43, and *Little v. Hecox*, No. 24-38, for decision. Turbocam refers to the Supreme Court's opinion resolving both cases as "*B.P.J.*"

1

**ARGUMENT**

## I.  *B.P.J.* Confirms that Bernier's Title VII Claim Fails

In *B.P.J.*, the Supreme Court confirmed that "Title VII prohibits employment discrimination because of sex." 2026 WL 1868739, at *9 (cleaned up). Justice Gorsuch concurred, explaining that Title VII disparate treatment claims boil down to whether there was discrimination and if so, whether it was on account of biological sex. *See id.* at *18 (Gorsuch, J., concurring); *see also* Turbocam's MSJ at 5 ("Here, the question is whether Turbocam treated Bernier differently *because* of Bernier's biological sex."). As Turbocam previously explained, Bernier's claim fails on both fronts.

### A.  *B.P.J.* Confirms that Bernier Must Show Disparate Treatment

*B.P.J.* reaffirms that successful Title VII plaintiffs must show discriminatory—that is, disparate—treatment: "Title VII generally requires that men and women be treated without regard to their sex." *B.P.J.*, 2026 WL 1868739, at *9. In other words, Title VII is not triggered if there is no discrimination. *See id.* at *19 (Gorsuch, J., concurring) (explaining that discrimination was not a question in *Bostock v. Clayton County*, 590 U.S. 644 (2020), because "no one doubted that firing someone because of his biological sex qualified as 'discrimination' under Title VII").

This confirms that Bernier cannot show discrimination under Title VII. *See* Turbocam's MSJ at 9–12; Turbocam's Reply in Support of Cross-Mot. for Summ. J. at 2–3 ("Turbocam's Reply"), Dkt. 95. Unlike the plaintiff employees fired in *Bostock*, Bernier was not treated differently or less favorably in the terms of employment. Bernier has the same access to the same health-benefits plan as every other male or female employee, transgender or not. What Bernier seeks in claiming coverage for gender-affirming care to treat gender dysphoria is not the same coverage offered to every other employee, but additional coverage offered to no other employee. *See, e.g.*, Turbocam's Reply at 2–3. As *B.P.J.*'s discussion of Title VII confirms, because there is no dispar-

ate treatment, Bernier does not have a cognizable Title VII claim.

### B. *B.P.J.* Reiterates that "Sex" Means "Biological Sex" and *Skrmetti* Controls

Regardless, Bernier's Title VII claim fails because Bernier has not shown that any alleged disparate treatment was "because of … sex"—that is, "biological sex." *B.P.J.*, 2026 WL 1868739, at *9, *7; *see id.* at *18 (Gorsuch, J., concurring); *see also* 42 U.S.C. § 2000e-2(a)(1). Bernier argues that Turbocam's health-benefits plan violates Title VII because it discriminates on the basis of Bernier's "transgender status" and "only affects transgender plan members." Bernier's Opp. to Turbocam's Cross-Mot. for Summ. J. at 6–7 ("Bernier's Opp."), Dkt. 88. That argument fails under *B.P.J.*, which reaffirms both that "sex" means "biological sex" and that *United States v. Skrmetti*, 605 U.S. 495, 517 (2025), forecloses claims based on diagnoses-based distinctions.

First, *B.P.J.* confirms that "in the early 1970s" when Title IX was enacted, "the ordinary meaning of the term 'sex' … was biological sex and not gender identity." 2026 WL 1868739, at *7. Indeed, the Court held that Title IX's prohibition of discrimination "on the basis of sex," 20 U.S.C. § 1681, "cannot be plausibly interpreted to refer to *anything other than biological sex.*" 2026 WL 1868739, at *7 (emphasis added). The same is therefore true for the use of "sex" in Title VII, which was enacted just a few years before Title IX. Justice Gorsuch emphasized this in his concurrence, explaining that in *Bostock*, the Court "read the word 'sex' in Title VII to refer to biological sex." *Id.* at *18 (Gorsuch, J., concurring) (citing *Bostock*, 590 U.S. at 655). *B.P.J.* thus confirms that Title VII prohibits only discrimination based on "biological sex," not "transgender status," as Bernier claims. Bernier's Opp. at 6–7; *see also Lange v. Houston County*, 152 F.4th 1245, 1252 (11th Cir. 2025) (en banc) (holding that under Title VII, an employer's health-benefits plan doesn't facially discriminate when, as here, the "policy does not pay for a sex change operation for anyone regardless of their biological sex").

