**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**

LILLIAN BERNIER,

       Plaintiff,

v.

TURBOCAM, INC.,

       Defendant.

Civil Action No. 1:23-cv-00523-LM-AJ

**PLAINTIFF LILLIAN BERNIER'S SUPPLEMENTAL PLEADING ON IMPACT OF
*WEST VIRGINIA v. B.P.J.* AND *LITTLE v. HECOX***

Pursuant to the court's June 30, 2026, order, plaintiff Lillian Bernier hereby submits the following supplemental pleading on the impact to this case of the United States Supreme Court's consolidated decision in *West Virginia v. B.P.J.* and *Little v. Hecox*, Nos. 24-43 and 24-38, 2026 U.S. LEXIS 2884 (June 30, 2026) (hereinafter *BPJ*).

## I.     BACKGROUND

Lillian Bernier's Title VII claim against her employer is supported by direct evidence that Turbocam, Inc. excludes coverage for gender dysphoria treatment because its owner disapproves of transgender people. In *Bostock v. Clayton County*, the Supreme Court concluded that "transgender status [is] inextricably bound up with sex" and that "it is impossible to discriminate against a person for being . . . transgender without discriminating against the individual based on sex." 590 U.S. 644, 660–61 (2020). The Supreme Court's ruling in *BPJ* did not weaken *Bostock*'s holding, and nothing in *BPJ* bears on how this court should analyze Lillian's Title VII claim.

## II.     ARGUMENT

The Court's decision in *BPJ* has no bearing on Lillian's claims against her employer, Turbocam, Inc. Instead, the Court reaffirmed the central holding of *Bostock*, while cabining its *BPJ*

1

decision specifically to the context of sex-separated sports programs in schools. 2026 U.S. LEXIS 2884, at *24.

**A.**    ***BPJ* is a Narrow Decision About School Sports Under Title IX.**

In *BPJ*, the Supreme Court addressed the Equal Protection and Title IX claims of two transgender girls who were excluded from school sports in West Virginia and Idaho. The Court ruled, six to three, that the Equal Protection claims failed because the bans were substantially related to the States' asserted interests. *Id.* at *25–36. The majority further declined to decide the level of scrutiny applicable to a law that classifies based on transgender status. *Id.* at *35–36. The Court also unanimously[1] concluded that the plaintiffs' Title IX claims failed because Title IX includes a provision known as the Javits Amendment, which expressly authorizes sex separation in school sports. Therefore, according to the majority, Congress authorized excluding students from girls' sports teams based on "biological sex."

**B.**    **The court's Title IX analysis does not impact the Title VII claims in this case.**

    *1.*    *The Court's analysis is anchored in and depends upon the Javits Amendment to Title IX, which pertains to school sports, and has no relationship to employment discrimination.*

The Court distinguished Title VII and Title IX, and more specifically the issue of sex-separated school sports, in denying the plaintiffs' claims in *BPJ*. "Title VII concerns employment, whereas Title IX as relevant here focuses on sports. The two factual contexts are vastly different. . . . In the workplace, Title VII generally requires that men and women be treated without regard to their sex. In the sports context, by contrast, Title IX authorizes separate men's and women's sports teams." 2026 U.S. LEXIS 2884, at *24.

---

[1] Three Justices concurred in judgment in ruling against BPJ's Title IX claim but did not join the majority opinion. 2026 U.S. LEXIS 2884, at *79–81 (Sotomayor, J., concurring in the judgment in part and dissenting in part); *id.* at *83–84 (Jackson, J., concurring in the judgment in part and dissenting in part).

The Court ruled in *BPJ* that the Javits Amendment authorizes separation of students based on sex for the purposes of school sports, and that the ordinary meaning of sex at the time of enactment of the Javits Amendment was "biological sex." The Court concluded that a rule excluding students based on biological sex is fully consistent with the Javits Amendment. "Put simply, the statute and regulations do not speak to that issue in a way that could properly be interpreted to require schools to allow [transgender girls] to participate in women's and girls' sports." *Id.* at *21.

Lillian Bernier's employer, Turbocam, discriminated against her in her employment, and Title VII requires that employees "be treated without regard to their sex." *Id.* at *24. This case does not involve sports or any other sex-separated program or activity, nor does Title VII include any analog to the Javits Amendment authorizing sex-separated facilities or activities in the employment context. The Court's ruling in *BPJ* has no impact on Lillian's Title VII claim.

2.      *The opinions of the Justices expressly reaffirmed the holding in Bostock, that transgender discrimination in employment violates Title VII.*

The majority wrote in *BPJ* that "Title VII and *Bostock* are not relevant in this very different statutory and factual context." *Id.* In his concurring opinion, Justice Gorsuch (the author of the majority opinion in *Bostock*) wrote separately to clarify that the majority decision does not undermine *Bostock*. He took care to explain: "In *Bostock*, again, no one doubted that firing someone because of [her] biological sex qualified as 'discrimination' under Title VII. . . . Title IX anticipates and approves single-sex living accommodations and sports teams in school settings; it does not treat them as unlawful discrimination." *Id.* at *45. Here, Lillian argues that her employer discriminated against her because she is transgender, a trait that the Court in *Bostock* held is inextricably intertwined with sex. This discrimination is precisely what Title VII prohibits.

In her opinion, concurring in judgment on BPJ's Title IX claim, Justice Sotomayor likewise explained and reaffirmed that *Bostock* establishes that transgender discrimination is necessarily

3

sex-based: "[B]ecause Title VII prohibits sex-based discrimination in the workplace, *Bostock* held, it also prohibits transgender discrimination in that context." *Id.* at *79. Justice Sotomayor took care to explain that BPJ's Title IX claim failed, in her view, because the Javits Amendment and implementing regulations permit sex-separated athletic teams based on biological sex. *Id.* at *79–81. In the end, all nine justices agreed that *Bostock* did not control the outcome in *BPJ*.

### CONCLUSION

The Court in *BPJ* resolved the plaintiff's Title IX claim in narrow terms, limited to the context of school sports and Title IX's unique statutory framework. This narrow ruling has no bearing on Lillian Bernier's Title VII claim or her ADA claim. Further, the Equal Protection analysis in *BPJ* is not relevant to Lillian Bernier's claims against her employer.

<div style="margin-left:50%">

Respectfully submitted,
Lillian Bernier
By her attorneys,

</div>

Date: July 14, 2026

<div style="margin-left:50%">

*/s/ Chris Erchull*
Chris Erchull (N.H. Bar No. 266733)
Bennett Klein (Mass. Bar No. 550702)*
Michael Haley (N.H. Bar No. 270236)
GLBTQ Legal Advocates & Defenders
18 Tremont St. Ste. 950
Boston, MA 02108
(617) 426-1350
cerchull@gladlaw.org
bklein@gladlaw.org
mhaley@gladlaw.org

</div>

* Admitted *pro hac vice.*

4

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this date, I caused the foregoing document to be served on all parties of record via the court's electronic filing system.

Date: July 14, 2026                              */s/ Chris Erchull*
                                                 Chris Erchull

5