Second, *B.P.J.* reaffirmed *Skrmetti*, defeating Bernier's argument that the health-benefits

3

plan's exclusion for gender-affirming care is a sex-based exclusion. *See, e.g.*, Turbocam's MSJ at 10–12. *B.P.J.* rejected the plaintiffs' argument that the States' laws unconstitutionally discriminated against transgender individuals because "under this Court's decision in *Skrmetti*, the laws do not classify based on gender identity or transgender status." 2026 WL 1868739, at *14. Similarly, here: Turbocam's plan makes no "transgender or gender-identity classification." *Id.* Rather, as Turbocam has explained, Turbocam's plan differentiates based on medical diagnosis (gender dysphoria) and type of treatment (gender-affirming care). *See* Turbocam's MSJ at 6–9. And under *Skrmetti* and "the logic of *Bostock*," that is not sex-based discrimination. *See Skrmetti*, 605 U.S. at 522.

## II.    *B.P.J.* Counsels Against Applying Constitutional Avoidance to Bernier's ADA Claim

Finally, *B.P.J.* confirms that applying the canon of constitutional avoidance to Bernier's ADA claim would be inappropriate. Bernier argues that this Court should conclude that gender dysphoria does not fall within the ADA's exclusion for "transsexualism" and "gender identity disorders not resulting from physical impairments," 42 U.S.C. § 12211(b)(1), in order "to avoid a serious constitutional question," Bernier's Opp. at 11. In support, Bernier relies on *Williams v. Kincaid*, 45 F.4th 759 (4th Cir. 2022), in which the Fourth Circuit suggested that "a law excluding from ADA protection *both* 'gender identity disorders' *and* gender dysphoria would discriminate against transgender people as a class, implicating the Equal Protection Clause of the Fourteenth Amendment." *Id.* at 772.

But *B.P.J.* undercuts the Fourth Circuit's conclusion. The majority in *B.P.J.* expressly declined to recognize transgender status as a suspect class subject to heightened scrutiny under the Equal Protection Clause. 2026 WL 1868739, at *14. The Court did the same just last year in *Skrmetti*. 605 U.S. at 517. Moreover, "[s]everal Members of th[e] Court" have already concluded the opposite: "that classifications based on transgender status or gender identity should receive

4

only deferential rational basis review and not intermediate or other heightened scrutiny." *B.P.J.*, 2026 WL 1868739, at \*14 (citing *Skrmetti*, 605 U.S. at 550–53 (Barrett, J., joined by Thomas, J., concurring) and *id.* at 566 (Alito, J., concurring in part and concurring in judgment)). That the Supreme Court has twice in just over one year passed upon holding that transgender individuals constitute a protected class, and that three members of the Court have already concluded the opposite counsels against following the Fourth Circuit's flawed path here.

This Court should "interpret the words [of the ADA] consistent with their ordinary meaning at the time Congress enacted" it, *Wis. Cent. Ltd. v. United States*, 585 U.S. 274, 277 (2018) (cleaned up), and hold that Bernier's ADA claim fails because Bernier's gender dysphoria is an excluded condition, 42 U.S.C. § 12211(b)(1). *See* Turbocam's MSJ at 16–29.

## CONCLUSION

For the foregoing reasons, *West Virginia v. B.P.J.*, 609 U.S. \_\_, 2026 WL 1868739 (June 30, 2026), supports Turbocam's Cross-Motion for Summary Judgment and Opposition to Bernier's Motion for the same. This Court should grant summary judgment to Turbocam.

Respectfully Submitted,

Defendant, Turbocam, Inc.
By its attorneys

|  |  |
| --- | --- |
|  | /s/ Bethany P. Minich |
| James R. Conde* | Bethany P. Minich |
| D.C. Bar No. 1031694 | N.H. Bar No. 265413 |
| Laura B. Ruppalt* | LITCHFIELD CAVO LLP |
| D.C. Bar No. 90033927 | 6 Kimball Lane, |
| BOYDEN GRAY PLLC | Suite 200 |
| 800 Connecticut Avenue NW, | Lynnfield, MA 01940 |
| Suite 900 | Telephone: (781) 309-1500 |
| Washington, DC 20006 | minich@litchfieldcavo.com |
| Telephone: (202) 955-0620 |  |
| jconde@boydengray.com | Roger L. Byron* |
| lruppalt@boydengray.com | Texas State Bar No. 24062643 |
|  | E. Cliff Martin* |
|  | Texas State Bar No. 24127208 |
|  | First Liberty Institute |
|  | 2001 West Plano Parkway, |
|  | Suite 1600 |
|  | Plano, Texas 75075 |
|  | Telephone: (972) 941-4444 |
|  | rbyron@firstliberty.org |
|  | cmartin@firstliberty.org |
| *Pro hac vice* | **Counsel for Defendant** |
|  | *Turbocam, Inc.* |

Dated: July 14, 2026

**CERTIFICATE OF SERVICE**

I, Bethany P. Minich, hereby certify that on July 14, 2026, the foregoing document, filed through the CM/ECF System, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

/s/ Bethany P. Minich
Bethany P. Minich